**EXHIBIT 1**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| ROY HARNESS, et al.,<br><br>      Plaintiffs,<br><br>           v.<br><br>DELBERT HOSEMANN, SECRETARY OF STATE OF MISSISSIPPI, in his official capacity,<br><br>      Defendant. | Civil Action No. 3:17-cv-791-DPJ-FKB<br>*Consolidated with*<br>Civil Action No. 3:18-cv-188-DPJ-FKB |
| DENNIS HOPKINS, et al.,<br><br>      Plaintiffs,<br><br>           v.<br><br>DELBERT HOSEMANN, SECRETARY OF STATE OF MISSISSIPPI, in his official capacity,<br><br>      Defendant. | |

**REPORT OF DOV ROTHMAN, Ph.D.**

**August 1, 2018**

# TABLE OF CONTENTS

I. INTRODUCTION AND QUALIFICATIONS ........................................................................ 1

II. ASSIGNMENT AND SUMMARY OF FINDINGS ............................................................ 2

    A. ASSIGNMENT ............................................................................................................ 2

    B. SUMMARY OF FINDINGS ...................................................................................... 3

III. DATA AND ASSUMPTIONS ............................................................................................ 3

IV. METHODOLOGY AND RESULTS .................................................................................... 4

    A. THE NUMBER OF DISENFRANCHISED INDIVIDUALS ............................................ 4

    B. THE NUMBER OF POST-SENTENCE INDIVIDUALS ................................................ 7

    C. THE DISTRIBUTION OF AGES OF POST-SENTENCE INDIVIDUALS .................... 9

V. CONCLUSION ..................................................................................................................... 11

## I.      INTRODUCTION AND QUALIFICATIONS

1.      I have been retained as an expert by counsel for Plaintiffs in *Hopkins v. Hosemann*, captioned above. I have prepared this report according to Federal Rule of Civil Procedure 26(a)(2)(B).

2.      I am a Managing Principal at Analysis Group, Inc. ("Analysis Group"), an economic, financial, and strategy consulting firm with nine offices in the United States. I earned a B.A. from the University of California at Berkeley, an M.Phil. from Cambridge University, and a Ph.D. from the University of California at Berkeley. Prior to joining Analysis Group, I was an assistant professor at Columbia University in New York City. At the University of California, I was an instructor for the graduate microeconomics course taken by all MBA students. More recently, I taught a course on the economics of merger analysis in the economics department at Harvard University.

3.      I have published in the field of economics. My research has been featured in outlets including the *Antitrust Source*, *Journal of Health Economics*, *Journal of Competition Law & Economics*, *Concurrences: Competition Law Journal*, and the ABA Antitrust Section's *Econometrics: Legal, Practical and Technical Issues*. I currently serve on the editorial board of the *Antitrust Law Journal*.

4.      I have testified as an expert and led teams supporting experts in multiple antitrust matters. A copy of my curriculum vitae and the list of my prior testimony for the past four years is included as Appendix A.

5.      My standard billing rate is $690 per hour. However, I am providing my services in this matter on a pro bono basis. My participation in this matter is not contingent on the content of my opinions.

1

6.      I have directed employees of Analysis Group to assist me in my current assignment; they are also providing their services on a pro bono basis. My work on this matter is ongoing, and my opinions are formed using the information available to me as of the date of this report. I reserve the right to amend or supplement this declaration if additional information is made available to me. If other expert reports or declarations come to my attention, I may choose to update my opinions or respond to such reports as necessary.

## II.      ASSIGNMENT AND SUMMARY OF FINDINGS

### A.      Assignment

7.      I have been asked by the Southern Poverty Law Center and Simpson Thacher & Bartlett LLP, counsel for Plaintiffs in *Hopkins v. Hosemann*, to review the available data on individuals convicted of criminal offenses in Mississippi state courts between 1994 and 2017 to determine:

> a.      The number of individuals convicted of offenses that are disenfranchising ("Disenfranchised Individuals") and the racial breakdown of those individuals;
>
> b.      The number of individuals convicted of offenses that are disenfranchising who have completed the term of their sentences ("Post-Sentence Individuals") and the racial breakdown of those individuals; and
>
> c.      The distribution of ages of Post-Sentence Individuals.

8.      I have also been asked to compare the racial breakdown of Post-Sentence Individuals to that of the racial breakdown of the voting-age population of citizens in Mississippi, as reported by the U.S. Census Bureau.

