# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| ROY HARNESS, et al.,<br><br>     Plaintiffs,<br><br>       v.<br><br>DELBERT HOSEMANN, SECRETARY OF STATE OF MISSISSIPPI, in his official capacity,<br><br>     Defendant. | Civil Action No. 3:17-cv-791-DPJ-FKB<br>*Consolidated with*<br>Civil Action No. 3:18-cv-188-CWR-LRA |
| DENNIS HOPKINS, et al.,<br><br>     Plaintiffs,<br><br>       v.<br><br>DELBERT HOSEMANN, SECRETARY OF STATE OF MISSISSIPPI, in his official capacity,<br><br>     Defendant. | ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE *HOPKINS* PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND ........................................................................................3

ARGUMENT ................................................................................................................5

I.      The *Hopkins* Plaintiffs Satisfy the Requirements of Rule 23(a) ............................6

          A.     The Proposed Class Is So Numerous That Joinder Is Impracticable ......................7

          B.     The Class Members' Claims Raise Numerous Common Questions of Law ...........8

          C.     The Named Plaintiffs' Claims Are Typical of the Class Members' Claims ..........10

          D.     The Named Plaintiffs Will Fairly and Adequately Represent the Interests
                of the Class ........................................................................................................12

          E.     The Proposed Class Is Sufficiently Ascertainable ................................................14

II.     The *Hopkins* Plaintiffs Meet the Requirements of Rule 23(b)(2) .....................................15

CONCLUSION ............................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashe v. Bd. of Elections in City of New York*,
  124 F.R.D. 45 (E.D.N.Y. 1989) ................................................................. 10

*Buroff v. Gladieux*,
  No. 1:17-cv-124-TLS, 2018 WL 2277093 (N.D. Ind. May 17, 2018) .................................. 10

*Cole v. Livingston*,
  No. 4:14-cv-1698 WL 3258345 (S.D. Tex. June 14, 2016) .................................. 13

*Conn. State. Dep't of Soc. Svcs. v. Shalala*,
  No. 3:99-cv-2020 (SRU), 2000 WL 436616 (D. Conn. Feb. 28, 2000) .............................. 16

*Dockery v. Fischer*,
  253 F. Supp. 3d 832 (S.D. Miss. 2015) .................................................... passim

*Frank v. Walker*,
  196 F. Supp. 3d 893 (E.D. Wis. 2016) ................................................ 11, 12

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ........................................ 5, 9

*J.D. v. Nagin*,
  255 F.R.D. 406 (E.D. La. 2009) ............................................................ 7

*Jane B. by Martin v. New York City Dept. of Soc. Servs.*,
  117 F.R.D. 64 (S.D.N.Y. 1987) ........................................................... 17

*Jones v. Diamond*, 519 F.2d 1090 (5th Cir. 1975) ........................................ 6, 7, 14

*Lightbourn v. County of El Paso*,
  118 F.3d 421 (5th Cir. 1997) ............................................................ 10

*M.D. v. Perry*,
  294 F.R.D. 7 (S.D. Tex. 2013) .......................................................... 5, 8

*Mitchell v. Johnston*,
  701 F.2d 337 (5th Cir. 1983) ........................................................... 16

*Morrow v. Washington*,
  277 F.R.D. 172 (E.D. Tex. 2011) .......................................................... 7

*Mullen v. Treasure Chest Casino*,
  186 F.3d 620 (5th Cir. 1999) ............................................................. 7

*Murphree v. Winter*,
  589 F. Supp. 374 (S.D. Miss. 1984) ....................................................... 8

*ODonnell v. Harris County, Texas*,
  No. H-16-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017) .................................. 6, 14, 15

*Pederson v. La. St. Univ.*,
  213 F.3d 858 (5th Cir. 2000) ........................................................... 7, 8

*Phillips v. Joint Legislative Committee on Performance*
    *and Expenditure Review of State of Miss.*,
    637 F.2d 1014 (5th Cir. 1981) ....................................................................... 8, 12

*Ratliff v. Beale*,
    20 So. 865 (Miss. 1896) ..................................................................................... 4

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ........................................................................................... 5

*Steward v. Janek*,
    315 F.R.D. 472 (W.D. Tex. 2016) ................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 9, 10, 15

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ..................................................................... 13, 15


**Statutes**

Miss. Code § 23-15-11 ............................................................................................ 3, 6

Miss. Code § 23-15-19 ............................................................................................ 5, 6

Miss. Code § 23-15-213(1) .......................................................................................... 5

Miss. Code § 23-15-223(4) .......................................................................................... 5

Miss. Code § 23-15-47(3) ............................................................................................ 5

Miss. Code § 47-7-41 ...................................................................................... 3, 9, 11

Miss. Code Ann. § 23-15-211.1 .................................................................................. 2


