IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ROY HARNESS, ET AL.**                                                              **PLAINTIFFS**

**VS.**                               **CIVIL ACTION NO. 3:17cv791-DPJ-FKB**

**DELBERT HOSEMANN, SECRETARY OF
STATE OF MISSISSIPPI**                                           **DEFENDANT**

*consolidated with*

**DENNIS HOPKINS, ET AL.**                                        **PLAINTIFFS**

**VS.**

**SECRETARY OF STATE DELBERT
HOSEMANN, in his official capacity**                                **DEFENDANT**
_____

**MEMORANDUM OF AUTHORITIES
SUPPORTING SECRETARY HOSEMANN'S RESPONSE TO THE
*HOPKINS* PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**
_____

      Some civil rights-related lawsuits justify class action treatment to protect fleeting claims from mootness, or facilitate classwide relief.  The *Hopkins* action isn't one of them.  To the contrary, this is a classic broadside constitutional challenge.  Based on five separate causes of action, the named *Hopkins* plaintiffs want the Court to declare Mississippi's felon disqualification laws facially invalid in every circumstance, and enjoin the sole named defendant, Secretary of State Delbert Hosemann, from enforcing them.  No need exists to multiply the parties' burdens and fees, and overall complexity of the case, with class proceedings.  No class certification is necessary to accomplish the *Hopkins* plaintiffs' (stated) goals.

      The Court should deny certification.  Or, at a minimum, the Court should revise the proposed definition of the *Hopkins* plaintiffs' allegedly needed class.

**FACTUAL AND PROCEDURAL BACKGROUND**

The named *Hopkins* plaintiffs include six Mississippi residents. [Complaint at pp. 4-7, No. 3:18cv188, Dkt. 45]. Each is currently disqualified as an elector under state law on account of a felony conviction. [*Id.* at pp. 4-7]. Each has allegedly completed the sentence associated with his disqualifying crime. [*Id.* at pp. 4-7].

Earlier this year, the *Hopkins* plaintiffs filed this lawsuit solely against Secretary of State Hosemann. [*See generally id.*]. They assert five separate facial constitutional challenges to two Mississippi Constitutional provisions and related statutes under the U.S. Constitution. [*Id.* at pp. 38-43]. The alleged causes of action include:

• an Eighth Amendment claim targeting the felony conviction disqualification provisions in Mississippi Constitution Section 241, as well as related Mississippi Code Sections 23-15-11 and 23-15-19;

• a Fourteenth Amendment, Section 2 claim targeting Section 241 and the related statutes;

• an Equal Protection Clause "arbitrariness" claim focused on the Legislature's authority to pass suffrage bills under Mississippi Constitution Section 253;

• a First Amendment claim attacking Section 253; and

• a race discrimination-based Equal Protection claim targeting Section 253.

[*Id.* at pp. 38-43].

In addition, the *Hopkins* plaintiffs seek to prosecute their facial constitutional challenges on behalf of all present and future disqualified convicted felons. [*Id.* at pp. 35-37]. As they most recently and specifically put it, they

> seek class-wide declaratory and injunctive relief under Rule 23(b)(2) on behalf of all individuals who are now, or who may in the future become disenfranchised under Mississippi state law by reason of a conviction of a disenfranchising offense, and who have completed the term of incarceration, supervised release, parole and/or probation for each such

conviction.

[Pl. Mem. at p. 2, Dkt. 45]. Secretary Hosemann timely answered the complaint, and disputes the claims' justiciability, viability, and merit. [Answer, No. 3:18cv188, Dkt. 16].

A few months ago, the Court consolidated the *Hopkins* action with *Harness v. Hosemann*, a similar facial challenge against the Secretary targeting Section 241. [Order, Dkt. 34]. September 28, 2018 is the consolidated suits' current discovery deadline. [Aug. 8, 2018 Text-Only Order]. October 4 is the current motion deadline. [Order, Dkt. 16]. Trial is set for the two-week term starting March 4, 2019. [*Id.*]. On August 15, 2018, under the court-established class motion deadline, the *Hopkins* plaintiffs moved to certify their proposed class. [Dkt. 44].

