

PERMANENT

IN THE

# 97-60275

Do Not Remove
From Record Room

## United States Court of Appeals

FOR THE FIFTH CIRCUIT

PERMANENT

No. 97-60275

JARVIOUS COTTON; KEITH BROWN

Plaintiffs - Appellants

v.

KIRK FORDICE; STEVE WILLIAM PUCKETT; JOHN DOE, Adams County
Election Commissioner; JOHN DOE, Washington County election
Commissioner; ERIC CLARK, Secretary of State of Mississippi;
STATE OF MISSISSIPPI; MICHAEL MOORE, Attorney General of
Mississippi; FRED FERGUSON, Adams County Circuit Court Clerk;
ESTELL PRYOR, Washington County Circuit Court Clerk;
SHARON MCFADDEN, County Circuit Court Clerk; RUBY LEE
JOHNSON, Adams County Election Commissioner; LINDA
BOSCHERT, Washington County Election Commissioner; JUNE S
MCKINSTRY, Sunflower County Election Commissioner

Defendants - Appellees

A/Pet brief filed

BR-10

U.S. COURT OF APPEALS

FILED

JUL 2 8 1997

CHARLES R. FULBRUGE III
CLERK

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT


JARVIOUS COTTON & KEITH BROWN                          APPELLANTS


VERSUS                                                 #97-60275


KIRK FORDICE, ET AL                                    APPELLEES


---

APPEAL FROM THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF MISSISSIPPI

---


APPELLANTS, PRO SE, BRIEF


JARVIOUS COTTON, No. 34463
KEITH BROWN, No. 45542
Unit 24 Extension
Parchman, MS 38738

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JARVIOUS COTTON & KEITH BROWN                      APPELLANTS

VERSUS                                             #97-60275

KIRK FORDICE, ET.AL.                               APPELLEES

APPELLANTS, PRO-SE, BRIEF

Statement of the Issues

1.  Whether the District Court erred in granting summary judgment to
    Defendants.


2.  Whether the Mississippi Constitution of 1890, Section 241 of Article
    12, was founded upon a state compelling interest to disenfranchise certain
    classes of convicted citizens from voting on account of race, color,
    and previous condition of servitude.


3.  Whether the District Court erred in Denying Appellants' Taxation
    Without Representation Claim.

1.

Statement of the Case

(i) Course of proceedings and disposition in court below:

On February 27, 1996, Appellants, Jarvious Cotton and Keith Brown, filed an instant complaint on behalf of all similar past, present, and future convicted citizens of the state of Mississippi, alleging that Defendants violated their right to vote.  (R-1 thru 38).

On June 14, 1996, Chief Judge, William H. Barbour, Jr., issued an order denying request for in forma pauperis status and requiring Plaintiffs to pay partial filing fee.  (R-39 thru 40).

On June 27, 1996, Plaintiffs caused a letter to be filed advising the Court that the partial filing fee was being paid through the inmate prison account.  (R-41 thru 42).

On July 23, 1996, the United States Magistrate Judge, Alfred G. Nicols, Jr., filed an order issuing an order to serve process on Defendants.  (R-43 thru 44).

On July 30, 1996, summons was filed by the clerk on Defendant Steve Puckett.  (R-45 thru 47).

On August 1, 1996, Defendants' Answer to complaint was filed by the clerk.  (R-48 thru 50).

On August 7, 1996, Defendant state of Mississippi summons was filed by the clerk.  (R-51 thru 52).

On August 7, 1996, Defendant Kirk Fordice summons was filed by the clerk. (R.53 thru 54).

On October 21, 1996, the clerk filed Petitioners' Motion for Leave to File an Amended Complaint.  (R-55 thru 58).  However, the proposed amended complaint was not filed.

On October 28, 1996, the clerk filed Appellants' Request for Admissions on Defendants Steve Puckett, Kirk Fordice and state of Mississippi.  (R-59 thru 84).

On November 13, 1996, the clerk filed an order setting Omnibus Hearing. (R-85 thru 88).

On November 13, 1996, the clerk filed an order, Writ of Habeas Corpus Ad Testificandum, issued for Jarvious Cotton and Keith Brown.

On November 25, 1996, the clerk filed Appellants' Motion for Class Certification, or in the Alternative, Motion for Appointment of Counsel. (R-89 thru 95).

On December 9, 1996, the clerk filed Appellants' Motion for Relief under Rule 60(b).  (R-96 thru 100).

On December 11, 1996, the clerk filed a minute entry, outlining the Omnibus Hearing.  (R-101).

On December 18, 1996, the clerk filed a letter from Appellants concerning retaliation take by MDOC officials.  (R-102 thru 118).

On December 23, 1996, the clerk filed Attorney General, Special Assistant, Jane L. Mapp's, Notice of Entry of Appearance as Counsel of Record for Named Defendants.  (R-119 and 120).

On December 23, 1996, the clerk filed Defendants' Motion to Dismiss or in the Alternative for Summary Judgment.  (R-121 thru 124).

On December 23, 1996, the clerk filed Defendants' Itemization of Facts. (R-125 thru 127).

On December 27, 1996, Appellants' second Motion for Leave to File an Amended Complaint was filed by the clerk.  (R-129 thru 131).

On January 2, 1997, Appellants' Motion for Enlargement of Time was filed by the clerk requesting additional time to responde to Defendants' Motion for Summary Judgment.  (R-132 thru 138).

On January 9, 1997, Appellants' Opposition to Defendants Motion to Dismiss, or in the Alternative, for Summary Judgment, was filed by the clerk.  (R-139 thru 144).

On January 9, 1997, Appellants' Itemization of Facts was filed by the clerk.  (R-145 thru 148).

On January 9, 1997, Appellants' Affidavit in Opposition to Defendants' Motion for Summary Judgment was filed by the clerk.  (R-149 thru 174).

On January 9, 1997, Appellants' Memorandum Brief in Support of Appellants' Motion in Opposition of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment was filed by the clerk.  (R-175 thru 191).

On January 10, 1997, the clerk filed the United States Magistrate Judge's Omnibus Order.  (R-192 thru 196).

On January 10, 1997, Appellants' Amended Complaint was filed by the clerk.  (R-197 thru 211).

On January 17, 1997, Defendant State of Mississippi's response to Appellants' Admissions was filed.  (R-235 thru 242).

On January 17, 1997, Appellants' Motion Requesting Summons, or Process, to be Served Upon Additional Defendants, pursuant to the Omnibus Order, was filed by the clerk.  (R-243 thru 245).

On January 27, 1997, Appellants' Notice of Service of Interrogatories on Defendant state of Mississippi was filed by the clerk.  (R-246 thru 247).

On January 28, 1997, Defendant Kirk Fordice's response to Appellants' Request for Admissions was filed by the clerk.  (R-248 thru 256).

On January 29, 1997, Appellants' Motion for Order to Hold Defendants' Failure to Deny or Respond to Plaintiffs' Request for Admissions as Deemed Admitted was filed.  (R-257 thru 262).

4.

On January 30, 1997, Defendants' Response to Plaintiffs' Request for Admissions for Defendant Steve Puckett was filed by the clerk. (R-263 thru 269).

On February 3, 1997, Defendants' Response to Appellants' Motion for Order to Hold Defendants' Failure to Deny or Respond to Plaintiffs' Request for Admissions as Deemed Admitted was filed by the clerk. (R-270 thru 272).

On February 5, 1997, Appellants' Notice of Service of Interrogatories for Defendant Kirk Fordice was filed. (R-273 thru 274).

On February 5, 1997, Appellants' Notice of Service of Interrogatories for Defendant Steve Puckett was filed by the clerk. (R-275 thru 276).

On February 6, 1997, Appellants' Reply to Defendants Response to Appellants Motion for Order to Hold Defendants' Failure to Deny or Respond to Plaintiffs/ Appellants' Request for Admissions as Deemed Admitted was filed. (R-277 thru 279).

On February 11, 1997, Defendant State of Mississippi's Response to Interrogatories was filed by the clerk. (R-280 thru 281).

On February 12, 1997, Defendant Kirk Fordice's Response to Interrogatories was filed by the clerk. (R-282 thru 283).

On February 12, 1997, Appellants' letter Motion was filed requesting the clerk to advise whether Appellants/Plaintiffs' Amended Complaint can be served upon additional defendants. (R-284).

On February 20, 1997, Defendant Steve Puckett's Response to Interrogatories was filed by the clerk. (R-286 thru 287).

On February 20, 1997, Appellants' Letter of Good Faith was filed by the clerk. (R-288 thru 291).

On March 11, 1997, Appellants' Motion for an Order Compelling Disclosure or Discovery was filed by the clerk. (R-292 thru 328).

On March 18, 1997, the United States Magistrate judge issued a Report and Recommendation.  (R. 239 thru 236).

On March 27, 1997, Appellants' Objections to the Report and Recommendation of the United States Magistrate Judge was filed by the clerk.  (R. 337 thru 360).

On April 7, 1997, the United Stats District Court Judge, William H. Barbour, Jr., issued an order Adopting the Report and Recommendation of the United States Magistrate Judge.  (R. 361 thru 363).

On April 21, 1997, Appellants filed their Notice of Appeal and Application to proceed in forma pauperis.  (R. 364 thru 372).

On April 29, 1997, the United States District Court Judge granted Appellants' application to proceed in forma pauperis on appeal.  (R. 374 thru 378).

On May 5, 1997, the United States Distirct Court Clerk certified and transmitted the record on appeal to the United States Court of Appeals.

On June 6, 1997, Appellants/Plaintiffs filed a Motion to stay the proceedings on appeal until the Court Reporter transcribe the Omnibus Hearing proceedings.

On June 6, 1997, Appellants/Plaintiffs filed a Motion in the District Court for transcription of Omnibus Hearing and supplementation of the Appeal Court's record.

At this point, the appeal is being taken.

## (ii) Statement of the Facts

Mississippi has had criminal statutes as both a territory and a state.  For example, a territorial statute enacted in 1807 provided the death penalty for robbery.  [Toulmin's statutes of the Mississippi Territory (1807), page 308].

Mississippi became a state in 1817, and pursuant to Section 5 of the "schedule" part of the 1817 Constitution, all laws of the Mississippi Territory that were not in conflict with this constitution carried over to the state of Mississippi.

At the 1819 Session of the General Assembly (known today as the Mississippi Legislature), the Attorney General was directed to revise the state's criminal laws and report at the next session of the General Assembly [1819 Miss. Laws, page 135].

At the 1820 Session of the General Assembly, an act was passed covering a number of criminal offenses, including robbery which carried the death penalty [1820 Miss. Laws, Chapter 45, page 70].

In 1869, Mississippi held a constitutional convention that passed a single article on the franchise, Section 2, Article 7, provided simply that "all male inhabitants of this state, except idiots and insane persons, and Indians not taxed, citizens of the United States, or naturalized, twenty-one years old and upwards, who have resided in this state for six months, and in the county one month next preceding the day of election, at which said inhabitant offers to vote, and who are duly

7.

registered according to the requirement of Section 3 of this article, <u>and who are not disqualified by reason of **any crime**</u>, are declared to be qualified electors."

In 1890, Mississippi held a constitutional convention which dealt with the franchise, Section 241 of Article 12 provided as follows: "Every male inhabitant of this state, except idiots, insane persons, and Indians not taxed, who is a citizen of the United States, twenty-one years old and upwards, who has resided in this state for two years, and one year in the election district, or in the incorporated town or city, in which he offers to vote, and who is duly registered as provided in this article, and who has never been convicted of **bribery, burglary, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement of bigamy,** .... is declared to be a qualified elector."

In 1984, the United States District Court for the Southern District of Mississippi, Judge William Barbour, Jr., held in Murphree v. Winters, 589 F. Supp. 374 that all present and future prisoners incarcerated in state, who were not disenfranchised for conviction of certain felonies, would be certified in action brought after a pretrial detainee was denied opportunity to vote in primary election while incarcerated in city jail.

Judge William Barbour issued a preliminary injunction to enjoin defendants from denying prisoners access to the vote.

In 1986, the Mississippi Legislature, Chapter 495, Section 335, repealed Mississippi Code §23-5-35, and stand repealed

on January 1, 1987, in regard to the state statute on the franchise.

