IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROY HARNESS, ET AL.                                                    PLAINTIFFS

VS.                                    CIVIL ACTION NO. 3:17cv791-DPJ-FKB

DELBERT HOSEMANN, SECRETARY OF
STATE OF MISSISSIPPI                                                    DEFENDANT

*consolidated with*

DENNIS HOPKINS, ET AL.                                                 PLAINTIFFS

VS.

SECRETARY OF STATE DELBERT
HOSEMANN, in his official capacity                                     DEFENDANT
_____

SECRETARY HOSEMANN'S REBUTTAL SUPPORTING HIS MOTION FOR
SUMMARY JUDGMENT AS TO THE *HARNESS* PLAINTIFFS' LAWSUIT
_____

Secretary of State Hosemann's initial summary judgment brief [Dkt. 64],

supporting evidence [Dkt. 63-1 & 63-2], and response brief opposing plaintiffs' cross-

motion [Dkt. 84] establish all the reasons the Court should dismiss the *Harness* lawsuit.

This rebuttal deals with the few things in plaintiffs' opposition to the Secretary's motion

[Dkt. 82] that warrant further response.

REPLY ARGUMENT

**Lack of Standing and Eleventh Amendment Immunity.**  Secretary

Hosemann is not a viable target just because this case involves voting.  As plaintiffs'

response mentions, the Secretary of State's Office maintains the Statewide Elections

Management System (SEMS) which contains information county officials may access

regarding "convictions for disenfranchising crimes," and the Secretary of State's Office

"is responsible for training local election officials" how to use SEMS.  [Dkt. 82 at 3].

However, SEMS does not create plaintiffs' Article III standing or a viable path around

the Secretary's Eleventh Amendment immunity.

SEMS (or no SEMS), Secretary Hosemann lacks any duty or authority to

supervise any county election officials.  [Dkt. 63-1, No.6:19-20].[1]  With or without SEMS

(or SEMS training), county officials must keep their own "full and complete list, in

alphabetical order, of persons convicted of voter fraud or of any crime listed in Section

241," Miss. Code Ann. § 23-15-151, and are solely responsible for voter registration and

maintenance.  [Dkt. 63-1, Nos. 7:25; 11].  Secretary Hosemann cannot register plaintiffs

to vote, prevent them from registering, or command local officials to do those things.

Plaintiffs' alleged injuries are connected to their felony convictions, but disconnected

from the Secretary's actions or inactions.  They cannot sue him here.

Nothing in ***Campaign for Southern Equality v. DHS***, 175 F.Supp.3d 691

(S.D. Miss. 2016), or authorities it relied on, compel a different conclusion.  Unlike in

the ***Campaign***, plaintiffs here lack an alleged "injury produced by determinative or

coercive effect upon the action of someone else" attributable to Secretary Hosemann.

175 F.Supp.3d at 707 (internal citations omitted).  Dissimilar from the defendant Texas

agency in ***Ivy v. Williams***, 781 F.3d 250, 253 (5th Cir. 2015), Secretary Hosemann

cannot deny drivers' education licenses (or do anything) to local officials who comply, or

fail to comply, with state or federal law.  Whether it be a lack of traceability,

redressability, or "some enforcement connection," each shows plaintiffs' claims against

---

[1] Citations to Secretary Hosemann's previously filed Itemization of Undisputed Material Facts and Supporting Evidence, and its attached consecutively paginated record, in this brief follow this format: [(docket entry number(s)), No. (itemized fact number(s)):(record page number(s))].

the Secretary fail under Article III and the Eleventh Amendment.[2]

**Plaintiffs' Counter-factual "Entire List" Argument.** Plaintiffs Harness and Karriem's respective forgery and embezzlement of public funds convictions render them ineligible to vote. [Dkt. 63-1, Nos. 1-2:3-4, 13]. As Secretary Hosemann already established, the threshold component of plaintiffs' merits argument fails, *i.e.*, that race discrimination motivated the 1890 framers to include bribery, perjury, forgery, and embezzlement in their version of Section 241. [Dkt. 64 at 12-16]. Plaintiffs counter that Secretary Hosemann has "no expert opinion or historical evidence" to back-up his argument. [Dkt. 82 at 12]. That's entirely inaccurate.