9.      A list of the materials that I have considered in connection with this assignment is provided as Appendix B.

2

### B.     Summary of Findings

10.     Based on my review of the available data on individuals convicted of criminal offenses in Mississippi state courts between 1994 and 2017, I have reached the following conclusions:

a.     There are nearly 50,000 Disenfranchised Individuals convicted between 1994 and 2017. Of these, 59 percent (approximately 29,000) are black and 37 percent (approximately 18,000) are white.

b.     Of the Disenfranchised Individuals convicted between 1994 and 2017, there are approximately 29,000 Post-Sentence Individuals, of which more than 17,000 (58 percent) are black and only 36 percent are white.

c.     A greater percentage of the Disenfranchised Individuals (59 percent) and Post-Sentence Individuals (58 percent) are black compared to the percentage of the citizen voting-age population of Mississippi that are black (36 percent), as reported by the U.S. Census Bureau for 2017.

d.     Of the approximately 29,000 Post-Sentence Individuals, more than 20,000 are under the age of 45. Of the Post-Sentence Individuals under the age of 45, nearly 14,000 (62 percent) are black.

## III.    DATA AND ASSUMPTIONS

11.     I use data recorded by the Administrative Office of the Courts (the "AOC data") in Mississippi.[1] The AOC data contain records of criminal dispositions of felony charges in Mississippi state courts between January 1, 1994 and December 31, 2017. The AOC data include

---

[1]     Counsel for Plaintiffs have advised me that the AOC data were provided by the Administrative Office of the Courts in response to public records requests. Records for Jefferson Davis County were provided in a different format than the AOC data for other counties. I do not include the Jefferson Davis County records in my analysis.

3

details of the offense, disposition, and sentence, as well as birth date and demographic information of the individual.

12.     I have been instructed by counsel for Plaintiffs to make the following assumptions in my analysis:

      a.  The list of criminal offenses and corresponding criminal codes attached as Appendix C represents the offenses that the Secretary of State of Mississippi presently considers to be disenfranchising.

      b.  The list of disposition codes attached as Appendix D represents the disposition codes that the Secretary of State of Mississippi considers to be a "conviction" when determining whether an individual was "convicted" of a disenfranchising offense.

## IV.     METHODOLOGY AND RESULTS

### A.     The Number of Disenfranchised Individuals

13.     I consider an individual to be disenfranchised if he or she satisfies the two assumptions listed in paragraph 12 above. First, I remove any individual who was convicted of a criminal offense that is not listed in Appendix C. Second, I remove any individual if the disposition code listed for his or her criminal offense is not listed in Appendix D.[2] The resulting population is the set of Disenfranchised Individuals.

14.     There are 49,604 Disenfranchised Individuals convicted between 1994 and 2017. Of these, 29,052 (59 percent) are black and 18,310 (37 percent) are white. The distribution of the races[3] of Disenfranchised Individuals is shown in Exhibit 1 below.

---

[2]     I perform additional data cleaning steps. The details are provided in Appendix E.

[3]     Counsel for Plaintiffs have directed me to assume that the ethnicity listed in the AOC data is the race of the individual.

**Exhibit 1**
**Racial Breakdown of Disenfranchised Individuals (1994-2017)[4]**



15.     The U.S. Census Bureau reports that as of July 1, 2017, the citizen voting-age population in Mississippi is 36 percent black (830,956 individuals) and 61 percent white (1,405,754 individuals). A comparison of the races of Disenfranchised Individuals with the races of the citizen voting-age population in Mississippi is shown in Exhibit 2 below. The white and black Disenfranchised Individuals account for 1.3 percent and 3.5 percent of the white and black citizen voting-age population in Mississippi, respectively. The share represented by black

---

[4]     *Note:* The "Race" categories for Disenfranchised Individuals are based on the variable "Ethnicity" in the AOC data. The category "Other" above represents the following values in the AOC data: Asian, American Indian, Hispanic, and Other. The category "Unknown" is native to the AOC data.

        *Sources*: [1] AOC data, 1994-2017; [2] Appendices C and D.

Disenfranchised Individuals is more than twice the share represented by white Disenfranchised Individuals.

**Exhibit 2**
**Racial Breakdown of Disenfranchised Individuals (1994-2017) Compared to the Racial Breakdown of the Voting Age Population of Mississippi (2017)[5]**



---

[5]    *Note:* The "Race" categories for Disenfranchised Individuals are based on the variable "Ethnicity" in the AOC data. The category "Other" above represents the following values in the AOC data: Asian, American Indian, Hispanic, and Other. The category "Unknown" is native to the AOC data.

*Sources*: [1] "Annual Estimates of the Resident Population by Sex, Age, Race Alone or in Combination, and Hispanic Origin for the United States and States: April 1, 2010 to July 1, 2017 (PEPASR5H)," U.S. Census Bureau, Population Division, as of July 1, 2017, released June 2018, available at https://factfinder.census.gov/faces/nav/jsf/pages/searchresults.xhtml?refresh=t; [2] AOC data, 1994-2017; [3] Appendices C and D.