**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................................... 5

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 3, 7

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 3

Fed. R. Civ. P. 23(a)(3) .......................................................................................... 3, 10

Fed. R. Civ. P. 23(a)(4) .......................................................................................... 3, 12

Fed. R. Civ. P. 23(b)(2) ...................................................................................... 3, 5, 15


**Constitutional Provisions**

Miss. Const. art. XII, § 241 ............................................................................... passim

Miss. Const. art. XII, § 253 ............................................................................... passim

Miss. Const. art. XII, § 241 (1890) ........................................................................ 4

Miss. Const. art. XII, § 253 (1890) ........................................................................ 4

U.S. Const. amend. XIV, § 2 ................................................................................. 1

**Legislation**

H.B. 1562, 2012 Leg., Reg. Sess. (Miss. 2012) .................................................... 11

H.B. 1703, 2013 Leg., Reg. Sess. (Miss. 2013) ...................................................... 4

H.B. 1649, 2014 Leg., Reg. Sess. (Miss. 2014) ...................................................... 4

H.B. 625, 2014 Leg., Reg. Sess. (Miss. 2014) ....................................................... 4

S.B. 2035, 2014 Leg., Reg. Sess. (Miss. 2014) ..................................................... 4

H.B. 1686, 2015 Leg., Reg. Sess. (Miss. 2015) ...................................................... 4

H.B. 1685, 2015 Leg., Reg. Sess. (Miss. 2015) ...................................................... 4

H.B. 1684, 2015 Leg., Reg. Sess. (Miss. 2015) ...................................................... 4

H.B. 1689, 2015 Leg., Reg. Sess. (Miss. 2015) ...................................................... 4

S.B. 2107, 2017 Leg., Reg. Sess. (Miss. 2017) ...................................................... 4

H.B. 1475, 2017 Leg., Reg. Sess. (Miss. 2017) ...................................................... 4

H.B. 612, 2017 Leg., Reg. Sess. (Miss. 2017) ....................................................... 4

S.B. 2951, 2017 Leg., Reg. Sess. (Miss. 2017) ...................................................... 4

H.B. 742, 2017 Leg., Reg. Sess. (Miss. 2017) ....................................................... 4

H.B. 1750 2017 Leg., Reg. Sess. (Miss. 2017) ...................................................... 4

Plaintiffs Dennis Hopkins, Herman Parker Jr., Walter Wayne Kuhn Jr., Byron Demond Coleman, Jon O'Neal and Earnest Willhite ("*Hopkins* Plaintiffs" or "Named Plaintiffs") respectfully submit this memorandum of law in support of the *Hopkins* Plaintiffs' Motion for Class Certification (the "Motion") in *Hopkins et al. v. Hosemann*, captioned above (consolidated with *Harness et al. v. Hosemann*, No. 3:17-cv-791-DPJ-FKB). The *Hopkins* Plaintiffs have brought this voting rights action against defendant Secretary of State Delbert Hosemann ("Defendant"), in his official capacity. Pursuant to L. U. Civ. R. 7(b)(6)(A), Plaintiffs respectfully request oral argument on this Motion.

## PRELIMINARY STATEMENT

This is a motion for class certification in a voting rights action that challenges Mississippi's lifetime voting ban imposed as a punishment on individuals convicted of certain disenfranchising offenses ("disenfranchised individuals") pursuant to Section 241 of the Mississippi Constitution. The *Hopkins* Plaintiffs also challenge the arbitrary and discriminatory legislative process for the restoration of voting rights to disenfranchised individuals established in Section 253 of the Mississippi Constitution (the "suffrage restoration provision").[1]

Mississippi's lifetime voting ban violates the Eighth Amendment's prohibition on cruel and unusual punishment, as measured under modern standards of fairness and decency. It also violates Section 2 of the Fourteenth Amendment, which only permits states to temporarily "abridge" an individual's right to vote based on his or her "participation in rebellion, or other crime." U.S. Const. amend. XIV, § 2.

---

[1] The Class Action Complaint in *Hopkins et al. v. Hosemann* refers to Section 253 of the Mississippi Constitution as the "suffrage bill provision." *See, e.g.,* ¶¶ 2, 4. The *Hopkins* Plaintiffs use the terms "suffrage bill provision" and "suffrage restoration provision" interchangeably to refer to Section 253 of the Mississippi Constitution.

Mississippi's suffrage restoration provision violates the Equal Protection Clause of the Fourteenth Amendment because (i) it permits state officials to arbitrarily restore voting rights to some disenfranchised individuals but not others; and (ii) it was enacted in 1890 with racially discriminatory intent, has not since been amended, and continues to disproportionately affect black individuals in Mississippi. The suffrage restoration provision also violates the First Amendment by impermissibly vesting government officials with unbridled discretion to determine who may engage in political expression and political association, both fundamental First Amendment freedoms implicated by the right to vote.