## ARGUMENT

### I. The Showing on Rule 23(a)'s Elements.

The first step of a class certification analysis ordinarily focuses on Rule 23(a). The rule prescribes "[f]our prerequisites" that all classes must meet: "numerosity, commonality, typicality, and adequacy of representation." ***Ibe v. Jones***, 836 F.3d 516, 528 (5th Cir. 2016) (citing Fed. R. Civ. P. 23(a)). The moving parties have the burden of proof on each prerequisite. ***Id.***

Secretary Hosemann disputes all the *Hopkins* plaintiffs' claims asserted against him and, in due time, will seek their dismissal on all available grounds. As to the first step in the Court's class certification analysis, however, the parties agree, in large measure, Rule 23(a)'s prerequisite elements are satisfied.

***Numerosity.*** Rule 23(a)'s numerosity element requires a showing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P.

23(a)(1). The moving party must provide "some evidence or reasonable estimate of the number of purported class members." *Ibe*, 836 F.3d at 528 (internal quotes omitted). And the mere number is not alone dispositive. *Id.* "Rather, a number of facts other than the actual or estimated number of purported class members may be relevant to the numerosity question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Id.* (internal quotes omitted).

Secretary Hosemann admits the *Hopkins* plaintiffs' proposed class is sufficiently numerous, and joining all individual members as parties is infeasible.

***Commonality.*** The commonality "prerequisite" requires proof that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff[s] to demonstrate that the class members have suffered the same injury," but that "does not mean merely they have all suffered a violation of the same provision of law." ***Wal-Mart Stores, Inc. v. Dukes***, 564 U.S. 338, 349-50 (2011) (internal quotes omitted). That means, according to the Fifth Circuit, parties moving for certification must prove they assert a "contention" that "is common to all the class members, is 'central' to the validity of their claims, and is 'capable' of classwide resolution." ***In re Deepwater Horizon***, 739 F.3d 790, 810 (5th Cir. 2014). Importantly, "[t]here is no need to resolve the merits of the common contention at the Rule 23 stage or to attempt prematurely the determination of its truth or falsity." *Id.* (internal quotes omitted).

The *Hopkins* plaintiffs' claims target the validity of two Mississippi constitutional provisions and related statutes with five different legal theories. As cannot be

-4-

emphasized enough, Secretary Hosemann reserves all his defenses, and disputes the justiciability, validity, and merit of the *Hopkins* plaintiffs' claims. He admits, however, that under Rule 23(a)(2)'s "commonality" standard, on a basic level, the *Hopkins* claims present some common legal contentions, which are central to the validity of their claims, and may be capable of classwide resolution.[1]

***Typicality.*** The third "prerequisite" is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." ***Lightbourn v. County of El Paso, Texas***, 118 F.3d 421, 426 (5th Cir. 1997); *see also* ***M.D. v. Perry***, 294 F.R.D. 7, 29 (S.D. Tex. 2013) ("Commonality requires showing that, in fact, all members of the proposed class share a common claim, the validity of which can be determined on a classwide basis. Typicality requires showing that, in fact, the proposed representatives have that claim.").

Subject to the same caveats noted regarding commonality, Secretary Hosemann admits the named *Hopkins* plaintiffs' alleged claims are typical of their proposed class members.