In 1991, Mississippi Legislature, Chapter 440, Section 3, effective from and after May 1, 1992, §47-1-63 of the Mississippi Code, passed in regards to residency of prisoners as affected by incarceration in facilities of the Department of Corrections.   (United States Attorney General interposed no objection under Section 5 of the Voting Rights Act of 1965.)

On January 9, 1995, Appellants/Plaintiffs  Jarvious Cotton and Keith Brown requested to exercise their right to vote through the Mississippi Department of Corrections Administrative Remedy Program. (R. 18 & 19)

On January 20, 1995, the Mississippi Department of Corrections refused to allow Appellants/Plaintiffs to vote, register to vote, or otherwise an opportunity to cast a vote by stating that the requested "relief is beyond the power o the Mississippi Department of Corrections to grant." (R. 20 thru 25)

On February 13, 1995, Appellants/Plaintiffs  Jarvious Cotton and Keith Brown wrote several Election Commissioners requesting information regarding registration and mail-in voter registration and absentee voting. (R. 26 & 29 thru 38)

On February 27, 1995, Deputy Attorney General, Larry E. Clark, referred Appellant/Plaintiff  Brown's letter to Assistant Attorney General, Phil Carter, for response. (R. 27)

On March 16, 1995, Assistant Attorney General Phil Carter wrote a response concerning voting by convicted felons, and

9.

set forth that Section 241 of the Mississippi Constitution
of 1890 sets forth the qualifications that one must meet in
order to be a qualified elector.  It requires that one <u>not</u>
be convicted of murder, rape, bribery, theft, arson, obtaining
money or goods under false pretense, perjury, forgery, embez-
zlement or bigamy. (R. 28)

On February 27, 1996, Appellants/Plaintiffs  Jarvious
Cotton, Keith Brown, and all similar situated past, present,
and future convicted citizens of the state of Mississippi filed
a civil rights complaint against the Appellees/Defendants for
violation of their right to vote. (R. 1 thru 38)

On February 27, 1996, Appellants/Plaintiffs made a demand
for a jury trial. (R. 1)

On June 14, 1996, United States District Court Judge William
H. Barbour, Jr. issued an order denying Appellants/Plaintiffs'
motion to proceed in forma pauperis and required Appellants/
Plaintiffs to pay partial filing fee. (R. 39)

On June 27, 1996, Appellants/Plaintiffs partial filing
fee was paid. (R. 41 & 42)

On July 23, 1996, the United States Magistrate Judge Alfred
G. Nicols issued an order directing the Clerk of Court to issue
summons to the Appellees/Defendants Kirk Fordice, Steve Puckett,
and state of Mississippi. (R. 43 thru 45)

On August 1, 1996, Appellees/Defendants filed their answer
to Appellants/Plaintiffs complaint. (R. 48 thru 50)

10.

On October 21, 1996, Appellants/Plaintiffs filed with the District Court their Motion to Amend Complaint and Motion to proceed in forma pauperis, with their attached proposed amended complaint (R. 55 thru 58). The clerk did not file the proposed amended complaint.

On October 28, 1996, Appellants/Plaintiffs filed a set of Request for Admissions on Appellees/Defendants Steve Puckett, State of Mississippi, and Kirk Fordice. (R. 59 thru 75)

On November 13, 1996, the United States Magistrate Judge Alfred G. Nicols  issued an order setting an Omnibus Hearing for 9:30 a.m. on December 11, 1996. (R. 85 thru 88)

On November 25, 1996, Appellants/Plaintiffs filed with the Court a Motion to Certify Class, or for Appointment of Counsel. (R. 90 thru 95)  However, no action was ever taken on this motion.

On December 9, 1996, Appellants/Plaintiffs Motion for Relief Under Rule 60(b) was filed. (R. 96 thru 100)  However, this motion was denied.

On December 11, 1996, an Omnibus Hearing was conducted. Present were Appellants/Plaintiffs Jarvious Cotton and Keith Brown; Appellees/Defendants' counsel Leonard C. Vincent; United States Magistrate Judge Alfred G. Nicols; and Court Report Lisa Rogers Pugh (R. 101)

11.

On December 18, 1996, Appellants/Plaintiffs filed a letter
with the Court concerning Mississippi Department of Corrections'
retaliation, via Rose Gibson and other co-conspirators. (R.
102 thru 117)  Also, Appellants/Plaintiffs refused to sign
consent form for the Magistrate Judge to exercise jurisdiction
over hearing/trying their case. (R. 346)

On December 23, 1996, Appellees/Defendants filed their
Notice of Attorney Appearance for Appellees/Defendants Kirk
Fordice, Steve Puckett, and state of Mississippi (R. 119 thru
120).

On December 23, 1996, Appellees/Defendants filed a Motion
to Dismiss or in the Alternative for Summary Judgment (R. 121
thru 124).

On December 23, 1996, Appellees/Defendants filed a Memoran-
dum Brief in Support of their Motion to Dismiss for Summary
Judgment. **(Not made a part of the record)**

On December 23, 1996, Appellees/Defendants filed their
Itemization of Facts in support of Motion to Dismiss or Summary
Judgment for Appellees/Defendants Kirk Fordice, Steve Puckett,
and state of Mississippi. (R. 125 thru 128)

On December 27, 1996, Appellants/Plaintiffs filed their
Second Motion for Leave to file Amended Complaint, with proposed
amended complaint attached (proposed amended complaint & 13
extra copies placed in back of the court's file). (R. 129 thru
131)  This amended complaint was never served upon any of the

parties, although the U.S. Magistrate Judge, at the Omnibus Hearing, granted Appellants/Plaintiffs request to serve the amended complaint.

On January 2, 1997, Appellants/Plaintiffs filed a Motion for Enlargement of Time to respond to Appellees/Defendants Motion for Summary Judgment. (R. 132 thru 137)

On January 9, 1997, Appellants/Plaintiffs filed their response to Appellees/Defendants Motion to Dismiss or Motion for Summary Judgment (R. 139 thru 144).

On January 9, 1997, Appellants/Plaintiffs filed their Itemization of Facts to which there is no genuine issue (R. 145 thru 148).

On January 9, 1997, Appellant/Plaintiff Jarvious Cotton filed his Affidavit in Opposition to Appellees/Defendants Motion for Summary Judgment (R. 149 thru 161). Appellant/Plaintiff Cotton attached material evidence to his affidavit in support of his opposition to summary judgment.

On January 9, 1997, Appellant/Plaintiff Keith Brown filed his Affidavit in Opposition to Appellees/Defendants Motion for Summary Judgment (R. 162 thru 174). Appellant/Plaintiff Brown attached material evidence to his affidavit in support of his opposition to summary judgment.

On January 9, 1997, Appellants/Plaintiffs filed their Memorandum Brief in Support of Appellants/Plaintiffs Motion in Opposition of Appellees/Defendants Motion to Dismiss, or

13.

in the Alternative, for Summary Judgment (R. 175 thru 191).

On January 10, 1997, United States Magistrate Judge Alfred Nicols, Jr., filed an Omnibus Order, (R. 192 thru 196), noting that Appellants/Plaintiffs wished to continue with the requested jury trial and did not desire a trial before the magistrate judge.  The Magistrate Judge Nicols granted Appellants/Plaintiffs Motion for leave to file Amended Complaint and that the proposed amended complaint be filed.  The Motion to Certify Class was put before Judge Barbour.  However, no action was ever taken.

On January 10, 1997, the District Court Clerk filed Appellants/ Plaintiffs Amended Complaint (dated December 23, 1996) (R. 197 thru 234), <u>which was received by the Clerk on 12-27-96</u> [See clerk's entry (R. 129)].


On January 17, 1997, Appellee/Defendant state of Mississippi filed their response to Appellants/Plaintiffs request for admissions (R. 235 thru 242).

On January 17, 1997, Appellants/Plaintiffs filed a Motion requesting summons, or process, to be served upon additional defendants pursuant to the Omnibus Order (R. 243 thru 245).

On January 27, 1997, Appellants/Plaintiffs filed their first set of Interrogatories to Appellee/Defendant state of Mississippi (R. 246 thru 247).

On January 28, 1997, Appellees/Defendants Kirk Fordice filed his response to Appellants/Plaintiffs request for admissions,

and admitted in Paragraph #6 that Appellant/Plaintiff Brown
was not disenfranchised by his conviction of armed robbery
(R. 248 thru 256, at 249).

On January 29, 1997, Appellants/Plaintiffs filed their
Motion for an Order to Hold Appellees/Defendants Failure to
Deny or Respond to Appellants/Plaintiffs Request for Admissions
as Deemed Admitted (R. 257 thru 262).  Appellees/Defendants
Fordice and Puckett had waited more than 46 days before admitting
to or denying said admissions.

On January 30, 1997, Appellees/Defendants Steve Puckett
filed his response to Appellants/Plaintiffs request for admissions
and Appellee/Defendant Puckett admitted in Request #24 that
Appellant/Plaintiff Brown has not been disenfranchised by neither
state law or state constitution (R. 263 thru 269, at 267).

On February 3, 1997, Appellees/Defendants filed a Motion
entitled, "Defendants Response to Plaintiffs' Motion for Order
to Hold Defendants' Failure to Deny or Respond to Plaintiffs
Request for Admissions as Deemed Admitted (R. 270 thru 272).

On February 5, 1997, Appellants/Plaintiffs filed their
first set of Interrogatories to Appellee/Defendant Kirk Fordice
(R. 273 thru 274).

On February 5, 1997, Appellants/Plaintiffs filed their
first set of Interrogatories to Appellees/Defendants (R. 275
thru 276).

On February 6, 1997, Appellants/Plaintiffs filed their
reply to Appellees/Defendants failure to deny or respond to

15.

Appellants/Plaintiffs request for admissions as deemed admitted
(R. 277 thru 279).

On February 11, 1997, Appellee/Defendant State of Mississippi
filed their response to Plaintiffs/Appellants first set of
Interrogatories (R. 282 thru 283).

On February 12, 1997, Appellants/Plaintiffs wrote a letter
requesting the Court to serve Appellants/Plaintiffs amended
complaint.  The amended complaint had several material issues
which were not addressed by the Court, was not defended to
or otherwised responded to by the additional defendants.  The
amended complaint and motion was granted in the Omnibus Order.
(R. 284).

On February 20, 1997, Appellees/Defendants Steve Puckett
filed his response to Appellants/Plaintiffs interrogatories.
(R. 286 thru 287).

On February 20, 1997, Appellants/Plaintiffs wrote a letter
of good faith to Appellees/Defendants counsel as to Interrogatories
(R. 288).

On March 11, 1997, Appellants/Plaintiffs filed their Motion
for Order Compelling Disclosure or Discovery.  The court never
issued an order concerning said motion, nor did the Appellees/
Defendants respond.  (R. 292 thru 328).  In Appellants/Plaintiffs
Motion to Compel, they attempted to compel a response from
Appellee/Defendant State of Mississippi concerning any law
or policy and procedure outlining procedures for the Mississippi

Department of Corrections to ensure that incarcerated citizens, whom are not disenfranchised bylaw, are afforded an opportunity to exercise their right to vote. [(R. 315) Interrogatory #10, State of Mississippi's response]

On March 18, 1997, the United States Magistrate Judge, Alfred G. Nicols, issued his Report and Recommendation dismissing Appellants/Plaintiffs case with prejudice on summary judgment for Appellees/Defendants without addressing all pending issues and motions and granting summary judgment on an issue which was never raised by either party (R. 239 thru 336). The class certification motion was never addressed by either U.S. Magistrate or District Judge.

On March 27, 1997, Appellants/Plaintiffs filed their objections to the United States Magistrate Judge Report and Recommendation. In Appellants/Plaintiffs objections, they supported their claims that Article 12 Section 241 of the Mississippi Constitution conflicts with the United States Constitution Amendment 15, Section 1, with a 1896 Mississippi Supreme Court case which interpreted the Constitution of 1890 in Ratliff v. Beale, 74 Miss. 247, at page 263 (Miss. 1896).

Furthermore, Appellants/Plaintiffs objected to the Magistrate Judge's findings that armed robbery was the highest degree of theft, whereas Section 241 does not lists armed robbery, nor does it set forth any category of the listed disenfranchised crime as included. Appellants/Plaintiffs pointed out that Section 241 is not confusing about the wording or meaning.