With respect to "expert opinion," it takes no academic to establish what constitutions, laws, and judicial opinions mean. As far as "historical evidence" goes, Mississippi Constitutions, constitutional amendments, felon disenfranchisement laws, and the ***Ratliff*** decision are evidence. That evidence is before the Court.

Under the 1817, 1832, and 1868 Mississippi Constitutions, the State's criminal disenfranchisement policy was persons "convicted of bribery, perjury, forgery, or other high crimes or misdemeanors" could not vote. [Dkt. 63-1, Nos. 15, 18:121, 23:148]. Race played no role in that long-standing policy.[3] There is no proof, aside from historical

---

[2] In addition to their own arguments, plaintiffs adopt the *Hopkins* plaintiffs' standing arguments regarding their Eighth and Fourteenth Amendment challenges to Section 241. Secretary Hosemann, in turn, adopts here his overlapping standing and Eleventh Amendment arguments in his summary judgment briefing on the *Hopkins* claims, and notes the *Harness* plaintiffs have not challenged Section 253—which requires independent standing and Eleventh Amendment analyses from all the plaintiffs' various Section 241 claims.

[3] Because only twenty-one year old white males could vote before the Civil War, the State's antebellum disenfranchisement laws obviously did not target African-Americans. Further, even plaintiffs' historian apparently agrees race did not motivate the 1868 constitutional delegates' list of disenfranchising crimes. In 1868, and the following twenty years, according to Professor Luckett, a "bi-racial coalition had ruled" Mississippi "and African

speculation, that race motivated the 1890 framers to retain their predecessors' disenfranchising crimes of dishonesty.  Meanwhile, *Ratliff v. Beale*, 20 So. 865 (Miss. 1896), which is plaintiffs and their historian's only original source evidence, points in the opposite direction.

*Ratliff* said nothing about bribery, perjury, forgery, or the related embezzlement crime of dishonesty.  Instead, the decision cast the 1890 framers' under-inclusion of four specific crimes as racially motivated: "Burglary, theft, arson, and obtaining money under false pretenses were declared to be disqualifications, while murder and robbery and other crimes in which violence was the principal ingredient were not."  20 So. at 868. *Ratliff* did not, as plaintiffs now conveniently contend, "simply" utilize "four examples." [Dkt. 82 at 12 n.5].  Considered in light of every prior Mississippi Constitution and law, *Ratliff* fails to prove race discrimination motivated the 1890 framers' "entire list." These particular plaintiffs' claims, stemming from their convictions for forgery and embezzlement of public funds, lack merit.

**Plaintiffs' Rehashed *Cotton v. Fordice* Arguments.**  Six pages of plaintiffs' response argues, once again, that the Fifth Circuit wrongly decided *Cotton v. Fordice*, 157 F.3d 388 (5th Cir. 1998).  [Dkt. 82 at 13-19].  Secretary Hosemann already refuted that argument.  [Dkt. 64 at 16-24].  The Secretary also fully explained why the redistricting remedy analyses in *Abbott v. Perez*, 138 S.Ct. 2305 (2018) and *Kirksey v. Hinds County Board of Supervisors*, 554 F.2d 139 (5th Cir. 1977) do not improve plaintiffs' argument one bit.  [Dkt. 84 at 4-15].

---

Americans, who made up a majority of the population, played a sizeable role."  [Dkt. 74-2 at 1]. Professor Luckett does not argue that race discrimination motivated the then-ruling bi-racial coalition's criminal disenfranchisement enactments.

Only one more thing about ***Cotton*** requires emphasis.  Because ***Cotton*** was not wrongly decided, to establish that present day Section 241 is unconstitutional, plaintiffs must prove discriminatory intent motivated the State to adopt Section 241's 1950 and 1968 amendments.  ***Cotton***, 157 F.3d at 392.  Secretary Hosemann's summary judgment motion includes detailed evidence showing the lack of discriminatory intent behind the enactments.  [*See* Dkt. 64 at 19-24].  Apart from restating historical generalizations about the 1950s and 60s in their amended complaint, plaintiffs' response gives up on that issue.  Not only was ***Cotton*** correctly decided, on the summary judgment record here, plaintiffs have failed to prove discriminatory intent motivated Section 241's 1950 and 1968 enactments.  That failure, not just ***Cotton*** itself, is one reason why their case should be dismissed.