6

### B.      The Number of Post-Sentence Individuals

16.      I consider a Disenfranchised Individual to have completed his or her sentence once he or she has served the entirety of his or her sentence term and probation term. If a Disenfranchised Individual has completed both of these terms, he or she is a Post-Sentence Individual.[6]

17.      Of the Disenfranchised Individuals convicted between 1994 and 2017, there are 29,356 Post-Sentence Individuals as of August 1, 2018, of which 17,136 (58 percent) are black and 10,691 (36 percent) are white. The breakdown of Post-Sentence Individuals by race is shown in Exhibit 3 below. I also show the number of Post-Sentence Individuals as of the next U.S. presidential election.

18.      I have been advised by counsel for Plaintiffs that during the 5-year period between 2013 and 2017, fourteen individuals regained the right to vote pursuant to a suffrage bill passed by the Mississippi Legislature. I assume that all fourteen of these individuals are black; this amounts to only 0.08% of black Post-Sentence Individuals. For every individual who regained his or her right to vote pursuant to a suffrage bill, there are more than 1,000 black Post-Sentence Individuals who remain disenfranchised.

19.      A comparison of the racial breakdown of Post-Sentence Individuals to the racial breakdown of the citizen voting-age population in Mississippi is shown in Exhibit 4 below. The white and black Post-Sentence Individuals account for 0.8 percent and 2.1 percent of the white and black citizen voting-age population in Mississippi, respectively. The share represented by

---

[6]      Further detail on the methodology for determining the Post-Sentence Individuals in the AOC data is provided in Appendix E.

black Post-Sentence Individuals is more than twice the share represented by white Post-Sentence Individuals.

**Exhibit 3**
**Racial Breakdown of Post-Sentence Individuals (1994-2017)[7]**



7    *Notes*: [1] The "Race" categories for Disenfranchised Individuals are based on the variable "Ethnicity" in the AOC data. The category "Other" above represents the following values in the AOC data: Asian, American Indian, Hispanic, and Other. The category "Unknown" is native to the AOC data. [2] An individual is considered to be in the group of Post-Sentence Individuals if he or she has completed his or her total sentenced time and total probation time by the dates in each column (i.e., August 1, 2018 or November 2, 2020).

*Sources*: [1] AOC data, 1994-2017; [2] Appendices C and D.

8

**Exhibit 4**
**Racial Breakdown of Post-Sentence Individuals (1994-2017) Compared to the Racial Breakdown of the Voting Age Population of Mississippi (2017)[8]**



### C.    The Distribution of Ages of Post-Sentence Individuals

20.    I determine the ages of Post-Sentence Individuals using birth dates provided in the AOC data. Exhibits 5 and 6, below, present the number of Post-Sentence Individuals as of August 1, 2018 by race and age. Of the 29,356 Post-Sentence Individuals as of August 1, 2018,

---

8    *Note:* The "Race" categories for Disenfranchised Individuals are based on the variable "Ethnicity" in the AOC data. The category "Other" above represents the following values in the AOC data: Asian, American Indian, Hispanic, and Other. The category "Unknown" is native to the AOC data.

*Sources*: [1] "Annual Estimates of the Resident Population by Sex, Age, Race Alone or in Combination, and Hispanic Origin for the United States and States: April 1, 2010 to July 1, 2017 (PEPASR5H)," U.S. Census Bureau, Population Division, released June 2018, available at is available at https://factfinder.census.gov/faces/nav/jsf/pages/searchresults.xhtml?refresh=t; [2] AOC data, 1994-2017; [3] Appendices C and D.

more than 20,000 are under the age of 45. Of the Post-Sentence Individuals under the age of 45, nearly 14,000 (62 percent) are black.

**Exhibit 5**
**Racial Breakdown of Post-Sentence Individuals by Age (1994-2017)[9]**



[9]   *Notes*: [1] The "Race" categories are based on the variable "Ethnicity" in the AOC data. The category "Other" above represents the following values in the AOC data: Asian, American Indian, Hispanic, and Other. The category "Unknown" is native to the AOC data. [2] An individual is considered to be in the group of Post-Sentence Individuals if he or she has completed his or her total sentenced time and total probation time by the dates in each category (i.e., August 1, 2018 or November 2, 2020). [3] Individuals below 17 years old and above 65 years old are not included in the chart. [4] Age in years is calculated as the number of days between the date of birth and the date of sentence completion in the AOC data, divided by 365.25 (i.e., the number of days per year, on average).

*Sources*: [1] AOC data, 1994-2017; [2] Appendices C and D.