The six Named Plaintiffs are permanently prohibited from voting in Mississippi even though they have completed the terms of their sentences. One of the Named Plaintiffs, Herman Parker Jr., unsuccessfully attempted to regain his voting rights by suffrage bill. All of the Named Plaintiffs lack access to a fair and objective process for the restoration of their voting rights. The defendant in this action is Secretary of State Delbert Hosemann, "Mississippi's chief election officer." Miss. Code Ann. § 23-15-211.1. Defendant is sued in his official capacity only.

The *Hopkins* Plaintiffs seek class-wide declaratory and injunctive relief under Rule 23(b)(2) on behalf of all individuals who are now, or who may in the future become, disenfranchised under Mississippi state law by reason of a conviction of a disenfranchising offense, and who have completed the term of incarceration, supervised release, parole and/or probation for each such conviction. The *Hopkins* Plaintiffs seek to enjoin Defendant from denying any individual otherwise qualified to vote in Mississippi the right to register to vote and cast a ballot after the completion of a sentence for the conviction of a disenfranchising offense;

and to require Defendant to automatically restore voting rights to disenfranchised individuals upon sentence completion.[2]

The class proposed by the *Hopkins* Plaintiffs satisfies each of the Rule 23 requirements for class certification. First, the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Second, there are several "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Third, the claims of the Named Plaintiffs are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Fourth, the Named Plaintiffs and their undersigned counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirements of Rule 23(b)(2) are also met because Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The *Hopkins* Plaintiffs' Motion should therefore be granted.

## FACTUAL BACKGROUND

Pursuant to Section 241 of the Mississippi Constitution, any individual convicted of certain disenfranchising offenses loses the right to vote for the rest of his or her life. Miss. Const. art. XII, § 241; *see also* Miss. Code § 23-15-11. A disenfranchised individual may only regain his or her right to vote at the behest of the Governor, or through a suffrage bill passed by the Mississippi Legislature pursuant to the suffrage restoration provision of the Mississippi Constitution. *See* Miss. Const. art. XII, §§ 241, 253; Miss. Code § 47-7-41. The suffrage restoration provision states as follows:

---

[2] As used by the *Hopkins* Plaintiffs, the term "sentence" is defined as, and limited to, the term of incarceration, supervised release, parole and/or probation imposed for the conviction of a disenfranchising offense.

> The legislature may, by a two-thirds vote of both houses, of all members elected, restore the right of suffrage to any person disqualified by reason of crime; but the reasons therefor shall be spread upon the journals, and the vote shall be by yeas and nays.

Miss. Const. art. XII, § 253. Regaining the right to vote by suffrage bill is rare. During the five years between 2013 and 2017, only fourteen disenfranchised individuals obtained the restoration of their voting rights by suffrage bill.[3]

Both the lifetime voting ban and the suffrage bill provision were enacted more than 125 years ago by delegates to the 1890 Constitutional Convention. *See* Miss. Const. art. XII, §§ 241, 253 (1890). The voting-related provisions of Mississippi's 1890 Constitution were carefully designed "to obstruct the exercise of the franchise by the negro race." *Ratliff v. Beale*, 20 So. 865, 868 (Miss. 1896). The suffrage bill provision of the Mississippi Constitution has survived completely unchanged since its enactment in 1890. *Compare* Miss. Const. art. XII, §253 (1890) *with* Miss. Const. art. XII, §253.

As Mississippi's chief election officer, Defendant has numerous responsibilities in implementing Mississippi's lifetime voting ban, including ensuring that disenfranchised individuals cannot register to vote or cast a ballot. Among other duties and obligations, Defendant (i) determines the instructions and application form for Mississippi's Mail-In Voter Registration Application, which enumerates the offenses Defendant contends are disenfranchising; (ii) establishes rules and procedures for entering names into and removing

---

[3] H.B. 1703, 2013 Leg., Reg. Sess. (Miss. 2013); H.B. 1649, 2014 Leg., Reg. Sess. (Miss. 2014); H.B. 625, 2014 Leg., Reg. Sess. (Miss. 2014); S.B. 2035, 2014 Leg., Reg. Sess. (Miss. 2014); H.B. 1686, 2015 Leg., Reg. Sess. (Miss. 2015); H.B. 1685, 2015 Leg., Reg. Sess. (Miss. 2015); H.B. 1684, 2015 Leg., Reg. Sess. (Miss. 2015); H.B. 1689, 2015 Leg., Reg. Sess. (Miss. 2015); S.B. 2107, 2017 Leg., Reg. Sess. (Miss. 2017); H.B. 1475, 2017 Leg., Reg. Sess. (Miss. 2017); H.B. 612, 2017 Leg., Reg. Sess. (Miss. 2017); S.B. 2951, 2017 Leg., Reg. Sess. (Miss. 2017); H.B. 742, 2017 Leg., Reg. Sess. (Miss. 2017); H.B. 1750, 2017 Leg., Reg. Sess. (Miss. 2017).

names from Mississippi's statewide electronic voter registration database; and (iii) trains the state's election commissioners and registrars on the denial of voter registration applications from disenfranchised individuals, as well as the removal of the names of disenfranchised individuals from the voter registration database. *See* Miss. Code §§ 23-15-47(3), 23-15-213(1) and 23-15-223(4); *see also* Miss. Code § 23-15-19.