***Adequate Representation.*** The fourth "prerequisite" is that "the

---

[1] At least a few of the named *Hopkins* plaintiffs' claims may, in some minor ways, differ from some (likely many) proposed class members. Take, for example, their cruel and unusual punishment argument. If the Eighth Amendment applies at all to the state's felon disqualification laws (which is disputed), analyzing its application could differ among proposed class members. A named plaintiff convicted of grand larceny may not be similarly situated as a class member convicted of murder. By admitting the *Hopkins* plaintiffs' claims satisfy Rule 23's commonality standard, the Secretary does not concede every single claim the named plaintiffs assert is identical to every individual proposed class member.

representative parties will fairly and adequately represent the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation "encompasses class representatives, their counsel, and the relationship between the two." **Stirman v. Exxon Corp.**, 280 F.3d 554, 563 (5th Cir. 2002) (internal quotes omitted). The Court "must consider the zeal and competence of the representatives' counsel and the willingness and ability of the representatives to take an active role in and control the litigation to protect the interests of absentees." *Id.* (internal quotes omitted).

Secretary Hosemann lacks any doubt that *Hopkins* plaintiffs and their counsel are zealous about their claims, or that counsel are competent to prosecute them. Likewise, with or without class certification, the Secretary admits the *Hopkins* plaintiffs' declarations establish they are willing and able to actively participate in their case, and proceed in the interest of absent class members. [*See* Dkt. 44-2, 44-3, 44-4, 44-5, 44-6].

***Ascertainability.*** In addition to Rule 23(a)'s four "prerequisites," the *Hopkins* plaintiffs assert their "proposed class satisfies the implied requirement of ascertainability, which has limited applicability in the context of class actions seeking injunctive relief under Rule 23(b)(2)." [Pl. Mem. at p. 14, Dkt. 45]. Secretary Hosemann agrees that "ascertainability" is a Rule 23 requirement, and relevant inquiry, in a certification analysis. *See* **John v. National Sec. Fire & Cas. Co.**, 501 F.3d 443, 445 (5th Cir. 2007) ("the existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Rule 23"); **Middleton v. Arledge**, 2008 WL 906525, at *8 (S.D. Miss. Mar. 31, 2008) ("in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable. . . . This requires that the class be defined in objective terms that are

capable of present ascertainment") (internal quotes and citations omitted).

As explained in Section III, below, Secretary Hosemann disputes the *Hopkins* plaintiffs' proposed class definition. If the Court grants class certification, it should be defined in terms of the Secretary's counter-proposal. Meanwhile, for purposes of Rule 23(a)'s implied "ascertainability" requirement, although the specific identity, current status, and contact information of proposed class members is not ascertainable,[2] Secretary Hosemann agrees the proposed class' parameters can be adequately ascertained and defined.

## II. The Court Should Deny Rule 23(b)(2) Class Certification as Unnecessary.

Even when movants ostensibly meet Rule 23(a)'s requirements, to achieve certification they must also prove "that the action is maintainable under one of the three categories set forth in Rule 23(b)." **Haley v. Merial, Ltd.**, 292 F.R.D. 339, 346 (N.D. Miss. 2013). The *Hopkins* plaintiffs' class demand ultimately fails that second step.

Only Rule 23(b)(2) is in play. The rule generally authorizes certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Applying the rule, according to the Fifth Circuit, initially entails "two relevant requirements when a proposed class

---

[2] Secretary Hosemann has no records reflecting the current contact information of anyone, much less disqualified felons, who is not registered to vote. The Administrative Office of Courts (AOC) data referenced in the *Hopkins* plaintiffs' brief and expert declaration includes names and some identifying information regarding convicted felons. But the data does not contain any address or contact information, and only dates back to 1994. The data also includes only partial sentencing information, which in many (if not all) cases, makes using the data to determine whether anyone has "completed" their "sentence" guesswork.

seeks classwide injunctive relief: (1) the class members must have been harmed in essentially the same way . . ., and (2) the injunctive relief sought must be specific." **M.D. ex rel. Stukenberg v. Perry**, 675 F.3d 832, 845 (5th Cir. 2012) (internal quotes and citations omitted).