17.

In addition, Appellants/Plaintiffs and Appellees/Defendants both agreed that Appellant/Plaintiff Brown could vote.  However, the only issue was whether Appellees/Defendants prevented Appellant/Plaintiff Brown and similar situated convicted citizens from voting by their failure to implement laws and MDOC procedures (R. 243).  Also, see Appellees/Defendants memorandum at Page 9 [Not made a part of the record **(Attached for Court's Convenience as Exhibit"A")**].

Also, Appellants pointed out that they did not consent to Magistrate Judge Alfred Nicols to exercise jurisdiction over their pending case (R. 339 & 346).

Finally, Appellants/Plaintiffs pointed out that they have a valid taxation without representation claim, and that as wards of the state, without a right to vote, Appellants or no other incarcerated citizen, absent the right to vote, should be subjected to taxation without representation (R. 344).

Appellants/Plaintiffs pointed out "intent" of the 1890 Constitutional Convention which founded Section 241 (R. 151 & 152).  Further, Appellants/Plaintiffs pointed out "results" of Section 241 (R. 173).

On April 7, 1997, the United States District Court Judge issued an order adopting the Report and Recommendation of the United States Magistrate Judge as the opinion of the Court. The judge failed to consider Appellants/Plaintiffs pending motions, the fact that both Appellants/Plaintiffs did not consent

18.

to the Magistrate Judge having jurisdiction over their case, and the fact that Mississippi Supreme Court in Ratliff, supra concur with Appellants/Plaintiffs claims (R. 361 thru 363).

On April 23, 1997, Appellants/Plaintiffs filed their Notice of Appeal and Affidavits to Proceed in forma pauperis (R. 364 thru 372).

On May 5, 1997, the District Court certified and transmitted the record on appeal to U.S. Court of Appeals.

On June 6, 1997, Appellants/Plaintiffs filed a Motion to Stay the Proceedings on Appeal until the Court Reporter transcribe the Omnibus Hearing proceedings.

On June 6, 1997, Appellants/Plaintiffs filed a Motion in the District Court for Transcription of Omnibus Hearing and Supplementation of the Appeal Court's record.

## Argument #1

### Whether the District Court Erred in
### Granting Summary Judgment to Appellees/Defendants

On December 23, 1996, Appellees/Defendants filed, through Ms. Jane L. Mapp, a Notice of Attorney Appearance for Appellees/Defendants Kirk Fordice, Steve Puckett, and State of Mississippi (R. 119 & 120).

On December 23, 1996, Appellees/Defendants filed their Motion to dismiss or in the alternative for summary judgment (R. 121 thru 124). Appellees/Defendants had no sworn affidavits included in their motion for Summary Judgment, as required by Federal Rules of Civil Procedure, Rule 56. Appellees/Defendants had no competent supporting evidence or material evidence to properly constitute summary judgment proof.

Appellees/Defendants filed a memorandum in support of their Motion to Dismiss or for summary judgment (not made a part of the appeal record). However, Appellees/Defendants argued against Appellant/Plaintiff Cotton's right to vote based upon the Mississippi Constitution of 1890, Section 241, but failed to address the claim made by Appellants/Plaintiffs that Section 241 did not have a compelling state interest to disenfranchise Appellant/Plaintiff Cotton and violates the United States Constitution, Amendment 15, and was founded in 1890 at the Constitutional Convention with the intent to discriminate against Black people.

Appellees/Defendants alleged in their pleadings that Appellant/Plaintiff Brown had the right to vote, and could vote by absentee

ballot,  in support of Appellants/Plaintiffs claim that Brown
and similar situated incarcerated citizens could vote, but
because of no available procedures for incarcerated citizens,
Appellant Brown and similar situated citizens were being deprived
of this right.

Appellees/Defendants did not support their summary judgment
motion as required by Rule 56, nor did they claim that armed
robbery was the highest degree of theft or show how the founders
of the Constitution of 1890 meant or interpreted Section 241,
Article 12 of the Mississippi Constitution.

Motions for Summary Judgment are authorized by F.R.C.P.
Rule 56.  These motions permit the Court to resolve lawsuits
without the necessity of trials if there is no genuine dispute
as to any facts which are material and the moving party is
entitled to judgment as a matter of law.

When a motion for summary judgment is filed and is accompanied
by competent supporting evidence, a Court may grant the motion
if the opposing party fails to present controverting evidence.
Summary judgment is appropriate "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together
with affidavits, if any, show there is no genuine issue as
to any material fact and that the moving party is entitled
to judgment as a matter of law.  Fed. R. Civ. P. 56(c)": see
Fraire v. City of Arlington, 957 F. 2d 1268, 1273 (5th Cir.),
cert. denied 113 S. Ct. 462, 121 L.Ed. 2d 371 (1992):  Hanks v.
Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th

Cir. 1992).  "Material facts" are facts that "will affect the outcome of
the suit under governing law."  Frisard v. Bellsouth Telecommunications,
Inc., 898 F.2d 369, 372 (5th Cir. 1995).  The Appellees/Defendants who
sought summary judgment must show by affidavit or other evidentiary materials
that there is no genuine dispute as to any fact material to resolution
of the motion.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct.
2548, 2552, 91 L.Ed. 2d 265 (1986).

In order for the lower court, United States District Court to find
that there are no genuine material factual issues, the Court must be satisfied
that no reasonable trier of fact could have found for the nonmoving party
or, in other words, that the evidence favoring the nonmoving party is
insufficient to enable a reasonable jury to return a verdict for the nonmovant.
In the case at bar, both the Appellants and APpellees agreed that Appellant
Brown and similar situated convicted citizens could vote, and the issue
"material fact" existing was whether the Appellees, by their failure to
implement laws and policy and procedure for the Mississippi Department
of Corrections inmate population, prevented Appellant Brown and other citizens
from voting.  To satisfy the summary judgment burden, the Appellees must
either submit evidentiary documents that negate the existence of some material
element of the nonmoving party's claim or defense, or if the crucial issue
is one for which the nonmoving party will bear the burden of proof at trial,
merely point out that the evidentiary documents in the record contain insuf-
ficient proof concerning an essential element of the nonmoving party's
claim or defense.  See Celotex, 477 U.S. at 325: Little v. Liquid Air
Corp., 951 F.2d 841, 847 (5th Cir. 1991).  The Appellees and Appellants
agreed that a certain class of incarcerated citizens could vote, to include

armed robbery, and the only issue was whether the Appellees were responsible
for the denial of this class' exercising this right.  Also, the Appellees
only argument against Appellant Cotton and similar situated citizens' claim
was that they had a legitimate penological security related goal to disen-
franchise Appellant Cotton, and similar situated incarcerated citizens
of Mississippi, namely the Constitution of Mississippi (R. 319).

In Appellees memorandum brief, in support of their summary judgment
motion, the Appellees pointed out on page 8 (**Exhibit "A" - attached for
the Court' convenience**) that the state can not only disenfranchise all
convicted felons, but it can also distinguish among them provided that
<u>such distinction</u> is <u>rationally related to a legitimate state interest</u>.
However, Appellees have not, and can not provide a distinction outside
of Appellants' claim and the Mississippi Supreme Court's opinion in <u>Ratliff</u>
<u>v. Beal</u>, supra, nor can the Appellees show that the distinction was or
is rationally related to a legitimate state interest. (The interrogatories
and admissions support this claim, as well as Appellees summary judgment
motion and memorandum brief in support thereof.)

Had the Appellees carried their burden for summary judgment, the
burden would have shifted to the Appellants to show that summary judgment
was not appropriate.  See <u>Little,</u> 952 F.2d at 847; <u>Slaughter v. Southern</u>
<u>Talc Co.,</u> 949 F.2d 167, 170 (5th Cir. 1991).  Appellants must, either by
submitting opposing evidentiary documents or by referring to evidentiary
documents already in the record, set out specific facts showing that a
genuine issue as to a material fact exists.  See <u>Celotex</u>, 477 U.S. at 325:
<u>Reese v. Anderson</u>, 926 F.2d 494, 498 (5th Cir. 1991): <u>Fields v. City of</u>
<u>South Houston</u>, 922 F. 2d 1183, 1187 (5th Cir. 1991): Fed.R.Civ.P. 56(e).

The Appellants Cotton and Brown submitted sworn affidavits affirmatively
showing Appellants' comptetence to testify as to the matters stated therein
and that the facts stated in the affidavits are based upon the Appellants'
personal knowledge.  See Isquith v. Middle South Utilities, Inc., 847 F.2d at
194: Lodge Hall Music, 831 F.2d at 80.  Rule 56(e) requires that summary
judgment affidavits be based upon personal knowledge, contain admissible
evidence, and affirmatively demonstrate competency of affiant to testify as
to matters contained therein (R. 149 thru 174).  Appellant Cotton pointed out
in his affidavit that the disenfranchisement laws are not rationally related to
a legitimate state interest, because it was created with a racially discriminatory
intent (R. 154), and Appellant Brown pointed out in his affidavit that he was
not disenfranchised by Section 241, but Appellees refused to allow him to vote
by placing the liability upon some other person (R. 164).

In order for Appellees to constitute proper summary judgment proof,
affidavits must affirmatively show the affiant's competence to testify as to
the matters which the United States Magistrate Judge granted Appellees summary
judgment.  Appellees never claimed any argument or defense outside of an
Eleventh Amendment and qualified immunity defense.  In addition, Appellees
claimed for a defense that Section 2 of the Fourteenth Amendment to the
United States Constitution permits a state to prohibit a felon from voting.  In
support, they claimed that Richardson v. Ramirez, 418 U.S. 24, 94 S.Ct. 2655, 41
L.Ed.2d 551 (1974) settled the question of whether the disenfranchisement of felons
is unconstitutional.  The Richardson Court held, and Appellants agree, that
the state can not only disenfranchise all convicted felons, but it can
also distinguish among them, provided that such distinction is rationally
related to a legitimate state interest.  A close examination of Appellants'

24.

claims will show that in their amended complaint (R. 204), paragraphs 22,
23, 24, and 25 made a valid claim that the disenfranchisement laws are
not rationally related to a legitimate state interest and conflict with
the United States Constitution because it was adopted with a racially
discriminatory intent and continues to have a disproportionate impact on
nonwhite citizens (r. 173). Appellants' claims are different than that
of the Richardson Court. Appellants claims are that Mississippi Constitution
governing disenfranchisement was founded in 1890 at the Mississippi Consti-
tutional Convention with schemes that were elaborated and fixed in Article
12, Section 241, to obstruct the exercise of the franchise by the Negro/Black
African American race. See Ratliff v. Beale, 74 Miss. 247 at page 263
(Miss. 1896), October term, opinion of the Court. The Richardson Court
settled the question of whether a state can disenfranchise some or all
convicted felons, and can also distinguish among them, provided that such
distinction is rationally related to a legitimate state interest. Appellees
did not provide a distinction for the ten listed disenfranchised crimes
founded within the Mississippi Constitution in any of their summary judgment
pleadings. The United States Magistrate, therefore, erred in granting
summary judgment, contrary to settled summary judgment laws and Rule 56(e)
of FRCP, and the District Court abused its discretion in adopting the Magis-
trate Judge's findings and recommendation. A judge's function at the summary
judgment stage is not himself to weigh the evidence and determine the truth
of the matter, but to determine whether there is a genuine issue for trial.
See Celotex Coproration v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed
2d 265 (1986). Appellees and Appellants both agreed that Appellant Brown
is incarcerated on a conviction of armed robbery which is not a crime which

25.

results in disenfranchisement.  Instead, Appellants complains that there
is no procedure whereby he and other inmates who are not disenfranchised
may exercise their right to vote, thus violating their constitutional right.
(See Appellees/Defendants memorandum brief attached, at page 2)  Also see
the Appeal Record at pages 90 thru 95 where Appellants requested class
certification for all similarly situated past, present, and future convicted
citizens of the state of Mississippi who could vote.  No ruling was ever
made concerning this motion, but it was referred to U.S. District Court
Judge William Barbour in the Omnibus Order (R. 194).  This motion and issue
would have resolved whether the Appellees were responsible for denying
and obstructing eligible incarcerated citizens' right to vote, for failure
to implement procedures and laws governing incarcerated citizens of Missis-
sippi.  The Appellees did not object to Appellants request for class certi-
fication, therefore the District Court abused its discretion in granting
summary judgment when the same Court and Judge ruled in <u>Murphee v. Winter</u>,
589 F. Supp. 374 (S.D. Miss. 1984) that the law is clearly established
that certain people incarcerated still have a right to vote in Mississippi.
For the reasons state in Appellants' argument #1, Appellants request this
Court to reverse and remand this case back to the District Court to determine
whether Appellant Brown's right to vote has been abridge by Appellees,
and whether Appellants had a right to have their class certification motion
ruled upon prior to the summary judgment ruling, and whether the Mississippi
Constitution, Article 12, Section 241, was founded with racially discrimina-
tory intent.