**Disparate Impact Flaws.**  Like their anti-***Cotton*** arguments, Secretary Hosemann already rebutted plaintiffs' disparate impact contentions.  [Dkt. 64 at 15, 21; 84 at 18-23].  One additional point is notable.  Plaintiffs insist that proving past and present disparate impact is not an element of ***Hunter***'s analysis.  [Dkt. 82 at 7].  Assuming plaintiffs are somehow correct, in any race-based challenge to a facially neutral law, impact proof still bears on the issue of discriminatory intent.  *See **Arlington Heights v. Metropolitan Housing Development Corp.***, 429 U.S. 252, 266 (1977).  Plaintiffs here must prove the State enacted its 1950 and 1968 amendments to Section 241 with discriminatory intent.  They made that accusation.  [Dkt. 19 at 14; 75 at 16].  Secretary Hosemann rebutted their allegation, and submitted contrary impact proof.  [Dkt. 64 at 21].  Meanwhile, the Court has no proof from plaintiffs even suggesting Mississippi's felon disenfranchisement laws had any disparate

impact around 1950 or 1968.  Even if simply an evidentiary factor, that impact proof deficiency is yet another strike against plaintiffs' lawsuit.

**Mississippi's 1986 Legislative Actions Cannot be Ignored.**  Last, but not least, even wrongfully assuming plaintiffs could prove that race motivated the State to enact *present day* Section 241, as amended in 1950 and 1968, that only means Secretary Hosemann must "'demonstrate that the law would have been enacted without this factor.'"  ***Cotton***, 157 F.3d at 391 (quoting ***Hunter v. Underwood***, 471 U.S. 222, 228 (1985)).  Present day Section 241 obviously "would have been enacted" absent racial motivation—the State effectively enacted its current felon disenfranchisement scheme absent racial motivation.  In 1986, following an extensive examination of the State's election laws, including the consideration of several options regarding felon disenfranchisement, the Mississippi Legislature changed the State's statutory felon disenfranchisement statutes and adopted the *present day* version of Section 241's disenfranchising crimes as the State's current felon disenfranchisement law, by a near-unanimous vote, over all other proposed options.  [Dkt. 64 at 24-28].

Plaintiffs respond with no facts.  And, to their credit, they do not argue the 1986 Legislature's actions were motivated by race.  Instead, they say the State's 1986 legislative actions should be ignored because "the status quo remains in place."  [Dkt. 82 at 22].  That mistakenly distorts Secretary Hosemann's burden.  The Secretary is not required to prove a radical departure from "the status quo."  The test is whether the State's current, facially neutral, felon disenfranchisement scheme "would have been enacted" without impermissible racial motivation.  ***Hunter***, 471 U.S. at 228; *see also* ***Johnson v. Governor of the State of Florida***, 405 F.3d 1214, 1223-27 (11th Cir.

2005) (en banc), *cert. denied*, 546 U.S. 1015.  The only facts before the Court prove it was.  Setting everything else aside, even if plaintiffs' case somehow falls all the way through to **Hunter**'s last inquiry, Secretary Hosemann is still entitled to summary judgment.

### CONCLUSION

For the reasons above, and in Secretary Hosemann's opening brief and opposition to plaintiffs' cross-motion, the Court should enter summary judgment for Secretary Hosemann and dismiss plaintiffs' case.

THIS the 8th day of November, 2018.

Respectfully submitted,

DELBERT HOSEMANN,
SECRETARY OF STATE OF MISSISSIPPI

BY:  JIM HOOD, ATTORNEY GENERAL

By:  S/Justin L. Matheny
Justin L. Matheny (Bar No. 100754)
Krissy C. Nobile (Bar No. 103577)
Office of the Attorney General
P.O. Box 220
Jackson, MS 39205
Telephone: (601) 359-3680
Facsimile: (601) 359-2003
*jmath@ago.state.ms.us*
*knobi@ago.state.ms.us*

*Counsel for Defendant Delbert Hosemann,
Secretary of State of Mississippi*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been electronically filed via the Court's ECF system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS the 8th day of November, 2018.

S/Justin L. Matheny
Justin L. Matheny