10

**Exhibit 6**
**Racial Breakdown of Post-Sentence Individuals (1994-2017) by Age[10]**



## V.    CONCLUSION

21.    While the U.S. Census reports that as of July 1, 2017, the citizen voting-age population in Mississippi is 36 percent black, 59 percent of Disenfranchised Individuals are black and 58 percent of Post-Sentence Individuals are black. Further, the majority of Post-

---

[10]    *Notes*: [1] The "Race" categories for Disenfranchised Individuals are based on the variable "Ethnicity" in the AOC data. The category "Other" above represents the following values in the AOC data: Asian, American Indian, Hispanic, and Other. The category "Unknown" is native to the AOC data. [2] An individual is considered to be in the group of Post-Sentence Individuals if he or she has completed his or her total sentenced time and total probation time by the dates in each category (i.e., August 1, 2018 or November 2, 2020). [3] Individuals below 17 years old and above 65 years old are not included in the chart. [4] Age in years is calculated as the number of days between the date of birth and the date of sentence completion in the AOC data, divided by 365.25 (i.e., the number of days per year, on average).

*Sources*: [1] AOC data, 1994-2017; [2] Appendices C and D.

Sentence Individuals are under the age of 45. Each of those individuals has potentially many years of life ahead, during which he or she could vote if enfranchised.

_____
Dov Rothman, Ph.D.
August 1, 2018

# APPENDIX A

## DOV ROTHMAN, PH.D.
### Managing Principal

Phone: 617 425 8209                                                           111 Huntington Avenue
Fax: 617 425 8001                                                                          14th Floor
dov.rothman@analysisgroup.com                                              Boston, MA 02199

Dr. Rothman is an economist with expertise in antitrust economics, econometrics, and industrial organization. He has testified as an expert on antitrust issues, and recently led teams that supported the Department of Justice's (DOJ's) testifying economist in its challenge of the Anthem/Cigna merger, the Federal Trade Commission's (FTC's) testifying economist in its challenge of the Sanford Health/Mid Dakota Clinic merger, and the FTC's testifying economist in its challenge of the Penn State Hershey Medical Center/PinnacleHealth merger. Dr. Rothman is a senior editor of the *Antitrust Law Journal*, and he has published research in outlets including *The Antitrust Source*, *Journal of Health Economics*, *Journal of Competition Law & Economics*, *Concurrences: Competition Law Journal*, and the ABA Antitrust Section's *Econometrics: Legal, Practical and Technical Issues*. In addition to his consulting work, Dr. Rothman teaches a course on the economics of merger analysis in the economics department at Harvard University. Prior to joining Analysis Group, Dr. Rothman was an assistant professor at Columbia University.

## EDUCATION

Ph.D.           Business Administration, Haas School of Business, University of California at Berkeley, Berkeley, CA

M.Phil.         Development Studies, Cambridge University, Cambridge, UK

B.A.            Political Science, University of California at Berkeley, Berkeley, CA

## PROFESSIONAL EXPERIENCE

2006–Present    Analysis Group, Inc.
                *Managing Principal*
                *Vice President*
                *Manager*
                *Associate*

2004–2006       Department of Health Policy and Management, Columbia University Mailman School of Public Health
                *Assistant Professor*

## SELECTED CASEWORK

- **Merger review (multiple)**
  Supported experts in the analysis of market definition and assessments of potential competitive effects.

- **Pre-merger antitrust due diligence (multiple)**
  Assisted in the analysis of potential antitrust risks associated with an acquisition.

- **Monopolization (multiple)**
  Supported experts in the analysis of alleged monopolization and attempted monopolization.

- **Bid rigging**
  Supported an expert in the analysis of an alleged bid rigging conspiracy.

- **Price-fixing (multiple)**
  Supported expert in the analysis of an alleged conspiracy to fix prices.

- **Refusal to deal and conspiracy to monopolize**
  Supported an expert in the analysis of alleged refusal to deal and conspiracy to monopolize.

- **Price-fixing and exclusive dealing**
  Supported an expert in the analysis of alleged price-fixing and exclusive dealing.

- ***Kirk Dahl, et al., v. Bain Capital Partners, LLC, et al.***
  *US District Court, District of Massachusetts*
  Supported an expert in the analysis of an alleged conspiracy to rig bids.

- ***In re: High Tech Employees Antitrust Litigation***
  *US District Court, Northern District of California*
  Supported an expert in the analysis of an alleged conspiracy to suppress employee compensation.

- **Market manipulation**
  Supported an expert in the analysis of alleged market manipulation.

- ***In re: TFT-LCD (Flat Panel) Antitrust Litigation***
  *US District Court, Northern District of California, San Francisco Division*
  Supported an expert in the analysis of pass-through related to allegations of price-fixing.