## ARGUMENT

To obtain class certification, "all of the requirements of Rule 23(a) and at least one of the alternative requirements of Rule 23(b) must be satisfied." *Dockery v. Fischer*, 253 F. Supp. 3d 832, 846 (S.D. Miss. 2015). Plaintiffs must establish numerosity ("the class is so numerous that joinder of all members is impracticable"); commonality ("there are questions of law or fact common to the class"); typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a). Plaintiffs seeking certification under Rule 23(b)(2) must further establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs need not demonstrate that they will ultimately prevail on the merits to obtain class certification. *See In re Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (class certification is not "a dress rehearsal for the merits"); *M.D. v. Perry*, 294 F.R.D. 7, 25 (S.D. Tex. 2013) ("[A]ny inquiry into the merits of a plaintiff's case . . . is limited to those issues germane to class certification.").

Because the *Hopkins* Plaintiffs satisfy the requirements of Rules 23(a) and 23(b)(2), as demonstrated below, class certification should be granted. *See Shady Grove Orthopedic*

*Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule *entitling* a plaintiff whose suit meets the specified criteria to pursue his claim as a class action.") (emphasis added).

## I.     THE *HOPKINS* PLAINTIFFS SATISFY THE REQUIREMENTS OF RULE 23(a).

The *Hopkins* Plaintiffs propose certification of a single Rule 23(b)(2) class defined to include:

> Any person who (a) is or becomes disenfranchised under Mississippi state law by reason of a conviction of a crime that the Secretary of State contends is disenfranchising under Section 241 of the Mississippi Constitution, Miss. Code § 23-15-11 and/or Miss. Code § 23-15-19, and (b) has completed the term of incarceration, supervised release, parole and/or probation for each such conviction.[4]

As set forth below, the *Hopkins* Plaintiffs satisfy each of Rule 23(a)'s requirements for class certification, which must be "read liberally in the context of civil rights suits" seeking injunctive relief under Rule 23(b)(2). *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975); *see also ODonnell v. Harris County, Texas*, No. H-16-1414, 2017 WL 1542457, at *3 (S.D. Tex. Apr. 28, 2017) (observing that "the Supreme Court and the Fifth Circuit have made clear that courts should

---

[4] The *Hopkins* Plaintiffs have refined the definition of the proposed class set forth in the Complaint by removing the language defining the members to include "[a]ny current or future resident of the State of Mississippi who is a United States citizen, at least 18 years of age, not disqualified under the mental incapacitation provisions in Section 241 of the Mississippi Constitution and Miss. Code § 23-15-11" and replacing that language with "[a]ny person." This semantic change does not alter the scope of the class, however, as only a person eligible to vote in Mississippi can be "disenfranchised under Mississippi state law." To be eligible to vote in Mississippi, a person must meet the requirements that the *Hopkins* Plaintiffs deleted from the class definition. The *Hopkins* Plaintiffs have also streamlined subsection (b) of the class definition to clarify that an individual is considered to have completed his or her sentence if he or she has completed the term of incarceration, supervised release, parole and/or probation for each conviction of a disenfranchising offense. In addition, Plaintiffs have added a reference to Miss. Code § 23-15-19, which governs voter registration and the purging of registered voters.

follow a 'general rule encouraging liberal construction of civil rights class actions'") (quoting *Jones*, 519 F.2d at 1100).

### A.      The Proposed Class Is So Numerous That Joinder Is Impracticable.

To establish numerosity, the proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No definite standard exists as to the size of the class that satisfies the numerosity requirement." *Morrow v. Washington*, 277 F.R.D. 172, 190 (E.D. Tex. 2011); *see also Dockery*, 253 F. Supp. 3d at 846 (explaining that "Rule 23(a)(1) requires examination of the specific facts of each case and imposes no absolute limitations"). The Fifth Circuit has found a class of 100 to 150 members "within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624 (5th Cir. 1999).

"Courts in the Fifth Circuit have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009); *see also Morrow*, 277 F.R.D. at 190 ("The plaintiff need not establish the exact number of potential class members to meet the numerosity requirement."). Rather, plaintiffs must simply provide "*some* evidence or reasonable estimate of the number of purported class members." *Pederson v. La. St. Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (emphasis added).