To meet those ends, the *Hopkins* plaintiffs contend the proposed class has been "'harmed in essentially the same way'" due to "Mississippi's lifetime voting ban and its suffrage bill provision" and they allegedly "lack access to a fair and objective process for restoration of their voting rights." [Pl. Mem. at p. 16, Dkt. 45]. They further seek "primary injunctive relief" effectuating "automatic restoration of voting rights to disenfranchised individuals upon completion of their sentences for disenfranchising offenses," as well as other obligations on Secretary Hosemann. [*Id.*]. Those disputed contentions and relief claims dovetail with Rule 23(b)(2)'s expressed requirements. But they do not establish the *Hopkins* plaintiffs automatically deserve class certification.

Although the *Hopkins* plaintiffs' carefully tailored claims comport with Rule 23(b)(2)'s language, they do not make class certification necessary. In addition to the rule's component elements, federal courts should also consider the potential burdens and benefits of class certification, and deny certification when the benefits are insubstantial.

The *Hopkins* plaintiffs' facial constitutional challenges, by their very character, demonstrate class certification would produce only insubstantial benefits, if any. As the Fifth Circuit has recognized, class certification lacks utility where, as here, success on the named plaintiffs' constitutional claims will simultaneously benefit them and their proposed class. **United Farmworkers of Florida Housing Project, Inc. v. City**

***of Delray Beach, Florida***, 493 F.2d 799, 812 (5th Cir. 1974).  The district court in ***United Farmworkers*** rejected constitutional and statutory claims targeting a city's permitting decision and other defendants' alleged actions, and denied Rule 23(b)(2) class certification.  ***Id.*** at 801.  The Fifth Circuit reversed and vacated on the merits, in part, but not with respect to denial of class status.  ***Id.*** at 812.  Addressing the certification issue, the Court held:

> We find it unnecessary to determine the answer to this [class certification] question, however, for whether or not appellants are entitled to class action treatment, the decree to which they are entitled is the same. . . . [T]he very nature of the rights appellants seek to vindicate requires that the decree run to the benefit of not only the named plaintiffs but also for all persons similarly situated. . . . Even with the denial of class action status, the requested injunctive and declaratory relief will benefit not only the individual appellants and the nonprofit corporation but all other persons subject to the practice under attack.

***Id.*** (internal citations omitted).  Other federal courts within Mississippi, the Fifth Circuit, and elsewhere, have likewise held class certification is unnecessary when the plaintiffs' constitutional challenges, if successful, would run to the proposed classes' benefit absent certification.  *See, e.g.*, ***Mills v. District of Columbia***, 266 F.R.D. 20, 22 (D. D.C. 2010) ("Class certification is particularly unnecessary where . . . 'the suit is attacking a statute or regulation as being facially unconstitutional.' . . . In that circumstance, 'there would appear to be little need for the suit to proceed as a class action' because 'it can be assumed that if the court declares the statute or regulation unconstitutional then the responsible government officials will discontinue the [regulation's] enforcement.'" (internal citations omitted, alteration in original)); ***Arnett v. Strayhorn***, 515 F.Supp.2d 690, 698 (W.D. Tex. 2006) ("The only issue remaining in this case is Plaintiff's challenge to the constitutionality of the Texas Unclaimed Property

statute . . . . No useful purpose would be served by requiring this case to proceed as a class because all individuals who are not part of this action, but who are aggrieved by the Texas Unclaimed Property Law in the same manner as Plaintiff, will have the benefit of this Court's ruling concerning the statute's constitutionality."), *aff'd*, 508 F.3d 1134 (5th Cir. 2007), *cert. denied*, 553 U.S. 1005 (2008); **Fairley v. Forrest County, Miss.**, 814 F.Supp. 1327, 1329 (S.D. Miss. 1993) ("The law in this circuit is clear where the very nature of the rights [sought to be vindicated] requires that the decree run to the benefit not only of the named plaintiffs, but also for all persons similarly situated then it is unnecessary to determine whether a class action is proper." (internal quotes omitted)).