**Argument #2**

**Whether the Mississippi Constitution of 1890, Section 241
Of Article 12, was founded upon a State Compelling Interest
To Disenfranchise Certain Classes of Convicted Citizens
<u>On Account of Race, Color, and Previous Condition of Servitude</u>**

In 1835, Mississippi Legislature adopted a new code of criminal law, which applied only to whites, as blacks, being the property that they were, were subject to discipline only by their masters.  The first state prison in Mississippi, "The Walls," had a completely white population.

In 1865, after emancipation and because of the labor force that was lost by whites, the state of Mississippi reacted by passing the Black Codes of 1865.  These Codes made vagrancy, defined as having no lawful employment, a crime that carried a stiff fine with it.  Because the Black vagrant could not pay the fine, of course, the Black person would be hired out to any white man willing to pay it for him, thus restoring the lost "free" labor force.

In 1869, regarding the franchise, the Mississippi Constitution provided under Section 2, Article 7, of the Mississippi Constitution of 1869, in its single article on the franchise, simply that "all male inhabitants of this state, except idiots and insane person, and Indians not taxed, citizens of the United States, or naturalized, twenty-one years old and upwards, who have resided in this state for six months, and in the county one month next preceding the day of election, at which said inhabitant offers to vote, and who are duly registered according to the requirement of Section 3 of this article, and who are not disqualified by reason of **<u>any crime</u>**, are declared to be qualified electors.

In 1875, Mississippi had a violent upheaval, removing Black People who had achieved political office, which paved the way for further racial

27.

oppression.  Mississippi's legislature again came to the rescue and passed
a major crime bill, The Pig Law, that was aimed directly at the African
American.  This law made the theft of any farm animal or property worth
more than ten dollars punishable by up to five years in prison.  Accordingly,
The Pig Law was complimented by the Leasing Act, which allowed for the
leasing of the state's convict labor.

In 1890, due to pressure from angry humanitarians, the Mississippi
Constitutional Convention of 1890 repealed the law and formally ended the
practice of convict leasing and adopted the system of criminal disenfranchise-
ment that exists today.  The specified crimes were those that the legisla-
tures knew blacks were more prone than whites to commit.  See Ratliff v.
Beale, 74 Miss. 247, at page 266 (R. 350).

Appellants should note that Amendment 15, Section 1, of the United
States Constitution, clearly states the right of citizens of the United
States to vote shall not be denied or abridged by the United States or
by any state on "account of race, color or previous condition of servitude."

The United States Magistrate Judge issued his Report and Recommendation
recommending dismissal of Appellants disenfranchisement claim without allowing
the Appellees/Defendants to answer, plead, or otherwise defend against
the Motion for Leave to File Appellants amended complaint and the proposed
amended complaint, which was granted by the same Magistrate Judge, whom
did not consider any of Appellants amended claims, nor existing claims within
their original complaint.  The Magistrate Judge made his ruling in accordance
with Richardson v. Ramirez, 418 U.S. 24 (1974) (R. 331 thru 334), which
is not in dispute by Appellants.  Appellants are in agreement that Section
2 of the Fourteenth Amendment of the United States Constitution permits

28.

a state to prohibit some convicted felons from voting, or all convicted
felons from voting, provided that such distinction is rationally related
to a legitimate state interest.  Appellants claims and argument are simple.
The Mississippi Constitutional Convention of 1890 schemed and elaborated
and fixed the Mississippi Constitution of 1890, Section 241, within the
field of permissible action, under the limitations imposed by the federal
constitution, Amendment 15, the convention swept the circle of expedients
to obstruct the exercise of the franchise by the Negro (African American)
race.  By reason of its "previous condition of servitude" and dependence,
the convention said that Appellants' race had acquired or accentuated certain
peculiarities of habit, of temperament and of character, which clearly
distinguished it, as a race, from that of whites -- a patient, docile people,
but careless, landless and migratory within narrow limits, without fore-
thought, and its criminal members given rather to furtive offenses than
to the robust crimes of the whites.  The 1890 Constitutional Convention
of Mississippi knew that they were restrained by the federal constitution,
Amendment 15, from discriminating against the Negro race.  See Ratliff
v. Beale, 74 Miss. 247, at page 266 (R. 353).  So the scheme was for the
convention to discriminate against the Negro characteristics and the offenses
to which its weaker members were prone to commit.  In short, the 1890 Consti-
tutional Convention, which created Section 241 of the Mississippi Constitution,
was created to circumvent the Fifteenth Amendment and discriminate against
African American people, based on the account of race and previous condition
of servitude.[1]

---

[1]   Discriminatory vote denial occurs, as the term denotes, when the
      franchise is denied on account of race.  Discriminatory vote dilution
      occurs when a voting practice diminishes "the force of minority votes
      that were duly cast and counted."  Holder v. Hall, 114 S. Ct. 2581,
      2593, 129 L.Ed.2d 687 (1994) (Thomas, J., concurring in the judgment).

The constitutional convention has no compelling state interest to disenfranchise crimes listed in Article 12, Section 241, such as **murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy.**[2.]

The Magistrate Judge, and counsel for defendants, cited <u>Richardson v. Ramirez</u>, 481 U.S. 24, 94 S.Ct. 2655, 41 L.ED.2d 551 (1974).  The <u>Richardson</u> Court held, which is not in dispute, "that the state can not only disenfranchise all convicted felons, but it can also distinguish among them, <u>provided that such distinction is rationally related to a legitimate state interest</u>, citing <u>Owens V. Barnes</u>, 711 F.2d 25, 27 (3rd Cir. 1983) and <u>Williams V. Taylor</u>, 677 F.2d 510, 514-15 (5th Cir. 1982).  Accordingly, Mississippi can not provide such a distinction which is rationally related to a legitimate state interest to disenfranchise Appellant Cotton and similarly situated incarcerated citizens whom are disenfranchised because of one of the ten listed crimes, and yet allow other convicted citizens whom were convicted of voting fraud, to continue to vote.  African American citizens in Mississippi are seldom ever in a position to even think of committing a voting fraud.  Section 241 of the Mississippi Constitution is in violation of the provisions of the United States Constitution that governs the franchise.

The Magistrate Judge claimed that Appellants made some conclusory allegations about the Mississippi Constitutional Convention of 1890 (page 4 of Magistrate's Report and Recommendation) (R. 332).  On Objections to the Magistrate's Report and Recommendation, Appellants attached excerpts

---

2.    The original constitutional convention of 1890 disenfranchised only bribery, burglary, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement and bigamy.  Not until the 1900's did Mississippi include **murder** and **rape** to the list of disenfranchised crimes.  However, the intent of Section 241 was targeted at minority (Black people) to keep the African American vote diluted.

from Ratliff v. Beale, 74 Miss. 247 Miss. 247 (Miss. 1896) (R. 350 thru 353) where the Mississippi Supreme Court already laid down the law and interpreted the intent of Section 241 of the Constitutional Convention of 1890 in the year of 1896.  The Justice of the Mississippi Supreme Court, who wrote the opinion outlined in Ratliff, supra, lived during this time period and had a better understanding and basis to make his findings of fact and opinion than the United States District Court for the Southern District of Mississippi did in 1997.  The intent has been shown and proven, as the results of the 1890 Constitutional Convention are in the record. See the Appeal Record, page 173.

The District Court erred and abused its discretion in adopting the Report and Recommendation of the Magistrate without addressing Appellants' Section 1973 claims in both denial and vote dilution theories.  The Second Circuit reversed and remanded a similar issue in Baker v. Pakaki, 85 F.3d 919 (2nd Cir. 1996).  The Second Circuit made a ruling which should apply here, governing Appellees failure to answer Appellants amended complaint, due to the District Court's failure to issue process of complaint (R. 284), nor did the District Court neither receive any evidence or entertain an answer.  See 85 F.3d at 924, where the panel also ruled that the District Court's dismissal of the Section 1973 claim, which pled both denial and vote dilution theories, 58 F.3d at 823-24, was inappropriate, and remanded this claim.  Appellants made both a denial of vote and vote dilution claim. See the Appeal Record, page 204, paragraphs 25 & 30.

The United States Supreme Court addressed the felon disenfranchisement provision of Section 2 in Hunter v. Underwood, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985), and invalidated a provision of the Alabama

Constitution that disenfranchised persons convicted of "any crime...involving moral turpitude," id. at 223, 105 S.Ct. at 1917, on the basis that the provision, which applied primarily to misdemeanors, id. at 226-27, 105 S.Ct. at 1919-20, had been "enacted with the intent of disenfranchising Blacks," id. at 229, 105 S.Ct. at 1921.  The Court made it clear that this ruling was in harmony with its prior decision in Richardson.  See 471 U.S. at 233, 105 S.Ct. at 1922-23.  Appellants made it clear that the Richardson Court is not in dispute by Appellants (R. 185 & 186 & also R. 341).

Wherefore, Appellants request this Court to reverse and remand this case back to the District Court, Order the Amended Complaint to be served, and allow Appellants to seek a change of venue in another District Court in another jurisdictional circuit court district in the United States.

### Argument #3

### Whether the District Court Erred in
### Denying Appellants' Taxation Without Representation Claim

Appellants are well aware of current and existing law governing any aggrieved party's appeal brief, whereas a party's failure to cite any authority in support of their assignment of error precludes the Appellate Court from considering this claim on appeal, citing <u>Brown v. State</u>, 534 So.2d 1019, 1023 (Miss. 1988), cert. denied, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989).  However, Appellants in this situation have researched the laws with the limited available legal resources currently within the prison's law libraries.  The Appellants are not failing to cite authority on their issues; there simply are not case law readily available and within the reach of Appellants.  Appellants do not have access to computers, West Law Computers, or internet access to properly support their assignment of error in this instance, and for these reasons, we ask this Court to consider the Appellants claim, absent case law.

The Magistrate Judge on his Report and Recommendation, recommended dismissal of Appellants' taxation without representation claim.

In Appellants complaint, they alleged that "Plaintiffs (Appellants) are tax paying citizens without representation in the passing of laws in this state and country, and therefore should be exempted from paying taxes now or in the future, (R. 7, paragraph 24, and R. 205, paragraph 31).  Appellants included the claim in their amended complaint.

The Magistrate Judge and District Court Judge ruled that there is no correlation between the paying of tax and the right to vote (R. 335).  However, the District Court failed to take into consideration that the historical events, dating back to this county becoming an independent nation,

indicates that there exists a taxation without representation claim in this instance.  See The Boston Tea Party.  There is nothing obscure about this claim.  Appellants and similarly situated incarcerated citizens are wards of the state, subjected to taxes, and are not being compensated monetarily for any of their labor performed within the state institution.  In addition, Appellants have no representation in the law making process.  Logic dictates such.  Absent the power of the vote, there simply will not be any fair and adequate representation for any voice that has been silenced.  State law, in §27-65-105 of the Mississippi Code, clearly points out in sub-section (a); the tax levied by this chapter shall not apply to the following:

> (a)  sale of property, labor or services taxable under sections 27-65-17, 27-65-19 and 27-65-23, when sold to and billed directly to and payment therefor is made directly by the United states government, **the state of Mississippi and its departments, institutions,** counties and municipalities or departments or school districts of said counties and municipalities.

In short, the state do not tax the state for services.  Appellants are property of the state and should not be taxed without having a voice in the political process.  Appellants invoked the pendent jurisdiction of the District Court to address state law claims (R. 5).  For these reasons, Appellants request this Court to reverse and remand this issue back to the lower court to determine if the state can properly tax the state..