- ***In re: Metoprolol Succinate End-Payor Antitrust Litigation***
  *US District Court, District of Delaware*
  Supported an expert in the analysis of class certification issues and damages associated with allegations relating to delayed generic entry.

- ***Schering Corporation, and MSP Singapore Company LLC., v. Mylan Pharmaceuticals Inc., and Mylan, Inc.***
  *US District Court, District of New Jersey*
  Supported an expert in the analysis of antitrust liability and damages associated with allegations relating to delayed generic entry.

- **Restraint of trade, breach of contract, and misappropriation of trade secrets**
  Supported an expert in the analysis of lost profits and damages resulting from a restraint of trade, breach of contract, and misappropriation of trade secrets.

- ***In re: Countrywide Financial Corp. Mortgage Market and Sales Practices Litigation***
  *US District Court, Southern District of California*
  Supported an expert in the analysis of class certification related to alleged steering of borrowers to subprime and pay option adjustable-rate mortgage (ARM) loans.

- **Statistical consulting**
  Developed a statistical sampling algorithm to estimate the proportion of documents in a storage facility that were subject to pending litigation.

- ***Pat Cason-Merenda, et al. v. Detroit Medical Center, et al.***
  *US District Court, Eastern District of Michigan*
  Supported an expert in the analysis of class certification issues relating to allegations of wage fixing.

- ***Novell, Inc. v. Microsoft Corporation***
  *US District Court, District of Utah*
  Supported an expert in the analysis of damages associated with allegations of anticompetitive conduct.

## EXPERT TESTIMONY

- ***Federal Trade Commission v. Wilhelmsen and Drew***
  *US District Court for the District of Columbia, No. 18-cv-00414-TSC*
  Testifying expert for the FTC (2018)

- ***Oula Zakaria, individually and as a representative of the class v. Gerber Products Co.***
  *US District Court, Central District of California, Western Division*
  Declaration in support of defendant Gerber's opposition to plaintiff's motion for class certification (2015)

- ***James P. Finton, Jr., et. al. v. ExxonMobil Pipeline Company, et. al.***
  *Circuit Court of Faulkner County, Arkansas, No. 23CV-13-445*
  Affidavit on statistical sampling of bellwether plaintiffs (2015)

- ***In re: Cathode Ray Tube (CRT) Antitrust Litigation***
  *US District Court for the Northern District of California, No.: 13-cv-05261-SC*
  Testifying expert for a defendant (2014)

## ARTICLES AND PUBLICATIONS

"A Primer on Bargaining: How Mergers May Affect Negotiated Prices," with David Toniatti, *Antitrust Source* (April 2018)

"Comment on 'The Flaws in Using the Hypothetical Monopolist Test from the 'Payor Perspective' in Health Care Merger Cases,' by Field, Fisher, and Coglianese," with David Toniatti, *Antitrust Source* (December 2017)

"United States: Economics," with Samuel Weglein, *Global Competition Review's The Antitrust Review of the Americas 2018* (November 2017)

"The Economics of Pass-Through with Production Constraints," with Philipp Tillmann and David Toniatti, *Journal of Competition Law & Economics* (May 2016)

"A Modified Approach to Random Selection of Bellwether Cases," with Matthew Holian and David Toniatti, *Bloomberg BNA Product Safety & Liability Reporter* (July 6, 2015)

"Average Overcharge Models and Determining Individual Harm in Collective Actions," with Pierre Cremieux and Mark Lewis, *Concurrences: Competition Law Journal*, No. 2, pp. 38-44 (2015)

"A Note on the Economics of Pass-Through with Two-Part Tariff Pricing," *Journal of Competition Law & Economics* (May 2015)

"The Fallacy of Inferring Collusion from Countercyclical Prices," with Aaron Yeater, *Economics Committee Newsletter*, Antitrust Section of American Bar Association, Vol. 14, Number 1 (Spring 2015)

"Random Selection Is Best For MDL Bellwether Trials," with Loren Brown and Matthew Holian, *Law360* (October 20, 2014)

"Applying Econometrics Methods to Address Class Certification," with Pierre Cremieux and Adam Decter, in *Econometrics: Legal, Practical and Technical Issues* (Second Edition), ABA Antitrust Section American Bar Association (2014)

"Teleseminar Summary: Resale Price Maintenance Following *Leegin*: US and Canadian Perspectives," *The Price Point*, Newsletter of the ABA Section of Antitrust Law Pricing Conduct Committee (Spring 2011)

"Development of a Budget-Impact Model to Quantify Potential Cost Savings from Prescription Opioids Designed to Deter Abuse or Ease of Extraction," with Alan White, Howard Birnbaum and Nathanial Katz, *Applied Health Economics Health Policy*, Vol. 7, Issue 1, pp. 61-70 (2009)

"Does Trade Affect Child Health?" with David I. Levine, *Journal of Health Economics*. Volume 25, Issue 3, pp. 538-554 (May 2006)

**APPENDIX B**

**MATERIALS CONSIDERED**

Administrative Office of the Courts Data, 1994-2017.