Plaintiffs have calculated that there are approximately 29,000 individuals who have completed their sentences for disenfranchising convictions in Mississippi state courts between 1994 and 2017. Ex. 1, Rothman Rep. ¶¶ 16-17.[5] This number "easily satisfies the numerosity requirement

---

[5] It was not until 1994 that Mississippi's Administrative Office of the Courts began keeping state court criminal conviction data. *See* website of the, Administrative Office of the Courts, STATE OF MISS. JUDICIARY, https://courts.ms.gov/Newsite2/aoc/aoc.php (last visited Aug. 12, 2018) (noting that the Mississippi Administrative Office of the Courts was established on July 1, 1993 and is responsible for "collect[ing] case statistics from all civil, criminal and youth courts in the state"). Thus, Plaintiffs' calculation excludes prospective class members who were convicted of disenfranchising offenses before 1994.

of Rule 23." *Perry*, 294 F.R.D. at 38 (certifying a class of 12,196 children). In addition to the known

class members, the proposed class includes unknown future members who may (i) be convicted of

disenfranchising offenses and (ii) complete their sentences for any such convictions. Rule 23(a)(1)'s

requirements are therefore "clearly met, for joinder of unknown individuals is certainly

impracticable." *Phillips v. Joint Legislative Committee on Performance and Expenditure Review of

State of Miss.*, 637 F.2d 1014, 1022 (5th Cir. 1981); *see also Pederson*, 213 F.3d at 868 n.11

("[T]he fact that the class includes unknown, unnamed future members . . . weighs in favor of

certification.").

**B.      The Class Members' Claims Raise Numerous Common Questions of Law.**

To satisfy the commonality requirement, plaintiffs must "identify a unified common

policy, practice, or course of conduct that is the source of their alleged injury." *Dockery*, 253 F.

Supp. 3d at 846. By definition, a challenge to an unconstitutional law involves a common policy.

*See id.* at 846-47 (explaining that "[t]he most straightforward" way to "establish the existence of

government policies" is through "express adoption by the relevant entity" of "a legislative or

administrative act"). For example, in *Murphree v. Winter*, the court found the commonality

requirement met where an incarcerated plaintiff alleged that he and similarly situated prisoners

had been denied the right to vote based on an unconstitutional interpretation of Mississippi's

absentee voter law. 589 F. Supp. 374, 379-80 (S.D. Miss. 1984).

In addition to establishing a common policy or practice, plaintiffs must demonstrate that

"there are common questions of law or fact that will be dispositive of the class members'

claim[s]." *Dockery*, 253 F. Supp. 3d at 849. Commonality is satisfied only if plaintiffs' claims

"depend on a common contention . . . of such a nature that it is capable of classwide resolution—

which means that determination of its truth or falsity will resolve an issue that is central to the

8

validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). All that is required for commonality is "a single [such] common contention." *Deepwater Horizon*, 739 F.3d at 811 (addressing *Wal-Mart*'s requirements); *Wal-Mart*, 564 U.S. at 359 ("Even a single common question will do.").

Here, the Named Plaintiffs and proposed class members are subject to a common policy—the lifetime voting ban—because of their convictions of disenfranchising offenses. Ex. 2, Hopkins Decl. ¶¶ 4-5; Ex. 3, Parker Decl. ¶¶ 4, 6; Ex. 4, Kuhn Decl. ¶¶ 4-5; Ex. 5, Coleman Decl. ¶¶ 4-5; Ex. 6, O'Neal Decl. ¶¶ 4-5. The Named Plaintiffs and proposed class members may only regain the right to vote at the behest of the Governor, or through a suffrage bill passed by the Mississippi Legislature. *See* Miss. Const. art. XII, §§ 241, 253; Miss. Code § 47-7-41. The claims of the Named Plaintiffs and proposed class members depend on numerous common contentions, including but not limited to the following:

- Whether the lifetime voting ban for individuals who have completed their sentences for convictions of disenfranchising offenses violates the Eighth Amendment's prohibition on cruel and unusual punishment;

- Whether Section 2 of the Fourteenth Amendment permits states to temporarily "abridge," but does not allow states to permanently "deny," the right to vote based on one's "participation in rebellion, or other crime";

- Whether the standardless suffrage restoration provision empowers legislators to arbitrarily restore voting rights to disenfranchised individuals, in violation of the Equal Protection Clause of the Fourteenth Amendment;

- Whether the suffrage restoration provision impermissibly vests government officials with unfettered discretion to decide applications for the restoration of voting rights, in violation of the First Amendment; and

- Whether the suffrage restoration provision violates the Equal Protection Clause of the Fourteenth Amendment because it was enacted with racially discriminatory intent and continues to have racially discriminatory effects today.