This case fits neatly within **United Farmworkers**' framework. The disputed claims against Secretary Hosemann are "facial constitutional challenges to Sections 241 and 253 of the Mississippi Constitution, as well as Sections 23-15-11 and 23-15-19 of the Mississippi Code." [Complaint at p. 36, No. 3:18cv188, Dkt. 1; *see also id.* at pp. 38-43; Pl. Mem. at p. 9, Dkt. 45]. Class or no class, declaring the state constitutional provisions or statutes invalid, and/or enjoining Secretary Hosemann from enforcing them, would have the same scope and effect. For instance, should the *Hopkins* plaintiffs succeed on their claim that the so-called "lifetime voting ban" in Section 241 of the Mississippi Constitution, and associated statutes, facially violates the Fourteenth Amendment's Section 2 (which is disputed), the Court may declare as much and enjoin Secretary Hosemann from enforcing the laws. Class certification would be irrelevant. Relief effectively invalidating the state laws would enure to the *Hopkins* plaintiffs' benefit and their proposed class members all at once.

Make no mistake, there are civil rights-related disputes where Rule 23(b)(2) class

treatment is "especially appropriate" because "the claims of the members of the class may become moot as the case progresses." ***Johnson v. City of Opelousas***, 658 F.2d 1065, 1070 (5th Cir. 1981) (internal quotes omitted).  This case is not one of them.  In prison conditions litigation, for example, certification may alleviate mootness risks stemming from the fact that class representatives' incarceration status may change. *E.g.*, ***Rocky v. King***, 900 F.2d 864, 867 (5th Cir. 1990); ***Dockery v. Fisher***, 253 F.Supp.3d 832, 846 (S.D. Miss. 2015).  No such concerns exist here.  The *Hopkins* plaintiffs contend that they, and their proposed class, are permanently ineligible to vote.  Due to the permanency of the alleged harm, no mootness risk attends anyone's claims.

It also makes no difference that, beyond judicial invalidation of two Mississippi Constitutional provisions and other laws, the *Hopkins* plaintiffs seek further mandatory injunctive class "notice" relief, and other things which allegedly "likely cannot be effectuated without certification of the proposed class."  [Pl. Mem. at p. 16, Dkt. 45].  They do not explain how certification will facilitate individualized "notice" to class members.[3]  There is no reason, assuming any disputed mandatory relief is warranted, class certification is required for the Court to order Secretary Hosemann to conduct "a public awareness campaign," to revise "voter registration application forms and voter information materials," or to provide "training and education of election commissioners

---

[3] In fact, class certification will not improve anyone's ability to provide individualized notice to proposed class members.  AOC data, mentioned in the "ascertainability" section on page 14 of the *Hopkins* plaintiffs' brief and discussed above at note 2, is the only source for identifying members of the proposed class.  The AOC data does not include current or past addresses, or any other contact information necessary to notify anyone of anything.  And, as the *Hopkins* plaintiffs admit, the data dates back to 1994, so it is not a viable source of information regarding even the names of felons convicted prior to that time.

and registrars." [Pl. Mem. at p. 15, Dkt. 45; *see also id.* at p. 16].[4] The sum truth is Rule 23(b)(2) certification will not benefit the parties, the proposed class, or the Court in any tangible manner. That compels denying certification.

Additionally, a stand-alone practical consideration counsels against granting the *Hopkins* plaintiffs' certification motion. The discovery and motion deadlines, as of this writing, are only a few weeks away. [*See* Aug. 9, 2018 Text-Only Order]. The *Hopkins* plaintiffs have intimated they will move for summary judgment. So will Secretary Hosemann. Because the *Hopkins* plaintiffs' alleged need for class certification hinges on the extent of mandatory injunctive relief to which they claim entitlement, the Court can reserve ruling on certification until a remedy stage—after determining what claims, if any, may go forward against Secretary Hosemann. That underscores the lack of any present need to certify a class.