Respectfully submitted,

Jarvious Cotton

Keith Brown

JARVIOUS COTTON,No. 34463
KEITH BROWN, No. 45542
Unit 24 Extension
Parchman, MS 38738

STATE OF MISSISSIPPI

COUNTY OF SUNFLOWER

In Re:  Cotton, et al v. Fordice, et al
Appeal #97-60275

## AFFIDAVIT IN SUPPORT OF CERTIFICATE OF SERVICE

Personally appeared before me, the undersigned authority, in and for the aforesaid jurisdication, Appellants Jarvious Cotton and Keith Brown, duly sworn and under oath does depose and sayeth:

We, Jarvious Cotton and Keith Brown, are the Appellants in the civil action on Appeal in the Fifth Circuit, Court of Appeals, in the action styled Cotton, et al v. Fordice et al, Appeal #97-60275.  We did cause to be mailed our Appellants Brief to the following persons, in the following form and manner, as indicated within our certificate of service, on this date, the 24th day of July, 1997.  The persons and manner are as follows:

1.  Mr. Charles R. Fulbruge, III, Clerk (Original & Three Copies)

2.  Ms. Dawn Dubuisson, Deputy Clerk (One Copy)

3.  Mr. John Lewis Clay, S.A.A.G. (One Copy)

4.  Ms.Jane L. Mapp, S.A.A.G. (One Copy)

We make these statements under the penalty of perjury and applicable laws governing affidavits.

Witness of signatures, this the 24th day of July, 1997. A.D.

_____          _____
Jarvious Cotton                    Keith Brown

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned notary, this the 24 day of July, 1997 A.D.

_____
Notary Public

My Commission Expires December 6, 1997

My Commission Expires: _____

35.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

JARVIOUS COTTON and
KEITH BROWN                                          **PLAINTIFFS**

v.                            **CIVIL ACTION NO. 3:96CV141-B-N**

KIRK FORDICE, et al.                                  **DEFENDANTS**

### MEMORANDUM BRIEF IN SUPPORT OF
### DEFENDANTS' MOTION TO DISMISS OR,
### <u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

### <u>BRIEF STATEMENT OF RELEVANT FACTS</u>

Jarvious Cotton and Keith Brown are inmates legally incarcerated within the

Mississippi Department of Corrections (MDOC), housed at the State Penitentiary at

Parchman.   Defendant  Kirk Fordice is the Governor of the State of Mississippi and

Defendant Steve Puckett is the Commissioner of the Mississippi Department of Corrections.

On or about February 27, 1996, Plaintiffs filed in federal court a 42 U.S.C. §1983 action

against Kirk Fordice, Steve Puckett, the State of Mississippi and other Defendants, alleging

violations of their constitutional right to vote.

Plaintiff Cotton, who upon his conviction for murder was disenfranchised pursuant

to the Mississippi Constitution and statutory law from voting in state elections, complains

*Exhibit "A"*

Not In Courts Record

that this disenfranchisement is in violation of the United States Constitution. Plaintiff Brown is incarcerated on a conviction of armed robbery which is not a crime which results in disenfranchisement. Instead, Brown complains that there is no procedure whereby he and other inmates who are not disenfranchised may exercise their right to vote, thus violating their constitutional rights. Plaintiffs also argue that by virtue of their disenfranchisement, either in law or in practice, they are being subjected to taxation without representation in violation of their rights as citizens of the United States when they are required to pay sales taxes for items purchased in the prison canteen.

Plaintiffs claim that Defendant Fordice, as governor of the State of Mississippi, is responsible for seeing that the the laws arre fithfully executed in accordance with the Mississiippi Constitution. Plaintiffs claim that Defendant Fordice knew or should have known that the "disenfranchisement practices are unconstitutional and were enacted with racial intent to affect and abridge the vting rights of nonwhite citizens."

Plaintiffs claim that Defendant Puckett, as Commissioner of the Department of Corrections, has failed to implement a plan for incarcerated convicted citizens who have not been disenfranchised to exercise their right to vote, thereby depriving them of a constitutional right.

Plaintiffs also claim that the State of Mississippi is responsible for failing to pass a law establishing such a procedure and for continuing to uphold unconsitutional disenfranchimsement practices.



Exhibit "A"
2 of 13

## ARGUMENT

### I.

### THIS ACTION IS BARRED BY THE
### ELEVENTH AMENDMENT AS AGAINST DEFENDANTS
### FORDICE AND PUCKETT IN THEIR OFFICIAL
### CAPACITIES AND AS AGAINST THE STATE OF MISSISSIPPI

Under the Eleventh Amendment to the United States Constitution, suits filed in

federal court against non-consenting states by their own citizens, by citizens of another state,

of a foreign state, or a foreign nation are prohibited. *Principality of Monaco v. Mississippi*,

292 U.S. 313, 329-31, 54 S. Ct. 745, 78 L. Ed. 1282 (1934); *Hughes v. Savell*, 902 F.2d 376,

377 (5th Cir. 1990); *Barry v. Fordice*, 814 F. Supp. 511, 514 (S.D. Miss. 1992). Therefore,

the State of Mississippi is entitled to Eleventh Amendment Immunity from the claims in

Plaintiffs' Complaint. The U.S. District Court in *Roos v. Smith*, 837 F. Supp. 803, 805 (S.D.

Miss. 1993), stated that "The Eleventh Amendment bars judgments under §1983 against the

state, or agencies or instrumentalities of the state, where such judgments would be paid out

of the state treasury." *See also, Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553,

555 (5th Cir. 1988) (standing for proposition that "state" for Eleventh Amendment purposes

includes state agencies); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir.

1986) (holding that claims under 42 U.S.C. §1983 do not override Eleventh Amendment

bar).

A federal district court is under an initial obligation to make a determination as to the

court's jurisdiction over a suit based on the allegations in a complaint and whether or not

Exhibit "A"
3 of 13

such complaint is barred by the Eleventh Amendment, *Pennhurst State Sch. and Hospital v. Halderman*, 465 U.S. 89, 121, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984); *Barry v. Fordice*, 814 F. Supp. 511, 513 (S.D. Miss. 1992). The U.S. District Court in *Barry v. Fordice*, 814 F. Supp. at 813, stated that "Like other types of immunities which provide a defense of suit, the Eleventh Amendment immunity of a state is a threshold matter that must be addressed prior to the 'merits' of the suit, and any order regarding such an Eleventh Amendment issue is immediately appealable." *citing, Loya v. Texas Dept. of Corrections*, 878 F.2d 860 (5th Cir. 1989). It is clear that the issue of Eleventh Amendment immunity must be addressed before the Court considers the substantive merits of Plaintiffs' Complaint.

The U.S. Supreme Court in *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), stated:

> That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this Court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens because of the fundamental rule of which the Amendment is but an exemplification.

The Court in Pennhurst went on to explain that the Eleventh Amendment places an "explicit limitation" on the jurisdiction of a federal court and acts as "a specific constitutional bar against hearing even federal claims that otherwise would be within the jurisdiction of federal courts." *Pennhurst*, 465 U.S. at 119-120.

Exhibit "A"
4 of 13

4

This Eleventh Amendment bar applies to suits where equitable as well as monetary relief is sought. *Cory v. White*, 457 U.S. 85, 90-91, 102 S. Ct. 2325, 72 L. Ed. 2d 694 (1982). *See also, Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100-101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (standing for proposition that jurisdictional bar applies regardless of relief sought). The law is clear that the Eleventh Amendment bars Plaintiffs' suit against the State of Mississippi itself, regardless of the type of relief Plaintiffs are seeking.

Defendants Kirk Fordice and Steve Puckett, as state officials, are immune from this suit against them in their official capacities. The United States Supreme Court has applied the Eleventh Amendment bar against suit in the context of actions against state officials who have been sued for damages in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). A judgment against a state official in his official capacity places liability on the entity he represents, therefore the Eleventh Amendment bars suits for damages against such officials. *Kentucky*, 473 U.S. at 169. *See also, Stem v. Ahearn*, 908 F.2d 1, 4 (5th Cir. 1990) (if Defendants are state employees, federal court lacks subject matter jurisdiction to adjudicate claims fashioned against them in their official capacity); *Cory v. White*, 457 U.S. 85, 90, 102 S. Ct. 2325, 72 L. Ed. 2d 694 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

Neither the Supreme Court of Mississippi nor the Mississippi Legislature has waived Eleventh Amendment immunity so as to make the state or any of its agencies or employees

Exhibit "A"
5 of 13

amenable to suit in federal court. Miss. Code Ann. §11-46-1, et seq; *Kathie Morgan, et al. v. City of Ruleville, et al.*, 627 So.2d 275 (Miss. 1993). In *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), the U.S. Supreme Court held that "A state's waiver of sovereign immunity in the federal court." *Pennhurst*, 465 U.S. at 99, (see footnote 7). Accordingly, Defendants Kirk Fordice and Steve Puckett as officials of the State of Mississippi sued in their official capacities in federal court, are protected by the Eleventh Amendment and that this case should be dismissed as against them in their official capacities.

## II.
## DEFENDANTS KIRK FORDICE AND STEVE PUCKETT ARE ENTITLED TO QUALIFIED IMMUNITY IN THIS ACTION FROM SUIT AS WELL AS LIABILITY

Plaintiffs are legally incarcerated in the Mississippi Department of Corrections penal system, and Defendant Puckett is an employee of the Mississippi Department of Corrections. Defendant Fordice is the governor of the State of Mississippi.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 396 (1982), the United States Supreme Court looked at the substantial costs of subjecting public officials to defending damage claims. The Court expressed its desire to shield public officials from the diversion of their energies through forced defense of challenges to actions taken in their governmental capacities. *Harlow*, 457 U.S. at 322, 95 S. Ct. at 1001. *See also, Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985). The Fifth Circuit Court of Appeals in *Elliott v. Perez*, in footnote 15, noted that *Harlow* applies to both "qualified and good faith" immunity defense and "absolute" immunity defense.

*Exhibit "A"*
*/ of 12*

6

The Court in *Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988) noted "we have consistently held that Plaintiffs who invoke Section 1983 must plead specific acts that if proved, would overcome the individual Defendants immunity defense." No such acts have been plead by Plaintiff to pierce the veil of qualified immunity as to Defendants Fordice and Puckett.

**III.**

**SECTION 2 OF THE FOURTEENTH AMENDMENT
TO THE UNITED STATES CONSTITUTION PERMITS
<u>A STATE TO PROHIBIT A FELON FROM VOTING.</u>**

Section 241, Mississippi Constitution of 1890 disqualifies from voting in state or local elections those persons who have been "convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy." See also, Miss. Code Ann. §23-15-19.

The question of whether the disenfranchisement of felons is unconstitutional was settled in *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). In *Richardson* the United States Supreme Court opined in part, as follows:

> This convincing evidence of the historical understanding of the Fourteenth Amendment is confirmed by the decision of this Court which have discussed the constitutionality of provisions disenfranchising felons. Although the Court has never given plenary consideration to the precise question of whether a State may constitutionally exclude some or all convicted felons from the franchise, we have indicated approval of such exclusions on a number of occasions.
>
> . . . .

Exhibit "A"

7 of 13

7

> [T]he exclusion of felons from the vote has an affirmative sanction in s 2 of the Fourteenth Amendment, a sanction which was not present in the case of the other restrictions on franchise which were invalidated in the cases on which respondents rely. We hold that the understanding of those who adopted the Fourteenth Amendment, as reflected in the express language of s 2 and in the historical and judicial interpretation of the Amendment's applicability to state laws disenfranchising felons, is of controlling significance in distinguishing such laws from those other state limitations on the franchise which have been held invalid under the Equal Protection Clause by this Court.

> . . . .

> We therefore hold that the Supreme Court of California erred in concluding that California may no longer, consistent with the Equal Protection Clause of the Fourteenth Amendment, exclude from the franchise convicted felons who have completed their sentences and paroles.

*Richardson*, 418 U.S. 24, 52-56, 94 S.Ct. 2655, 2670-71.