 "Annual Estimates of the Resident Population by Sex, Age, Race Alone or in Combination, and Hispanic Origin for the United States and States: April 1, 2010 to July 1, 2017 (PEPASR5H)," U.S. Census Bureau, Population Division, as of July 1, 2017, released June 2018, available at https://factfinder.census.gov/faces/nav/jsf/pages/searchresults.xhtml?refresh=t.

Disenfranchising Criminal Offense Codes, Office of the Secretary of State of Mississippi.

Disposition Codes, Office of the Secretary of State of Mississippi.

# APPENDIX C

## DISENFRANCHISING CRIMINAL OFFENSE CODES[1]

| Mississippi Code Section | Description |
|---|---|
| § 97-11-11 | Bribery of Acting or Prospective Officer, Trustee, Agent |
| § 97-11-13 | Bribery: Acceptance by Officer, Agent, Trustee |
| § 97-11-25 | Embezzlement: Entrusted Public Property/Funds Converted for Own Use |
| § 97-11-29 | Embezzlement: Fraudulent Accounting by Public Officer (Penalty) |
| § 97-11-31 | Embezzlement or Fraud Committed by Public Official (Penalty) |
| § 97-11-33 | Extortion: Collection of Fees for Unrendered Services (felony) |
| § 97-13-1 | Elections: Bribery of Elector or Election Officer |
| § 97-17-1 | Arson - Dwelling or Outbuilding |
| § 97-17-11 | Arson - Insured Property |
| § 97-17-13 | Arson - Timber, Woods, Meadow, Marsh |
| § 97-17-3 | Arson - Church/School Building (State-Supported) |
| § 97-17-41 | Grand Larceny |
| § 97-17-41(1) | Larceny, Grand: of an Individual, Property Valued at $500 or more |
| § 97-17-41(2) | Larceny, Grand: of a church valued at $500 or more |
| § 97-17-42 | Larceny, Grand: Vehicle of Another |
| § 97-17-5 | Arson - Structure, Not Dwelling or School |
| § 97-17-53 | Larceny: Livestock |
| § 97-17-59 | Larceny: Timber |
| § 97-17-64 | Larceny: Under Lease/Rental Agreement |
| § 97-17-7 | Arson - Personal Property |
| § 97-17-70 | Receiving Stolen Property (Felony) |
| § 97-17-9 | Arson: Attempt, Aid or Induce to Burn (4th Degree) |
| § 97-19-39 | False Pretenses: Procure Thing of Value by Fraudulent Representation |

---

[1] Counsel for Plaintiffs have advised me that this list of criminal offense codes was provided by the Secretary of State of Mississippi in response to public records requests.

| Mississippi Code Section | Description |
|---|---|
| § 97-19-41 | False Pretenses: Fraudulent Representation of Evidence of Debt |
| § 97-19-45 | False Pretenses: Produce Child with Intent to Intercept Inheritance |
| § 97-19-49 | False Pretenses: Registering Animal Falsely; Giving False Pedigree |
| § 97-19-51 | False Pretenses: Obtain/Deliver Goods Previously Encumbered (Indict.) |
| § 97-19-55 | Bad Checks: Fraudulently Deliver Insufficient Instrument (Indictment) |
| § 97-19-57 | Bad Checks:  Evidence/Presumption of fraudulent intent (Indictment) |
| § 97-19-59 | Bad Checks:  Penalties (Sentence) |
| § 97-21-13 | Forgery: Owning Counterfeit US Coins (Indictment) |
| § 97-21-15 | Forgery: Owning Counterfeit Foreign Coinage (Indictment) |
| § 97-21-17 | Forgery: Possession counterfeit gold/silver coins w/intent to utter |
| § 97-21-19 | Forgery: Signature Purporting to be Agent/Officer of Corporation |
| § 97-21-23 | Forgery: Possession of Counterfeit Printing Plates of Tender |
| § 97-21-29 | Forgery: Making/uttering instrument in own name as act of another |
| § 97-21-3 | Forgery: Failure of Corporate Officer to Maintain Accurate Accounts |
| § 97-21-33 | Forgery - Penalty (Sentence) |
| § 97-21-35 | Pleadings, process & other court papers, licenses, or wr. instruments |
| § 97-21-37 | Forgery: Possession Counterfeit Bank Notes w/Intention to Utter |
| § 97-21-49 | Counterfeit/forged documents: Sale/exchange guilty of forgery |
| § 97-21-7 | Forgery: False Certification of Instrument or Conveyance |
| § 97-21-9 | Forgery: Counterfeit/Altered Stock Certificates, Security (Indictment) |
| § 97-23-19 | Embezzlement by Agent/Officer/Trustee of Company or Private Individual |
| § 97-23-25 | Embezzlement: Money on Deposit; Property in Trust/Received on Contract |
| § 97-23-93 (6)-(7) | Felony Shoplifting |
| § 97-23-94 | Shoplifting - Aiding/Abetting Minor by Person >=18 |
| § 97-29-13 | Bigamy |