These common contentions will "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 351. Courts have found the commonality requirement satisfied where the plaintiffs raised similar constitutional questions implicating the right to vote. *See, e.g., Ashe v. Bd. of Elections in City of New York*, 124 F.R.D. 45, 47 (E.D.N.Y. 1989) ("As to common questions of law, a broad one exists: whether the class members were improperly deprived by defendants of their [voting] rights."); *Buroff v. Gladieux*, No. 1:17-cv-124-TLS, 2018 WL 2277093, at *4 (N.D. Ind. May 17, 2018) (finding the commonality requirement met where the plaintiff alleged that the defendant "unlawfully disenfranchised" individuals held in the county jail by "denying them the fundamental right to vote").

Because the claims of the Named Plaintiffs and proposed class members raise common contentions concerning the same state constitutional and statutory provisions, Rule 23(a)(2)'s commonality requirement is satisfied here.

### C.   The Named Plaintiffs' Claims Are Typical of the Class Members' Claims.

To satisfy the typicality requirement, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality . . . is not demanding." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). The key inquiry is whether there is "similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Id*. As a practical matter, "'[t]he commonality and typicality requirements of Rule 23(a) tend to merge.'" *Wal-Mart,* 564 U.S. at 349 n.5. Once commonality is demonstrated, typicality often "will follow as a matter of course." *Dockery*, 253 F. Supp. 3d at 850.

Here, the claims of the Named Plaintiffs are indisputably typical of the claims of the proposed class members. Like the proposed class members, the Named Plaintiffs have been

convicted of disenfranchising offenses and have completed the terms of their sentences for those convictions. Ex. 2, Hopkins Decl. ¶ 4; Ex. 3, Parker Decl. ¶ 4; Ex. 4, Kuhn Decl. ¶ 4; Ex. 5, Coleman Decl. ¶ 4; Ex. 6, O'Neal Decl. ¶ 4. The Named Plaintiffs and proposed class members are subject to Mississippi's unconstitutional lifetime voting ban. None of the Named Plaintiffs or proposed class members will ever be eligible to vote in Mississippi unless his or her voting rights are restored by the Mississippi Legislature through a suffrage bill, or at the behest of the Governor. Miss. Const. art. XII, §§ 241, 253; Miss. Code § 47-7-41. The Named Plaintiffs and class members challenge the constitutionality of Mississippi's lifetime voting ban and suffrage bill provision, and seek the immediate and automatic restoration of their voting rights.

One of the Named Plaintiffs, Mr. Herman Parker Jr., unsuccessfully attempted to obtain the restoration of his voting rights by suffrage bill. Ex. 3, Parker Decl. ¶ 5; H.B. 1562, 2012 Leg., Reg. Sess. (Miss. 2012). Mr. Parker's claims and the claims of the other Named Plaintiffs challenging the suffrage bill provision are typical of the claims of the proposed class members—both those who have and those who have not attempted to petition for a suffrage bill—because all of their claims hinge on a common hurdle to obtaining the restoration of their voting rights: the requirement of a suffrage bill passed by the Mississippi Legislature.[6]

In *Frank v. Walker*, 196 F. Supp. 3d 893 (E.D. Wis. 2016), the district court found typicality in analogous circumstances. There, the plaintiffs sought certification of a class of individuals who faced barriers to obtaining a voter identification card. Two of the named plaintiffs had unsuccessfully applied for a voter identification card, one of the named plaintiffs

---

[6] Mr. Parker's claims challenging Mississippi's lifetime voting ban are also typical of the claims of the proposed class members because Mr. Parker, like all of the proposed class members, has lost his right to vote for the rest of his life based on a conviction of a disenfranchising offense.

had never attempted to obtain a voter identification card, and one of the named plaintiffs was able to circumvent the voter identification card requirement. *Id.* at 900. The court found the typicality requirement satisfied because "[t]he named plaintiffs' claims share[d] the same essential characteristics as the claims of the class at large," which the court identified as "(1) the lack of a qualifying ID, and (2) the existence of a high hurdle to obtaining such ID." *Id.* at 902. The court granted certification of a class defined as "all those eligible to vote in Wisconsin who cannot with reasonable effort obtain a qualifying photo ID." *Id.* at 901.

Like the class members in *Frank*, Mr. Parker and the proposed class members cannot with reasonable effort obtain the restoration of their voting rights because there is no fair and objective process for disenfranchised individuals to regain the right to vote in Mississippi. Mr. Parker's claims are therefore typical of the claims of class members who petitioned to have their voting rights restored by suffrage bill, as well as those class members who never attempted to petition for a suffrage bill. *See, e.g.*, *Phillips*, 637 F.2d at 1023 (explaining, in the context of a typicality analysis, that the Fifth Circuit has "approved the practice of allowing rejected applicants to represent classes including those deterred from applying").

Because the claims of Named Plaintiffs challenge the same laws and policies, under the same legal theories, as the claims of the proposed class members, the typicality requirement is met here.