---

[4] The "notice" and associated relief demands tacked-on to the *Hopkins* plaintiffs' facial constitutional challenges does not render their lawsuit akin to **Mitchell v. Johnson**, 701 F.2d 337 (5th Cir. 1983), cited at page 16 of their brief. **Mitchell** involved a federal statutory challenge to the Texas Department of Human Resources' compliance with federal Medicaid legislation brought on behalf of a class of dental program participants. *Id.* at 340-41. Entirely unlike this case, class certification was "necessary" in **Mitchell** because "it would be difficult for the plaintiffs to obtain [their] requested relief absent certification of a class action," the "plaintiffs would be unable to obtain classwide notice if no class action was certified since the other eligible recipients would not be parties to this litigation and would not be entitled to the benefits of the district court's judgment," and it was "not a case in which the plaintiffs simply attack the facial validity of a statute and seek to have it declared unenforceable." *Id.* at 345.

### III. Alternatively, the Court Should Refine the *Hopkins* Plaintiffs' Proposed Class Definition.

If the Court grants certification, the class must be defined. Rule 23 provides "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses . . . ." Fed. R. Civ. P. 23(c)(1)(B).[5] And the Court is not bound to accept the plaintiffs' proposed definition. *See* 7A Charles Alan Wright, *et al.*, FED. PRAC. & PROC. CIV. § 1759 (3d ed.) ("if plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23 or it may allow plaintiff to amend in order to limit the class").

The *Hopkins* plaintiffs' most recent proposed class definition is:

> Any person who (a) is or becomes disenfranchised under Mississippi state law by reason of a conviction of a crime that the Secretary of State contends is disenfranchising under Section 241 of the Mississippi Constitution, Miss. Code § 23-15-11 and/or Miss. Code § 23-15-19, and (b) has completed the term of incarceration, supervised release, parole and/or probation for each such conviction.

[Pl. Mem. at p. 6, Dkt. 45].[6] At least two aspects of their proposal are problematic.

The first defect is part (a)'s unacceptable language: "conviction of a crime that the Secretary of State contends is disenfranchising under Section 241 of the Mississippi Constitution, Miss. Code § 23-15-11 and/or Miss. Code § 23-15-19."

A "class sought to be represented must be adequately defined and clearly

---

[5] Similarly, at the end of the case, the Court's judgment "[w]hether or not favorable to the class, . . . must for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members." Fed. R. Civ. P. 23(c)(3).

[6] Footnote four of the *Hopkins* plaintiffs' brief explains the differences between their complaint's proposed class definition and the definition in their motion for class certification. [*See* Pl. Mem. at p. 6 n.4, Dkt. 45]. Secretary Hosemann disagrees with both their original and "revised" version.

ascertainable." ***DeBremaecker v. Short***, 433 F.2d 733, 734 (5th Cir. 1970).  The "class definition must be precise, objective, and presently ascertainable. . . .The order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)." ***Plaza 22, LLC v. Waste Management of Louisiana, LLC***, 2015 WL 1120320, at *3 (M.D. La. Mar. 12, 2015) (internal quotes and footnotes omitted).  And a class definition that "employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability" is unacceptable.  ***Alhassid v. Bank of Am., N.A.***, 307 F.R.D. 684, 693 (S.D. Fla. 2015).

By keying putative class membership on what "crimes" Secretary Hosemann "contends" are disqualifying, instead of simply what Mississippi law defines as disqualifying, the *Hopkins* plaintiffs' proposal violates the foregoing principles.  Nobody should have to resort to Secretary Hosemann's subjective "contentions" to determine whether someone falls within the proposed class.  Or worse, nobody should have to rely on what the *Hopkins* plaintiffs contend are Secretary Hosemann's subjective "contentions" to ascertain their membership in the proposed class.  The *Hopkins* plaintiffs' proposal furthermore wrongfully assumes Secretary Hosemann's "contentions" as to what crimes are disqualifying under Mississippi law controls who is, in fact, disqualified.  That intimation of Secretary Hosemann's ultimate liability renders their proposed definition improper.