Pursuant to the Court's holding in *Richardson*, a convicted felon's right to vote is not "fundamental". Furthermore, "the state can not only disenfranchise all convicted felons but it can also distinguish among them provided that such distinction is rationally related to a legitimate state interest. *Owens v. Barnes*, 711 F.2d 25, 27 (3rd Cir. 1983). See also, *Williams v. Taylor*, 677 F.2d 510, 514-15 (5th Cir. 1982). Accordingly, Plaintiff Cotton's claim that his disenfranchisement is unconstitutional is without merit, and for that reason, this cause should be dismissed as a matter of law.

Furthermore, Plaintiff Brown's claims regarding the lack of procedure for allowing those prisoners incarcerated who have not been disenfranchised for conviction of certain felonies to cast their votes in elections is also without merit. Any qualified elector's who is away from his county of residence on election day for any reason, including incarceration,

Exhibit "A"

8

8 of 13

may cast his ballot as provided in Mississippi's Absentee Voter Law, Miss. Code Ann. §23-15-713 *et seq.* See *Murphree v. Winter*, 589 F.Supp. 374 (S.D.Miss. 1984). See also, Miss. Code Ann. 26-15-621 *et seq.*

A prisoner's county of residence does not change solely because of his incarceration, Miss. Code Ann. § 47-1-63, therefore, there is no reason why Plaintiff Brown or other similarly situation inmates could not obtain and cast an absentee ballot. For this reason, this cause should be dismissed as a matter of law.

## IV.
## INMATES HAVE NO RIGHT TO BE
## EXEMPTED FOR THE PAYMENT OF TAXES

Plaintiffs' claim that disenfranchised inmates, or those inmates not disenfranchised but who are unable to vote because of the lack of a procedure to do so, should be exempted from paying taxes is frivolous. Counsel for the above named Defendants was unable to find any authority whatsoever to support Plaintiffs' claim.

The only tax which Plaintiffs take issue with is the sales tax applied to items purchased by inmates from the prison canteen. Plaintiffs' argument that it is tantamount to "taxation without representation" and thus unconstitutional to assess sales tax to individuals who are not allowed to vote is meritless. Sales taxes are not charged only to registered voters, they are charged to out-of-state residents, foreigners from other countries, adults and children alike. No distinction is or could possibly be made between those retaining the franchise and those who have been disenfranchised. This cause should be dismissed as a matter of law and for failure to state a claim upon which relief may be granted.

9



Exhibit "A"

9 of 13

## V.
## DISCOVERY SHOULD BE HELD IN ABEYANCE
## PENDING THIS COURT'S RULING ON
## DEFENDANT'S MOTION AND IMMUNITY DEFENSE

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), the

United States Supreme Court looked at the substantial costs of subjecting public officials to

defending damage claims.   Consonant with its desire to shield public officials from the

diversion of their energies through the forced defense of challenges to actions taken in their

governmental capacities, the Court held that until resolution of the threshold question of the

application of an immunity defense, "discovery should not be allowed." *Harlow*, 457 U.S.

at 322, 95 S. Ct. at 1001. *See also Elliot v. Perez*, 751 F.2d 1472 (5th Cir. 1985).  The Fifth

Circuit Court of Appeals in *Elliot v. Perez*, in footnote 15, noted *Harlow* applies to both the

"qualified or good faith" immunity defense and the "absolute" immunity defense.

The Court in *Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988), in its disposition

of Plaintiff's claim, noted:

> We have consistently held that Plaintiffs who invoke Section 1983 must plead
> specific acts that, if proved, <u>would overcome the individual defendant's
> immunity defense</u>; complaints containing conclusory allegations, absent
> reference to material facts, will not survive motions to dismiss. *Elliot v.
> Perez*, 751 F.2d 1472, 1479 and n. 20 (5th Cir. 1985).  In cases where
> government officials <u>assert absolute or qualified immunity, we have concluded
> that "allowing broadly worded complaints . . . which leaves to traditional
> pretrial depositions, interrogatories, and requests for admission the
> development of the real facts underlying the claim, effectively eviscerates
> important functions and protections of official immunity"</u> [citing *Elliot*, at
> 1476; emphasis added].

*Geter*, at 1553.


Exhibit "A"
10 of 13

10

The Court went on to find ". . . Plaintiffs must demonstrate <u>prior to discovery</u> that their allegations are sufficiently fact specific to remove the cloak of protection afforded by an immunity defense" [emphasis added]. *Id.* Thereafter citing *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987), the Court in *Geter* reiterated the proposition that, even as to qualified immunity, such questions should be determined and resolved at the earliest possible stage in litigation. *Geter*, at 1553; *Anderson* at n.6, 97 L. Ed. 2d at 535.

Further, in the Fifth Circuit decision of *Crane v. State of Texas*, 759 F.2d 412, 415 (5th Cir. 1985), it was held that a meritorious claim of immunity deprives the Court of subject matter jurisdiction in the action. Thus, it was incumbent upon the trial court to settle the question of immunity before proceeding further. In the instant cause, the Defendants have raised the meritorious claim of immunity, which this Court must decide before this matter may proceed. Until the defense of immunity is disposed of by this Court, it is clear that discovery should not be allowed.

## CONCLUSION

Defendants Kirk Fordice, Steve Puckett, and the State of Mississippi are entitled to Eleventh Amendment and/or qualified immunity from suit and liability in this action. A state's disenfranchisement of felons is not violative of the United States Constitution. Those incarcerated prisoners who are qualified electors are not being prevented from voting since they may utilized the Absentee Voter Law. Plaintiffs have no right to be exempted from the assessment of sales tax.

Exhibit "A"
11 of 13

Based on the foregoing arguments of fact and law, Plaintiffs' Complaint, as against these Defendants, should be dismissed pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, summary judgment should be granted pursuant to Fed. R. Civ. P. 56 and, these Defendants' Motion to Hold Discovery pending this Court's ruling on Defendants' immunity defenses should be granted.

Respectfully submitted,

KIRK FORDICE, STEVE PUCKETT, AND STATE OF MISSISSIPPI

DEFENDANTS

**MIKE MOORE, ATTORNEY GENERAL STATE OF MISSISSIPPI**

LEONARD C. VINCENT
MDOC SENIOR STAFF ATTORNEY
MS BAR NO.: 6615

JOHN L. CLAY
SPECIAL ASSISTANT ATTORNEY GENERAL
MS BAR NO.: 6286

JANE L. MAPP
SPECIAL ASSISTANT ATTORNEY GENERAL
MS BAR NO.: 9618

BY: _Jane L. Mapp_

Exhibit "A"
12 of 13

12

## CERTIFICATE OF SERVICE

I, Jane L. Mapp, Special Assistant Attorney General for the State of Mississippi, do hereby certify that I have this day caused to be mailed, via United States Postal Service, first class postage prepaid, a true and correct copy of the foregoing **Memorandum Brief in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment** in the above-styled and numbered cause to the following:

Mr. Jarvious Cotton
MSP # 34463, Unit 14
Parchman, MS 38738

Mr. Keith Brown
MDOC #45542, Unit 14
Parchman, MS 38738

This, the 20th day of December, 1996.

*Jane L Mapp*
Jane L. Mapp
Special Assistant Attorney General

510 George Street, Suite 212
Jackson, Ms 39202
Telephone: (601) 359-5740

13

Exhibit "A"
13 of 13

<u>CERTIFICATE OF SERVICE</u>

This is to certify that Appellants, Jarvious Cotton and Keith Brown, have this day and date caused a true and correct copy of their Appellants Brief to be mailed to the following person, via United States Postal Service, postage prepaid, by dropping it in the Mississippi State Penitentiary Law Library's outgoing legal mailbox.

Charles R. Fulbruge, III, Clerk
United States Court of Appeals
600 Camp Street
New Orleans, Louisiana 70130
(Original & Three Copies)

Dawn Dubuisson, Deputy Clerk
United States Court of Appeals
600 Camp Street
New Orleans, Louisiana 70130
(One Copy)

John Lewis Clay
Special Assistant Attorney General
Post Office Box 220
Jackson, Mississippi 39205
(One Copy)

Jane L. Mapp
Special Assistant Attorney General
510 George Street, Suite 212
Jackson, Mississippi 39202
(One Copy)

Witness out signatures, this the 24th day of July, 1997. A.D.

_____
Jarvious Cotton

_____
Keith Brown

JARVIOUS COTTON, No. 34463
KEITH BROWN, No. 45542
Unit 24 Extension
Parchman, MS 38738

36.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### 97-60275

---

## JARVIOUS COTTON; KEITH BROWN
### PLAINTIFFS - APPELLANTS

### V.

**KIRK FORDICE; STEVE WILLIAM PUCKETT; JOHN DOE, Adams County Election Commissioner; JOHN DOE, Washington County Election Commissioner; ERIC CLARK, Secretary of State; STATE OF MISSISSIPPI; MICHAEL MOORE, Attorney General of Mississippi; FRED FERGUSON, Adams County Circuit Court Clerk; ESTELL PRYOR, Washington County Circuit Court Clerk; RUBY LEE JOHNSON, Adams County Election Commissioner; LINDA BOSCHERT, Washington County Election Commissioner; JUNE S. McKINSTRY, Sunflower County Election Commissioner**
### DEFENDANTS - APPELLEES

---

### On Appeal from the United States District Court
### For the Southern District of Mississippi

---

### BRIEF OF DEFENDANTS-APPELLEES

**MIKE MOORE**
**ATTORNEY GENERAL**
**STATE OF MISSISSIPPI**

**JOHN L. CLAY**
**SPECIAL ASSISTANT ATTORNEY GENERAL**
**MS Bar No.: 6286**
**Post Office Box 220**
**Jackson, MS 39205**

**LEONARD VINCENT, MDOC Senior Staff Attorney**
**MS Bar No.: 6615**
**Post Office Box 38**
**Parchman, MS 38738**

**JANE L. MAPP**
**MS Bar No.: 9618**
**SPECIAL ASSISTANT ATTORNEY GENERAL**
**510 George St. Suite 212**
**Jackson, MS 39202**

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal:

1.     Inmate Jarvious Cotton, Appellant

2.     Inmate Keith Brown, Appellant

3.     Gov. Kirk Fordice, Appellee

4.     Steven W. Puckett, Former MDOC Commissioner, Appellee

5.     Judge William H. Barbour, Jr., U.S. Dist. Ct. for the Southern Dist. of Miss.

The undersigned counsel further certifies that the following attorneys have an interest in the outcome of this case:

For Defendant-Appellee:

1.     Mike Moore, Attorney General, State of Mississippi

2.     John L. Clay, Special Assistant Attorney General, State of Mississippi

3.     Leonard C. Vincent, Mississippi Dept. of Corrections Senior Staff Attorney

4.     Jane L. Mapp, Special Assistant Attorney General, State of Mississippi

By: _Jane E Mapp_____

i

## STATEMENT REGARDING ORAL ARGUMENT

The Appellees submit that their memorandum brief on appeal contains sufficient statements and arguments of fact and law, and that nothing would be gained through oral argument in this case.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES ........................................................................... iv

STATEMENT OF JURISDICTION ................................................................. v

STATEMENT OF THE ISSUE ....................................................................... vi

STATEMENT OF THE CASE ........................................................................ 1

SUMMARY OF THE ARGUMENT ............................................................... 4

STANDARD OF REVIEW ............................................................................ 5

ARGUMENT ............................................................................................... 5

CONCLUSION ............................................................................................ 13

CERTIFICATE OF SERVICE ....................................................................... 15

# TABLE OF AUTHORITIES

## <u>CASES</u>                                                              <u>PAGE</u>

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 ............................................. 7

Celotex Corp. v. Catrett,
 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................................6

*Haferty v. Pulse Drug Co.*, 864 F.2d 1185, 1188 (5th Cir. 1989) ........................... 5

*Owens v. Barnes*, 711 F.2d 25, 27 (3rd Cir. 1983) ...................................................9

*Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 894 (5th Cir. 1994) ........................5

*Ratliff v. Beale*, 74 Miss. 247 (1896) ...............................................................9,10,11

*Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577 (5th Cir. 1986) ................... 7

*Richardson v. Ramirez*,
 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) ........................4,8,9,11

*Williams v. State Mississippi*,
 170 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012 (1898) ....................................11

*Williams v. Taylor*, 677 F.2d 510, 514-15 (5th Cir. 1982) ...................................... 9

*U.S. v. Upton*, 91 F.3d 677, 689 FN 10, (5th Cir. 1996) .......................................12

## <u>OTHER AUTHORITIES</u>                                              <u>PAGE</u>

F.R.C.P., Rule 56 .......................................................................................................5,6

Miss. Const. 1890, Section 241 ...........................................................................7,10,11

Miss. Code Ann. §23-15-19 .........................................................................................7

# STATEMENT OF JURISDICTION

This action is before this Court on the appeal of a final decision within the meaning of 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

**I. WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS.**

**II. WHETHER THE MISSISSIPPI CONSTITUTION OF 1890, SECTION 241 OF ARTICLE 12, WAS FOUNDED UPON A STATE COMPELLING INTEREST TO DISENFRANCHISE CERTAIN CLASSES OF CONVICTED CITIZENS FROM VOTING ON ACCOUNT OF RACE, COLOR, AND PREVIOUS CONDITION OF SERVITUDE.**

**III. WHETHER THE DISTRICT COURT ERRED IN DENYING APPELLANTS' TAXATION WITHOUT REPRESENTATION CLAIM.**

## <u>STATEMENT OF THE CASE</u>

**(i) Course of Proceedings and Disposition in Court Below:**

Appellants, Jarvious Cotton and Keith Brown, are inmates legally incarcerated within the Mississippi Department of Corrections (MDOC), housed at the State Penitentiary at Parchman.  Defendant  Kirk Fordice is the Governor of the State of Mississippi and Defendant Steve Puckett is the former Commissioner of the Mississippi Department of Corrections.  On or about February 27, 1996, Cotton and Brown filed in federal court a 42 U.S.C. §1983 action against Kirk Fordice, Steve Puckett, the State of Mississippi and other Defendants, alleging violations of their constitutional right to vote.  (C.P.[1] at 1-38).