| Mississippi Code Section | Description |
|---|---|
| § 97-29-17 | Bribery: Participant in Professional/Amateur Game or Athletic Contest |
| § 97-3-117 | Carjacking |
| § 97-3-117(1) | Carjacking: Taking Vehicle from One s Possession by Force |
| § 97-3-117(2) | Carjacking, Armed: Taking Vehicle by Use of Weapon |
| § 97-3-19 | Murder/Homicide/Capital Murder (Defined/Indictment) |
| § 97-3-19(1) | Murder |
| § 97-3-19(1)(a) | Murder: Deliberate act to effect death |
| § 97-3-19(1)(b) | Murder: During commission of dangerous act, without premeditation |
| § 97-3-19(1)(c) | Murder: During commission of other felony, without premeditation |
| § 97-3-19(1)(d) | Murder: Deliberate design to effect death of unborn child |
| § 97-3-19(2) | Capital Murder |
| § 97-3-19(2)(a) | Capital Murder of a peace officer |
| § 97-3-19(2)(b) | Capital Murder: by individual under sentence of life imprisonment |
| § 97-3-19(2)(c) | Capital Murder: by use or detonation of explosive device |
| § 97-3-19(2)(d) | Capital Murder: by contract |
| § 97-3-19(2)(e) | Capital Murder: with or without design in commission of other felony |
| § 97-3-19(2)(f) | Capital Murder: while engaged in felonious abuse/batter of a child |
| § 97-3-19(2)(g) | Capital Murder: on educational property |
| § 97-3-19(2)(h) | Capital Murder: of elected official |
| § 97-3-19(3) | Murder/Capital Murder: indictment may include lesser included offense |
| § 97-3-21 | Murder/Homicide/Capital Murder (Penalty) |
| § 97-3-37(1) | Homicide; killing of an unborn quick child |
| § 97-3-65 | Rape, Statutory; Sexual Intercourse or Rape of Child under age of 16 |
| § 97-3-65(1)(a) | Statutory rape;  person >17 intercourse w/child |
| § 97-3-65(1)(b) | Statutory rape; perpetrator any age |
| § 97-3-65(3)(a) | Rape, statutory: >=18 and < 21 (Sentencing Statues) |
| § 97-3-65(3)(b) | Statutory rape 21 or older (sentencing statutes) |

| Mississippi Code Section | Description |
| --- | --- |
| § 97-3-65(3)(c) | Statutory rape 18 or older (sentencing statute) |
| § 97-3-65(3)(d) | Statutory rape >= 13 and < 18 (sentencing statute) |
| § 97-3-65(4) | Rape/Sexual Intercourse by use of Substance to Render Victim Helpless |
| § 97-3-67 | Rape; Carnal Knowledge of Unmarried Person over 14, under 18 |
| § 97-3-73 | Robbery:  Taking Person Property by Fear/Violence (Indictment) |
| § 97-3-71 | Rape: Assault w/Intent to Ravish Female of Previous Chaste Character |
| § 97-37-35 | Weapon, Stolen: Possession, Sale, etc. |
| § 97-37-35(3)(a) | Weapon, Stolen: Possession, Sale, etc. - First offense |
| § 97-37-35(3)(b) | Weapon, Stolen: Possession, Sale, etc. - Second, etc., Trafficking |
| § 97-37-35(3)(c) | Weapon, Stolen: Possession, Sale, etc. - Two or more weapons |
| § 97-37-35(4) | Weapon, Stolen: Used in commission of other crime(s) |
| § 97-3-75 | Robbery (Penalty) |
| § 97-3-79 | Robbery, Armed: Use of Deadly Weapon |
| § 97-3-82(3)(b) | Extortion: of Property of another valued at $500 or more |
| § 97-7-53 | Bribery/Influencing: Legislator |
| § 97-7-55 | Bribery: Legislator Accepting/Agreeing to Accept |
| § 97-9-10 | Bribery, Commercial: Give/Offer/Accept Value to Influence Action |
| § 97-9-5 | Bribery, Juror: Acceptance/Offer to Influence Outcome |
| § 97-9-59 | Perjury: Defined - Swear to/Testify Falsely Under Oath (Indictment) |
| § 97-9-61 | Perjury: Penalty |
| § 97-9-63 | Perjury: Subornation (Procurement of Witness to Commit Perjury) |
| § 97-9-65 | Bribery of Witness to Commit Perjury |
| § 97-9-7 | Bribery: Rewarded to Compound/Conceal Crime w/Life/Death Penalty |
| § 97-9-9 | Bribery: Rewarded to Compound/Conceal Crime w/Less than Life Penalty |