### D.   The Named Plaintiffs' Claims Will Fairly and Adequately Represent the Interests of the Class.

To satisfy the adequacy requirement, plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in the Fifth Circuit consider "the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees," as well as "the

zeal and competence of the representatives' counsel." *Dockery*, 253 F. Supp. 3d at 850. The

adequacy standard for class representatives "is not exacting; it is sufficient that the class

representatives have a general understanding of their position as plaintiffs with respect to the

cause of action and the alleged wrongdoing perpetrated against them by the defendants." *Steward*

*v. Janek*, 315 F.R.D. 472, 490 (W.D. Tex. 2016); *see also Cole v. Livingston*, No. 4:14-cv-1698,

2016 WL 3258345, at *9 (S.D. Tex. June 14, 2016), *aff'd sub nom Yates v. Collier*, 868 F.3d 354

(5th Cir. 2017) (class representatives need not have "a sophisticated understanding of the legal

intricacies involved in class action lawsuits" to satisfy the adequacy requirement).

 Here, the interests of the Named Plaintiffs are identical to the interests of the proposed

class. Like the proposed class members, the Named Plaintiffs are permanently prohibited from

voting in Mississippi based on the conviction of a disenfranchising offense, even though they

have completed the terms of their sentences. The Named Plaintiffs have attested that they

understand the nature of this action. Ex. 2, Hopkins Decl. ¶¶ 7, 9; Ex. 3, Parker Decl. ¶¶ 8, 10;

Ex. 4,  Kuhn Decl. ¶¶ 6, 8; Ex. 5, Coleman Decl. ¶¶ 7, 9; Ex. 6, O'Neal Decl. ¶¶ 7, 9. The Named

Plaintiffs have also attested that they understand and accept the responsibilities of serving as

named plaintiffs. *Id.* The Named Plaintiffs have declared that they are willing and able to take an

active role in this litigation, and that they will protect the interests of absent class members. Ex.

2, Hopkins Decl. ¶¶ 9-10; Ex. 3, Parker Decl. ¶¶ 10-11; Ex. 4, Kuhn Decl. ¶¶  8-9; Ex. 5,

Coleman Decl. ¶¶ 9-10; Ex. 6, O'Neal Decl. ¶¶ 9-10.

 The Named Plaintiffs are represented by experienced and qualified counsel who will

continue to vigorously and diligently prosecute this action on behalf of the proposed class:

namely, the Southern Poverty Law Center and Simpson Thacher & Bartlett LLP. Counsel for

Plaintiffs have extensive experience and expertise in class actions and other complex litigation,

including civil rights class actions. Ex. 7, Owens Decl. ¶¶ 1, 4-5; Ex. 8, Youngwood Decl. ¶¶ 1, 5-6. Counsel for Plaintiffs have also committed substantial resources to the prosecution of this action. Ex. 7, Owens Decl. ¶ 6; Ex. 8, Youngwood Decl. ¶ 7. Counsel for Plaintiffs know of no conflicts among members of the classes or between the attorneys and members of the classes. Ex. 7, Owens Decl. ¶ 8; Ex. 8, Youngwood Decl. ¶ 8. Named Plaintiffs and their counsel therefore meet the requirements of Rule 23(a)(4) and, in certifying the class, the Court should also appoint Plaintiffs' counsel as class counsel pursuant to Rule 23(g).

**E.     The Proposed Class Is Sufficiently Ascertainable**

Finally, the proposed class satisfies the implied requirement of ascertainability, which has limited applicability in the context of class actions seeking injunctive relief under Rule 23(b)(2). *See Jones*, 519 F.2d at 1100 (explaining that in a Rule 23(b)(2) class action, "it is not necessary that the members of the class be so clearly identified that any member can be presently ascertained"); *see also ODonnell*, 2017 WL 1542457, at *3 ("[T]he strict ascertainability requirements for a proposed damages class action do not apply to a Rule 23(b)(2) class seeking prospective relief under the Fifth Circuit's standard for civil rights litigation.").

Many of the members of the proposed class can be identified using records maintained by Mississippi's Administrative Office of the Courts ("AOC").[7] These records include the name of each individual convicted in a Mississippi state court of a disenfranchising offense, as well as the date of conviction and the length of each individual's sentence. Ex. 1, Rothman Rep. ¶ 11. Class members whose convictions predate 1994 and thus may not be identifiable through the AOC records can be reached and informed through the various forms of injunctive relief sought by

---

[7] AOC records are available for convictions in Mississippi state courts from 1994 onwards. *See* n. 6, *supra*.