The *Hopkins* plaintiffs' proposed definition's second defect lies in part (b)'s qualification of "completed the term of incarceration, supervised release, parole and/or probation for each such conviction."  That arbitrary parameter appears to rely on what

the *Hopkins* plaintiffs consider a convicted felon's "sentence."

It is unclear why the *Hopkins* plaintiffs believe a Mississippi felon's "sentence" can or should be circumscribed. Based on a self-serving survey of other states which allow felons to vote after completing their "sentences" (with many caveats), the complaint argues the federal Constitution obligates Mississippi to follow suit. [Complaint at pp. 23-33, No. 3:18cv188, Dkt. 1]. But the pleading neglects to explain what other states consider completion of a "sentence." And the *Hopkins* plaintiffs' motion papers merely only assert a "sentence" is limited to "the term of incarceration, supervised release, parole and/or probation imposed for the conviction of a disenfranchising offense," without citation or explanation. [Pl. Mem. at p. 3 n.2, Dkt. 45].

Under Mississippi law, a convicted felon's "sentence" is "the pronouncement by the court of the penalty imposed upon the defendant after an adjudication of guilt." Miss. R. Crim. P. 26.1(c). An individual's particular court-ordered sentence depends on the offense, and may include a term of imprisonment, supervised release, probation, entitlement to parole consideration, and/or payment of fines or restitution. *See*, *e.g.*, Miss. Code Ann. §§ 97-1-1 *et seq*., 99-19-20, 99-19-32, 99-19-45, 99-19-47, 99-19-48, 99-37-3. If Mississippi's felon disqualification laws must be judicially-rewritten, the State's more basic criminal laws should not also be modified through the backdoor of class certification. Only convicted felons who fully complete their sentence should benefit from any certification.

To remedy the defective portions of the *Hopkins* plaintiffs' proposed class definition, if the Court certifies a class, its definition should provide:

-15-

> All Mississippi citizens who have been, or may be in the future, disqualified as an elector under Mississippi law on account of a disqualifying felony conviction, and have completed all terms of their full sentence for each such conviction, including any term of incarceration, supervised release, parole, probation, and/or payment of fines or restitution.

That definition objectively includes everyone—all disqualified felons that have completed their full sentences—the *Hopkins* plaintiffs seek to represent. Tellingly, moreover, if a provision for fines and restitution is included, Secretary Hosemann's proposal comports with the plaintiffs' own description of their proposed class:

> The *Hopkins* plaintiffs seek class-wide declaratory and injunctive relief under Rule 23(b)(2) on behalf of all individuals who are now, or who may in the future become, disenfranchised under Mississippi state law by reason of a conviction of a disenfranchising offense, and who have completed the term or incarceration, supervised release, parole and/or probation for each such conviction.

[Pl. Mem. at p. 2, Dkt. 45].

The Court should deny class certification for the *Hopkins* plaintiffs' facial challenges as unnecessary. But if a class must be certified, at a minimum, the Court should redefine the class consistent with the Secretary's foregoing proposal.

## CONCLUSION

Secretary Hosemann requests an order denying the *Hopkins* plaintiffs' motion for class certification. Alternatively, if certification is awarded, the Court should refine the proposed class' definition to comport with the Secretary's proposal set forth above.

THIS the 29th day of August, 2018.

                    Respectfully submitted,

                    SECRETARY OF STATE DELBERT
                    HOSEMANN, in his official capacity

BY:    JIM HOOD, ATTORNEY GENERAL

By:    S/Justin L. Matheny
        Justin L. Matheny (Bar No. 100754)
        Office of the Attorney General
        P.O. Box 220
        Jackson, MS 39205
        Telephone: (601) 359-3680
        Facsimile: (601) 359-2003
        *jmath@ago.state.ms.us*

        *Counsel for Defendant Secretary of State*
        *Delbert Hosemann, in his official capacity*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document has been electronically filed via the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

    THIS the 29th day of August, 2018.

                    S/Justin L. Matheny
                    Justin L. Matheny