On or about June 14, 1996, the lower court entered and order denying Cotton and Brown's motion to proceed in forma pauperis and requiring them to pay a partial filing fee of eight dollars ($8.00).  (C.P. at 39).  Following the payment of this partial filing fee, the lower court ordered the clerk to issue summons to the defendants, Fordice Puckett, and State of Mississippi.  (C.P. at 43).  An answer to the complaint was filed on behalf of the defendants on August 1, 1996.  (C.P. at 48).

---

[1]For the purposes of this brief, "C.P." will refer to the "Clerk's Papers".

1

An omnibus hearing was held before Magistrate Judge Alfred G. Nicols on December 11, 1996. A Motion to Dismiss or, in the Alternative, for Summary Judgment, was filed on behalf of defendants on or about December 23, 1996, (C.P. at 121-27) to which Cotton and Brown filed their response to on January 9, 1997. (C.P. at 139) Cotton and Brown were allowed to filed an amended complaint on January 10, 1997, adding additional defendants, but process was never served on these defendants. (C.P. at 192).

On March 18, 1997, Magistrate Judge Nicols filed a report and recommendation wherein he recommended that the defendants motion for summary judgment be granted and that the voting and disenfranchisement claims be dismissed with prejudice and that the taxation without representation claim be dismissed as frivolous. (C.P. at 329) Following objections by Cotton and Brown, (C.P. at 337), Judge William H. Barbour, Jr. adopted the report and recommendation and granted defendants motion to dismiss and for summary judgment. (C.P. at 361). Final Judgment to this effect was entered on April 7, 1997. (C.P.at 363). It is from this final judgment that Cotton and Brown now appeal.

**(ii) Brief Statement of Facts:**

Cotton, who upon his conviction for murder was disenfranchised pursuant to the Mississippi Constitution and statutory law from voting in state elections, complains that

2

this disenfranchisement is in violation of the United States Constitution.  Brown is incarcerated on a conviction of armed robbery which is not a crime specifically set out in the Mississippi Constitution or statutory law as one which results in disenfranchisement.[2]  Accordingly, Brown asserted in the complaint that he has not been disenfranchised, but that there is no procedure whereby he and other inmates who are not disenfranchised may exercise their right to vote, thus creating a violation of their constitutional rights.  Cotton and Brown also argue that by virtue of their disenfranchisement, either in law or in practice, they are being subjected to taxation without representation in violation of their rights as citizens of the United States when they are required to pay sales taxes for items purchased in the prison canteen.

Cotton and Brown claim that Defendant/Appellee Fordice, as governor of the State of Mississippi, is responsible for seeing that the laws are faithfully executed in accordance with the Mississippi Constitution.  Cotton and Brown claim that Fordice knew or should have known that the "disenfranchisement practices are unconstitutional and were enacted with racial intent to affect and abridge the voting rights of nonwhite

---

[2]While armed robbery is not specifically mentioned in Section 241 as a disenfranchisement crime, theft is.  The lower court found that armed robbery is the highest degree of theft and therefore Brown was disenfranchised as a result of his conviction of armed robbery.  The defendants/appellees accept this finding of law and do not take issue with it on appeal.

citizens."

Cotton and Brown claim that Defendant/Appellee Puckett, who at the time this case was filed was Commissioner of the Department of Corrections, failed to implement a plan for incarcerated convicted citizens who have not been disenfranchised to exercise their right to vote, thereby depriving them of a constitutional right.

Cotton and Brown also claim that the State of Mississippi is responsible for failing to pass a law establishing such a procedure and for continuing to uphold unconstitutional disenfranchisement practices.

The lower court found that there was no genuine issue of material fact and that the case should be dismissed as a matter of law.

## SUMMARY OF ARGUMENT

Pursuant to *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), a convicted felon's right to vote is not "fundamental". Furthermore, "the state can not only disenfranchise all convicted felons but it can also distinguish among them provided that such distinction is rationally related to a legitimate state interest.

Cotton and Brown's argument that it is tantamount to "taxation without representation" and thus unconstitutional to assess sales tax to individuals who are not allowed to vote is meritless. No distinction is or could possibly be made between those retaining the franchise and those who have been disenfranchised. The lower court did

4

not err when it held this claim to be frivolous and without merit and dismissed the claim as a matter of law.

## STANDARD OF REVIEW

The Court of Appeals accepts the factual findings of a district court unless they are found to be clearly erroneous. *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 894 (5th Cir. 1994). The appropriate standard for appellate review of conclusions of law by a district court is *de novo. Randall*, 13 F.3d at 894; see also, *Haferty v. Pulse Drug Co.*, 864 F.2d 1185, 1188 (5th Cir. 1989), (holding that a court of appeals reviews a district court's findings of fact under the clearly erroneous standard and conclusions of law *de novo*).

## ARGUMENT

### I. WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANTS.

In this first issue, Cotton and Brown argue that since defendants did not attach any affidavits to their motion for summary judgment they were not in compliance with F.R.C.P., Rule 56, and the lower court erred in granting the motion and dismissing the case.

Rule 56 reads in pertinent part as follows:

(b) **For Defending Party.**    A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is

sought may, at any time, move *with or without supporting affidavits* for a summary judgment in the party's favor as to all or any part thereof.

(c)   . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, *together with the affidavits, if any*, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  (emphasis added).

Cotton and Brown's claim that a motion for summary judgment must to supported by affidavits is meritless.  Rule 56 clearly states that a party may "move with or without supporting affidavits for a summary judgment".  The case law set out by Cotton and Brown in their brief also shows that affidavits are not a requirement for summary judgment.  (See page 22 of Appellants' Brief wherein they cite to *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

Cotton and Brown further argue in this issue that their were genuine issues of material fact to be decided and therefore summary judgment was not appropriate.  It is well established that a party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 325.  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Id.* at 324-25.  While the Court must review the facts drawing all inferences most favorable to the

6

party opposing the motion, that party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2514, 91 L.Ed. 2d 202 (1986).

Contrary to Cotton and Brown's assertions, there are no genuine issues of material fact in this matter. All of the facts that they assert to be in controversy are either actually questions of law or questions of fact that are not material to the disposition of this case. Therefore, this was an appropriate case to be decided on a motion to dismiss or, alternatively, on a motion for summary judgment.

## II. WHETHER THE MISSISSIPPI CONSTITUTION OF 1890, SECTION 241 OF ARTICLE 12, WAS FOUNDED UPON A STATE COMPELLING INTEREST TO DISENFRANCHISE CERTAIN CLASSES OF CONVICTED CITIZENS FROM VOTING ON ACCOUNT OF RACE, COLOR, AND PREVIOUS CONDITION OF SERVITUDE.

Article 12, Section 241, as amended, of the Mississippi Constitution of 1890 disqualifies from voting in state or local elections those persons who have been "convicted of murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement or bigamy." See also, Miss. Code Ann. §23-15-19.

7

The question of whether the disenfranchisement of felons is unconstitutional was settled in *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). In *Richardson* the United States Supreme Court opined in part, as follows:

> This convincing evidence of the historical understanding of the Fourteenth Amendment is confirmed by the decision of this Court which have discussed the constitutionality of provisions disenfranchising felons. Although the Court has never given plenary consideration to the precise question of whether a State may constitutionally exclude some or all convicted felons from the franchise, we have indicated approval of such exclusions on a number of occasions.
>
> . . . .
>
> [T]he exclusion of felons from the vote has an affirmative sanction in s 2 of the Fourteenth Amendment, a sanction which was not present in the case of the other restrictions on franchise which were invalidated in the cases on which respondents rely.  We hold that the understanding of those who adopted the Fourteenth Amendment, as reflected in the express language of s 2 and in the historical and judicial interpretation of the Amendment's applicability to state laws disenfranchising felons, is of controlling significance in distinguishing such laws from those other state limitations on the franchise which have been held invalid under the Equal Protection Clause by this Court.
>
> . . . .
>
> We therefore hold that the Supreme Court of California erred in concluding that California may no longer, consistent with the Equal Protection Clause of the Fourteenth Amendment, exclude from the franchise convicted felons who have completed their sentences and paroles.

*Richardson*, 418 U.S. 24, 52-56, 94 S.Ct. 2655, 2670-71.

8

Pursuant to the Court's holding in *Richardson*, a convicted felon's right to vote is not "fundamental". Furthermore, "the state can not only disenfranchise all convicted felons but it can also distinguish among them provided that such distinction is rationally related to a legitimate state interest. *Owens v. Barnes*, 711 F.2d 25, 27 (3rd Cir. 1983). See also, *Williams v. Taylor*, 677 F.2d 510, 514-15 (5th Cir. 1982).

In this assignment of error Cotton and Brown do not take issue with the holding in *Richardson,* instead they argue that the Mississippi Constitution of 1890, § 241, does not meet the "legitimate state interest standard" and violates the Fifteenth Amendment to the United States Constitution because it was enacted with discriminatory intent by disenfranchising only those convicted of crimes which black persons were more likely to commit than white persons. To support this argument they cite to a 1896 Mississippi Supreme Court case, *Ratliff v. Beale*, 74 Miss. 247 (1896). They contend that in the opinion of that case the Mississippi Supreme Court admitted that the members of the 1890 Constitutional Convention, knowing that could not discriminate against person because of "race, color or previous condition of servitude" schemed to circumvent the Fifteenth Amendment by discriminating against characteristics of the black race which caused them to commit certain types of crimes more readily than whites.

*Ratliff* involved a dispute over whether nontaxable property could be confiscated and sold as payment of poll taxes. In discussing that issue the court mentioned a

9

number of restrictions which resulted in preventing numbers of blacks from voting.  The court stated, in dicta, that the black race was "a patient and docile people . . . its criminal members given rather to furtive offenses than to the robust cries of the whites" and that while "[b]urglary, theft, arson, and obtaining money under false pretenses were declared to be disqualifications, . . . robbery and murder, and other crimes in which violence was  the principal ingredient, were not." *Ratliff*, 74 Miss. at 266-67.  At the time *Ratliff* was written, Section 241, read quite differently than it does today.  One of the most important amendments that concerns this matter is the crimes which result in disenfranchisement  upon  conviction.   The original 1890 version of Section 241 disenfranchised bribery, burglary, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement and bigamy.  Section 241, as it reads today, also includes murder and rape, but does not mention burglary.  The present inclusion of the violent crimes of murder and rape and the deletion of burglary makes Ratliff inapplicable to Section 241 as it reads today.  Cotton and Brown's argument that the discriminatory effect Section 241 may have had when it was enacted over one hundred years ago makes the section unconstitutional today is without merit.  The original amendment also excluded women from voting, but Cotton and Brown do not argue that the present version is constitutional for that reason.