# APPENDIX D

## DISPOSITION CODES CONSIDERED TO BE A "CONVICTION"[1]

| Disposition Code Abbreviation | Disposition Code Description |
| --- | --- |
| DEF | SENTENCING DEFERRED |
| GAT | GUILTY PLEA AFTER COMMENCEMENT |
| GLT | FOUND GUILTY BY VERDICT OF JUDGE/JURY |
| HAR | HOUSE ARREST/INTENSIVE SUPERVISION |
| NLC | NOLO CONTENDERE |
| PBN | PROBATION ORDERED, MODIFIED OR CONTINUED |
| PTM | PROBATION COMPLETED |
| RID | REGIMENTED INMATE DISCIPLINE |
| RST | RESTITUTION |
| SEN | SENTENCED TO INCARCERATION |
| SHK | SHOCK PROBATION |
| TSV | SENTENCED TO TIME SERVED |
| REV | REVOCATION OF PROBATION OR SUSPENDED SEN |
| RSN | RESENTENCED |
| GPA | GUILTY PLEA ACCEPTED |
| ISP | INTENSIVE SUPERVISED PROBATION |
| DTH | SENTENCED TO DEATH |
| LIF | SENTENCED TO LIFE |
| EXP | EXPUNGEMENT OF RECORDS |
| PRV | PETITION TO REVOKE (RULING ON) |
| RRV | RID REVIEW |
| SSP | SENTENCE ENTIRELY SUSPENDED |

---

[1] Counsel for Plaintiffs have advised me that this list of disposition codes was provided by the Secretary of State of Mississippi in response to public records requests.

# APPENDIX E
## DETAILS OF DATA PREPARATION METHODOLOGY

1.      From the AOC data, I define the number of Disenfranchised Individuals and the number of Post-Sentence Individuals. These are defined based on assumptions and data described in Section III of my Report.

2.      To define the number of Disenfranchised Individuals, I restrict the AOC data to only records where (1) the criminal code (the variable "Sentencing Code Ordinance" in the AOC data) for the record is listed in Appendix C (the variable "Mississippi Code Section") and (2) the disposition code (the variable "Disposition" in the AOC data) for the record is listed in Appendix D (the variable "Disposition Code Description"). I determine that an individual has multiple disenfranchising convictions if there is more than one observation for the same combination of the first name, middle name, last name, and date of birth in the AOC data.[1] If an individual has multiple disenfranchising convictions, I include only the record with the most recent sentence completion date.

3.      To determine the number of Post-Sentence Individuals, I define the sentence to be the combination of the sentence term and probation term as they appear in the AOC data. The AOC data records the sentence term in days as the variable "Total Time Sentenced Days" and the probation term in days as the variable "Total Probation Time Days." I add these days to the date of disposition (the variable "Date of Disposition" in the AOC data) to find the date upon

---

[1]     These variables are "First Name," "Middle Name," "Last Name," and "Date of Birth" in the AOC Data. "Date of Birth" is missing for 60,820 records in the AOC data and can take values that are illogical. For example, Ashleigh Steed Fininin's date of birth in the AOC data is recorded as October 31, 2197.  I include records with missing or illogical birthdates in my results because the accuracy of the information entered does not affect the criteria used to define each of the categories presented.

E-1

which the total sentence term is completed. If an individual is sentenced to either life or death, I consider that individual never to complete his or her sentence. If a record has no sentence term and no probation term information then I exclude the record from my results.[2]

4.     Conviction of felony shoplifting is included in Appendix D under the codes "97-23-93(6)" and "97-23-93(7)," however only the code "97-23-93" appears in the AOC data. I do not include records associated with the code "97-23-93" in my results.

5.     The "Ethnicity" variable is native to the AOC data and takes the values "BLACK," "WHITE," "ASIAN," "HISPANIC," "OTHER," "AMERIND," and "UNKNOWN." I include records with ethnicity listed as "ASIAN," "HISPANIC," or "AMERIND" in the category "Other" in my results.

---

[2]     The sentence term and probation term variables in the AOC data record zero days separately from missing information.