Plaintiffs—including a public awareness campaign, the revision of voter registration application forms and voter information materials, and the training and education of election commissioners and registrars, who can then communicate voter eligibility requirements to such class members. *See, e.g.*, *ODonnell*, 2017 WL 1542457, at *4 (certifying a class consisting of misdemeanor arrestees who could not pay their bail where "[t]hose subject to secured money bail are readily ascertainable from the records [defendant] maintains" and "[t]hose who cannot pay because of indigence will be objectively and readily identifiable from the affidavits of financial ability to post bond"). The proposed class is therefore sufficiently ascertainable for purposes of a Rule 23(b)(2) class action.

## II.     THE *HOPKINS* PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(B)(2).

"Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Wal-Mart*, 564 U.S. at 360 (quoting Fed. R. Civ. P. 23(b)(2)). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful as to all of the class members or as to none of them." *Id.* "[C]ivil rights cases . . . are prime examples of what (b)(2) is meant to capture." *Id.* at 361.

"In the Fifth Circuit, Rule 23(b)(2) has been interpreted to have three components." *Dockery*, 253 F. Supp. 3d at 850. "First, class members must have been harmed in essentially the same way." *Id.* "Second, injunctive relief must predominate over monetary damage claims." *Id.* at 851. "Third, the injunctive relief must be specific." *Id.* "The precise terms of the injunction need not be decided at class certification." *Id.* All that is required is that "a sufficiently specific injunction can be conceived." *Id.; see also Yates*, 868 F.3d at 368 (explaining that "Rule 23(b)(2)

15

does not require that every [detail] of injunctive relief be spelled out at the class certification stage").

Each of these three requirements for class certification under Rule 23(b)(2) is met here. First, the Named Plaintiffs and proposed class members have been "harmed in essentially the same way" by Mississippi's lifetime voting ban and its suffrage bill provision because they have lost the right to vote forever based on the conviction of a disenfranchising offense, and they lack access to a fair and objective process for the restoration of their voting rights. *Dockery*, 253 F. Supp. 3d at 850. Second, the Named Plaintiffs and proposed class members seek only declaratory and injunctive relief.

Third, the primary injunctive relief requested—the automatic restoration of voting rights to disenfranchised individuals upon completion of their sentences for disenfranchising offenses—is specific and will benefit the Named Plaintiffs and proposed class members at once. Plaintiffs also seek an Order requiring Defendant to provide notice of eligibility to vote to disenfranchised individuals who have completed their sentences for disenfranchising offenses; revise voter registration application forms and voter information materials in accordance with the terms of the Court's judgment; and train and educate all Mississippi state officials involved in voter registration and voter purging on compliance with the terms of the Court's judgment. This relief will benefit all class members at once, and likely cannot be effectuated without certification of the proposed class. *See Mitchell v. Johnston*, 701 F.2d 337, 345 (5th Cir. 1983) (certifying class where the "plaintiffs sought not only declaratory and injunctive relief, but moved the district court to require [the defendants] to give notice to all eligible . . . children of the reinstatement of their guaranteed benefits"); *Conn. State. Dep't of Soc. Svcs. v. Shalala*, No. 3:99-cv-2020 (SRU), 2000 WL 436616, at *3 (D. Conn. Feb. 28, 2000) (certifying class where

16

"the plaintiffs [were] not merely seeking to stop the defendant's conduct" but were also "seeking an order that the defendant start acting to correct the alleged problems"); *Jane B. by Martin v. New York City Dept. of Soc. Servs.*, 117 F.R.D. 64, 72 (S.D.N.Y. 1987) (finding class certification "necessary to guarantee that mandatory relief runs to the benefit of all members of the class").  The requirements of Rule 23(b)(2) are therefore satisfied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the *Hopkins* Plaintiffs' Motion for Class Certification, issue an Order certifying the proposed class pursuant to Rule 23(b)(2), and appoint the undersigned as class counsel pursuant to Rule 23(g).

Dated: August 15, 2018

By:    /s/ Paloma Wu

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*pro hac vice*)
Janet A. Gochman (*pro hac vice*)
Nihara K. Choudhri (*pro hac vice*)
Isaac Rethy (*pro hac vice*)
Tyler Anger (*pro hac vice*)
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
jyoungwood@stblaw.com
jgochman@stblaw.com
nchoudhri@stblaw.com
irethy@stblaw.com
tyler.anger@stblaw.com

SOUTHERN POVERTY LAW CENTER
Jody E. Owens, II (Miss. Bar No. 102333)
Paloma Wu (Miss. Bar No. 105464)
111 East Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882
Jody.Owens@splcenter.org
Paloma.Wu@splcenter.org

Lisa Graybill (*pro hac vice*)
1055 St. Charles Avenue
New Orleans, LA 70130
(504) 486-8982
Lisa.Graybill@splcenter.org

*Attorneys for the Hopkins Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Paloma Wu, hereby certify that a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by email to all parties by the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

This 15th day of August, 2018.

/s/Paloma Wu

Paloma Wu