10

It should also be noted that the United States Supreme Court, in *Williams v. State Mississippi*, 170 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012 (1898), in which *Ratliff, Supra*, and Section 241 of the Mississippi Constitution of 1890 was discussed, held that "the operation of the constitution and law is not limited by their language or effects to one race.  They reach weak and vicious white men as well as weak and vicious black men, and whatever is sinister in their intention, if anything, can be prevented by both races by the exertion of that duty which voluntarily pays taxes and refrains from crime." *Williams*, 170 U.S. at 222.  The Court further held that the provisions of the Mississippi Constitution and the laws passed pursuant thereto prescribing the qualifications of voters and jurors "do not on their face discriminate between the races, and it has not been shown that their actual administration was evil; only that evil was possible under them." *Id.* at 225.

Defendants/Appellees again assert that the Supreme Court holding *Richardson, Supra*, is controlling on this issue and that Section 241, of the Mississippi Constitution, whereby certain felons, but not all, are disenfranchised does not violate any provision of the United States Constitution.  Accordingly, the lower court's dismissal of the claim should be affirmed.

## III. WHETHER THE DISTRICT COURT ERRED IN DENYING APPELLANTS' TAXATION WITHOUT REPRESENTATION CLAIM.

Cotton and Brown begin their argument under this issue by admitting that they could find absolutely know legal authority to support their assignment of error. They admit that it is well established that where a party's fails to cite any authority in support of an assignment of error the court may consider the claim abandoned on appeal. See, *U.S. v. Upton*, 91 F.3d 677, 689 FN 10, (5th Cir. 1996). They attempt to get around the rule by stating that as inmates they have insufficient legal resources to conduct proper research. They make this argument even though they were able to conduct extensive research on the other assignments of error, including finding and citing a 101-year-old Mississippi Supreme Court case. Appellees submit that this contention of insufficient legal resources is merely an attempt by Cotton and Brown to circumvent the rule requiring supporting authority where they are faced with an assignment of error that is absolutely without merit.

Cotton and Brown's claim that disenfranchised inmates, or those inmates not disenfranchised but who are unable to vote because of the lack of a procedure to do so, should be exempted from paying taxes is frivolous. The only tax which Cotton and Brown take issue with is the sales tax applied to items purchased by inmates from the prison canteen. Their argument that it is tantamount to "taxation without

12

representation" and thus unconstitutional to assess sales tax to individuals who are not allowed to vote is meritless. Sales taxes are not charged only to registered voters, they are charged to out-of-state residents, foreigners from other countries, adults not registered to vote and children alike. No distinction is or could possibly be made between those retaining the franchise and those who have been disenfranchised. The lower court did not err when it held this claim to be frivolous and without merit and dismissed the claim as a matter of law.

## CONCLUSION

Based on the foregoing arguments of fact and law, the lower court's grant of summary judgment in favor of the defendants, and dismissal of this cause with prejudice should be affirmed.

Respectfully submitted,

KIRK FORDICE; STEVE WILLIAM PUCKETT; STATE OF MISSISSIPPI DEFENDANTS - APPELLEES

**MIKE MOORE, ATTORNEY GENERAL STATE OF MISSISSIPPI**

LEONARD C. VINCENT MDOC SENIOR STAFF ATTORNEY MS BAR NO.: 6615

JOHN L. CLAY
SPECIAL ASSISTANT ATTORNEY GENERAL
MS BAR NO.:  6286

JANE L. MAPP
SPECIAL ASSISTANT ATTORNEY GENERAL
MS BAR NO.:  9618

By: _Jane L Mapp_____

## <u>CERTIFICATE OF SERVICE</u>

I, Jane L. Mapp, Special Assistant Attorney General for the State of Mississippi, do hereby certify that I have this day caused to be mailed, via United States Postal Service, first class postage prepaid, a true and correct copy of the foregoing **Appellees' Brief** in the above-styled and numbered cause to the following:

Inmate Jarvious Cotton   Inmate Keith Brown
MDOC# 34463              MDOC # 45542
Unit 24 Extension        Unit 24 Extension
Parchman, MS 38738       Parchman, MS 38738

This, the _____10th_____ day of September, 1997.


_____
Jane L. Mapp
Special Assistant Attorney General


510 George Street, Suite 212
Jackson, Mississippi 39202
Telephone: (601) 359-5740

# 97-60275

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

## PERMANENT

JARVIOUS COTTON & KEITH BROWN                    APPELLANTS


VERSUS                                            #97-60275


KIRK FORDICE, ET AL                               APPELLEES


---


**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

---


Reply Brief of Appellants, Pro se


<u>Oral Argument Requested</u>


U.S. COURT OF APPEALS
**FILED**

SEP 1 0 1997

CHARLES R. FULBRUGE III
CLERK


JARVIOUS COTTON, No. 34463
KEITH BROWN, No. 45542
Unit 24 Extension
Parchman, MS 38738

## STATEMENT REGARDING ORAL ARGUMENT

The Appellants submit that due to the fact that they are pro se litigants and that Appellees appear to constantly argue immaterial issues contrary to the issues being raised by Appellants, apparently for the purpose of confusing the Court, an oral argument is warranted in this case.

i

<u>**REPLY TO APPELLEE'S ARGUMENT**</u>

I.    WHETHER THE DISTRICT COURT ERRED IN GRANTING SUMMARY
      JUDGMENT TO DEFENDANTS

     In the first issue regarding compliancer with F.R.C.P.,
Rule 56, Appellants contend that an oversight was made concerning
the requirements for such motion.  However, its important to
reiterate that Appellees submitted that the appropriate standard
for appellate review of conclusions of law by a district court
is **de novo**; citing <u>Randall v. Chevron U.S.A., Inc.</u>, 13 F.3d
at 894.  As such, it should be noted that throughout the course
of the Omnibus Hearing proceedings, within the limited discovery,
and even in Appellees memorandum brief in support of their Motion
for Summary Judgment, Appellees contended that Appellant Brown
had the right to vote and could vote by absentee ballot (see
pages 8 & 9 of Exhibit A, attached to Appellant's principal
brief for Court's convenience).  Furthermore, it's important
to note that the District Court granted Summary Judgment in
favor of Appellees, contending that Appellant Brown could, in
fact, **not vote**; an issue never raised or argued by Appellees
for Summary Judgment consideration.  Since Appellees feel it's
important for this Court to view these issues **de novo**, it's
especially important to note that the District Court Magistrate
stepped outside of his neutral and detached role and became
a defending party.  Evidence of this is seen in the transcript
of the Omnibus Hearing proceeding, beginning at line 22 on page
36 and ending at line 23 on page 37, wherein the District Court

Magistrate instructed the defendants on how to answer certain admissions.  The Magistrate further assured Appellants, during the course of the Omnibus Hearing proceedings, that he had been a magistrate "five and a half years and () cannot ever remember a repot and recommendation on a prisoner case that was not adopted" (Page 34, lines 19-21 Omnibus Hearing Transcript).  Accordingly, the District Court Judge stepped outside of his neutral and detached role by adopting the Magistrate's Report and Recommendation, which clearly contained erroneous findings of fact and law.  So, even a **de novo** review, as requested by Appellees, indicates that the Ditrict Court erred in granting summary judgment to defendants, as argued within Appellant's principal brief.

II.  **WHETHER THE MISSISSIPPI CONSTITUTION OF 1890, SECTION 241 OF ARTICLE 12, WAS FOUNDED UPON A STATE COMPELLING INTEREST TO DISENFRANCHISE CERTAIN CLASSES OF CONVICTED CITIZENS FROM VOTING ON ACCOUNT OF RACE, COLOR, AND PREVIOUS CONDITION OF SERVITUDE.**

Appellees arguments in this instance hold no merit.  Appellees contend that Appellants do not take issue with the holding in Richardson v. Ramirez, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974).  However, Appellees chose to ignore Appellants contentio that the state of Mississippi cannot provide the distinction enumerated by the Richardson, supra, Court:

> that the state cannot only disenfranchise all convicted felons, but it can also distinguish among them, **provided that such distinctio is rationally related to a legitimate state interest.**

2.

Further, Appellees chose to ignore that Appellants merely cited Ratliff v. Beale, 74 Miss. 247 (1896), for the purpose of showing the intent of, and not the effect of, Section 241, which is critical for this Court's consideration of the instant claim.

Furthmore, it's ludicrous for Appellees to expect this Court to hold the findings of Williams v. State of Mississippi, 170 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012 (1898) as the controlling finding, as opposed to the Court's findings in Hunter v. Underwood, 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985).

Appellees have failed to provide any meritable defense to the clear and concise claims enumerated within Appellants principal brief.  Instead, Appellees desire that this Court take a **de novo** review in considering these issues, while Appellees constantly dance around the genuine issues being brought before this Court.

## III. WHETHER THE DISTRICT COURT ERRED IN DENYING APPELLANTS' TAXATION WITHOUT REPRESENTATION CLAIM.

Appellees contend that the Appellants are attempting to get around the rule, implying that this is a tactic of some sort.  However, in defense of this implication, it's important to note that Appellees have far more advanced research tools available to them.  Moreover, Appellees too did not proffer any legal authority that diputes the commonsense claim being

3.

brought by Appellants.  Furthermore, in Plaintiff/Appellant

Cotton's Affidavit in Oppositio to Defendants' Motion for Summary

Judgment, Cotton pointed out that, as a former supermarket

assistant store manager,in New York City, he knows that sales

taxes were not charged to foreigners from other countries.

Moreover, most foreigners had tax exempt I.D. cards for use

when purchasing items in New York.(Court Record, page 152).

Additionally, Appellants have personal knowledge that the state

(Mississippi Depatment of Corrections) vehicles are tax exempt,

because tag number G00602 has it (tax exempt) on the state

vehicle.  So, Appellees argument that no distinction is/or could

possibly be made between those retaining the franchise and those

who have been disenfranchised is without merit.  Currently,

prison purchases are made from a prison canteen, via computer,

because of a cashless system that's in effect.  Appropriate

distinctios can easily be made via computer transactions.


## CONCLUSION


Based upon the foregoing arguments of fact and law, as

well as Appellees constant attempt to "dance around" the genuine

issues being presented to this Court for review, Appellants

request an oral argument and feel that it's strongly needed

and warranted in the interest of justice.  Furthermore, this

cause should be reversed  and remanded to the lower Court, and

Appellants request that anorder be issued instructing that the

4.

Amended Complaint be served and allow Appellants to seek a change of venue in another District Court for another jurisdictional district in the United States.

_Jarvious Cotton_

_Keith Brown_

JARVIOUS COTTON, NO. 34463
KEITH BROWN, NO. 455423
Unit 24 Extension
Parchman, MS 38738

STATE OF MISSISSIPPI

COUNTY OF SUNFLOWER

IN RE:  Cotton, et al v.
Fordice, et al
Appeal #97-60275

## AFFIDAVIT IN SUPPORT OF CERTIFICATE OF SERVICE

Personally appeared before me, the undersigned authority, in an for the aforesaid jurisdiction, Appellants Jarvious Cotton and Keith Brown, duely sworn and under oath do depose and sayeth:

We, Jarvious Cotton, and Keith Brown, are the Appellants in the civil action on Appeal in the Fifth Circuit, Court of Appeals, in the action styled Cotton et al v. Fordice et al, Appeal #97-60275.  We did cause to be mailed our Reply Brief to the following persons, in the fllowing form and manner, as indicated within our certificate of service, on the date of this affidavit.  The persons and manner of service are as follows:

1.  Mr. Charles R. Fulbruge, III, Clerk (Original & Three Copies)

2.  Ms. Dawn Dubuisson, Deputy Clerk (One Copy)

3.  Mr. John Lewis Clay, S.A.A.G. (One Copy)

4.  Ms. Jane L. Mapp, S.A.A.G. (One Copy)

We make these statements under the penalty of perjury and applicable laws governing affidavits.

Witness our signatures, this the ___8___ day of ___Sept___, 1997. A.D.

_____
Jarvious Cotton

_____
Keith Brown

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned notary, this the ___8___ day of ___Sept___, 1997. A.D.

_____
Notary Public

My Commission Expires December 8, 1997

_____
My Commission Expires: